George K. Kontakis (GK-0484)
george.kontakis@klgates.com
J. Tanner Honea (5566252)
tanner.honea@klgates.com
K&L GATES, LLP
599 Lexington Avenue
New York, NY 10022
T: 212.536.4021
*Attorneys for Plaintiff*
*Avanza Trading, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

AVANZA TRADING, LLC,

                        Plaintiff,

      v.

ASCENSION BULK TERMINAL, LLC,

                        Defendant.

-------------------------------------------------------------x

Civ. No.: 1:26-cv-64

Rule 9(h)

## COMPLAINT

Plaintiff Avanza Trading, LLC ("Avanza"), by and through its undersigned counsel, hereby brings this Complaint for declaratory judgment against Defendant Ascension Bulk Terminal, LLC ("Ascension"), and states as follows:

## NATURE OF ACTION

1. This action arises out of Ascension's intention to misapply the terms of a written agreement concerning multi-year pricing for services at a shipping terminal where Plaintiff Avanza's product is discharged, stockpiled, loaded, and shipped on barges and ocean-going

1

vessels. Ascension intends to achieve a windfall by ignoring or misconstruing relevant contractual terms, and Avanza seeks a declaration regarding its rights under the agreement.

## PARTIES

2.     Plaintiff Avanza is an entity formed under the laws of Delaware with its principal place of business at 2665 South Bayshore Drive, Suite 1020, Miami, Florida 33133. Avanza is wholly owned by Avanza Trading, Ltd., which is a corporation organized under the laws of the British Virgin Islands with its registered address at Trinity Chambers, P.O. Box 4301, Road Town, British Virgin Islands, and its principal place of business in Miami, Florida.

3.     Upon information and belief, Defendant Ascension Bulk Terminal, LLC, is an entity formed in Delaware whose members are citizens of Virginia, with its principal place of business at 5100 River Road, Avondale, Louisiana 70094.

## JURISDICTION AND VENUE

4.     This is a maritime claim, and jurisdiction is proper based on this Court's original jurisdiction under 28 U.S.C. § 1333 because it concerns the parties' rights and obligations under a maritime contract within the meaning of Federal Rule of Civil Procedure 9(h).

5.     Upon information and believe, jurisdiction is also proper in this matter based on 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Avanza and Ascension, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.     This Court has personal jurisdiction over Ascension because in a written agreement Ascension has submitted to the exclusive jurisdiction of this Court for any dispute arising from the agreement.

7.     Venue is also proper before this Court pursuant to the terms of a mandatory forum selection clause in a written agreement where Ascension agreed that any dispute arising from the

agreement must be heard exclusively in the United States District Court for the Southern District of New York.

## FACTUAL BACKGROUND

### The Agreement

8. Avanza is a company specializing in the transportation of dry bulk goods on ocean-going vessels and river barges across the United States and elsewhere. Avanza does not own or operate vessels, but it contracts with vessel owners and others to transport products from port to port.

9. In November 2023, Avanza's business included transporting coal (the "Product") to and from the Impala Terminal (the "Terminal"), which was located along the Mississippi River in Burnside, Louisiana. At that time, the owner and operator of the Terminal was Impala Terminals Burnside, LLC ("Impala").

10. For Avanza's and Impala's mutual benefit, they entered into a contract titled the "Terminaling and Throughput Agreement" (the "Agreement") whereby Impala guaranteed certain rates for its services, such as loading and discharging coal from vessels, in exchange for a certain minimum amount of business from Avanza's coal trading. (Kontakis Declaration at Ex. A). The Agreement incorporated Impala's tariff dated February 1, 2021 (the "Tariff"), which described the rates for services provided by the Terminal. (Kontakis Decl. at Ex. B). The parties agreed that the Tariff and other rates as specified in the Agreement would continue in effect until December 31, 2026, including any extension period, as further discussed below. *Id.*

11. Among other terms, the Agreement guaranteed rates for services and ancillary services such as loading Product "from a river-barge Vessel or stockpile to an ocean-going Vessel," and unloading Product "from a river-barge Vessel to the stockpile." *Id.* The Agreement

defined "Vessel" to include "any river barge suitable for unloading Product at the Terminal or any ocean-going vessel suitable for loading Product at the Terminal, each of which is in the employ of or hired by [Avanza] and capable of unloading and loading Product as required by the Tariff." *Id.*

12. Accordingly, the Agreement covers any vessel present at the Terminal due to Avanza's business, i.e. the loading or unloading of Avanza's Product. At all times, the vessels at issue are receiving services from the Terminal due to Avanza's business of trading its Product at the Terminal, and those vessels are therefore covered by the Agreement's terms. The Terminal entered into the Agreement to guarantee a certain volume of business *from Avanza* for its Product, and Avanza entered into the Agreement to guarantee the cost of the Terminal's services for the handling of that Product. The Terminal's attempt to enforce any interpretation of the Agreement that is contrary to this arrangement is a breach of the material terms of the parties' agreement.

13. Following execution of the Agreement, Avanza and Impala amended the Agreement on October 30, 2024, whereby, among other changes, Avanza was given the option to extend the term of the Agreement an additional three years through December 31, 2029, if Avanza notified Impala before September 20, 2026. (Kontakis Decl. at Ex. C). The Amendment did not make any change to the Tariff as incorporated into the Agreement.

### The Terminal's Transfer of Ownership and Dispute

14. In September 2025, the Terminal was purchased by T. Parker Host, Inc., or an affiliate entity. (*See* Kontakis Decl. at Ex. D). As an apparent result of the purchase, on September 29, 2025, Impala changed its registered name with the Louisiana Secretary of State from Impala Terminals Burnside, LLC to Ascension Bulk Terminal, LLC ("Ascension"). (Kontakis Decl. at Ex. E).

15. On October 8, 2025, a representative for Ascension sent a blanket notification to Avanza and, presumably, other customers, informing Avanza that Ascension would begin implementing new tariff rules and regulations on January 1, 2026, which included changes to the Terminal's rates. (Kontakis Decl. at Ex. F). Of course, this was in direct contravention of the terms of the Agreement, which specifically incorporated the Tariff of February 1, 2021. Ascension's new tariff is attached hereto as Exhibit G. (Kontakis Decl. Ex. G)

16. Then, on November 13, 2025, Ascension sent a memorandum from their attorneys to Avanza analyzing Ascension's options for avoiding obligations under the Agreement. (Kontakis Decl. at Ex. H). Although Ascension's attorney agreed that the intent of the Agreement was to "lock in" certain rates for services provided by the Terminal, he concluded that the Agreement would not prevent the Terminal from charging entities other than Avanza the new tariff rates. *Id.* Specifically, Ascension's counsel stated that rates under the Agreement are only applicable to "the Product Owner (Avanza) and does not limit or otherwise restrict the terminal owner from assessing other rates to parties other than the Product Owner." *Id.* The Terminal's apparent intention was to ignore the Agreement and charge vessels carrying Avanza's product to or from the Terminal the new tariff rates for Terminal services.

17. On November 25, 2025, Avanza's attorneys (the undersigned) wrote to Ascension's attorneys seeking to correct Ascension's misapprehension that they could charge new rates to entities carrying, loading, and discharging Avanza's Product at the Terminal. (Kontakis Decl. at Ex. I). In the undersigned's letter, Avanza emphasized that the Terminal remains bound by the Agreement, which incorporated the Terminal's specific Tariff dated February 1, 2021, and identified services subject to the agreed rates. *Id.* The Agreement expressly provided that the rates

5

would apply to any "Vessel," which was defined to include "any ocean vessel, riverboat, or barge hired or employed by [Avanza]." *Id.*

18. In response, on December 1, 2025, Ascension's attorneys again wrote to reiterate Ascension's mistaken position and argue that certain charges were excepted from the Agreement and that "the Agreement does not prevent [the Terminal] from charging new tariff rates to any party other than Avanza." (Kontakis Decl. at Ex. J). Further, Ascension argues that rates under the Agreement "are only applicable as between terminal owner and Avanza and for those services provided directly to Avanza." *Id.*

19. Avanza is not in the business of owning vessels and instead hires them from third-parties to transport Avanza's Product. This was specifically acknowledged in the Agreement, which identified Avanza as a "Product Owner" who would hire or employ vessels to transport its Product. Ascension's position that the Agreement was negotiated knowing that the negotiated prices would not apply because Terminal services would be charged to vessels and barges that were not owned by Avanza is contrary to the contracting parties' intent and contrary to the plain language of the Agreement. As Section 11(a) of the Agreement provides, the agreed rates include "all stevedoring charges, wharfage, dockage, equipment use or rental feels, tolls, taxes, tariffs, and any other fees or costs levied against [the Terminal] in the performance of Services" rendered to any Vessel hired or employed by Avanza to transport its Product. (Kontakis Decl. at Ex. A).

## Amount in Controversy

20. Ascension's new rates are markedly higher than the previous tariff rates guaranteed under the Agreement, but it is difficult to compare, perhaps by design, both rates side-by-side because the new tariff packages separate service items together (dockage, tugs, security, etc.) into a single "User Fee." (*Compare* Kontakis Decl. Ex. B *with* Ex. G). Therefore, the projected

6

increase in costs may be measured by applying the new tariff rates to past actual transactions to identify the additional total costs that would result if the new tariff had applied, and project those extra costs through the term of the Agreement (i.e. additional costs multiplied by the number of shipments to meet the minimum quantities required under the Agreement).

21. For example, in April 2025, the M/V ERACLE loaded 55,402 metric tons (MT) of Product at the Terminal under terms that permitted loading 55,000 MT +/- 10%. Under the new tariff, this activity would have resulted in $79,892.40 of increased costs to Avanza. (Smolenack Decl. at ¶¶ 5-6). Similarly, in September 2025, the M/V SUNRISE TRADER loaded 72,277 MT at the Terminal under loading terms that permitted loading 70,000 MT +/- 10%. Under the new tariff, this activity would have resulted in $151,597.34 of increased costs to Avanza. (Smolenack Decl. at ¶¶ 7-8).

22. When these additional costs are contemplated in the totality of the Agreement's minimum quantities over time, the aggregate results in significant future losses for Avanza. Under the Agreement, as amended, Avanza was required to load a minimum of 2,000,000 metric tons of coal through December 31, 2026. Avanza has already fulfilled that minimum quantity but has refrained from further shipments due to this rate dispute.

23. Assuming Avanza exercises its extension under the Agreement (which it intends to do, depending on the Court's determination that Ascension must honor the terms of the Agreement, including the application of the Tariff dated February 1, 2021), the Agreement will be extended through December 31, 2029. Accordingly, under the terms of extension, Avanza would be required to load approximately 5,120,000 MT between January 1, 2026, and December 31, 2029, depending on exactly which options Avanza exercises under the Agreement.

24.     Considering this option period alone and ignoring the fact that Avanza would like to ship more Product but cannot until this dispute is resolved; by dividing the potential mandatory minimum of 5,120,000 by 55,000 MT shipment sizes, Avanza's exercise of the option period would result in 93 total shipments (i.e. 5,120,000 divided by 55,000 = 93.1).  Given the additional $79,892.40 in increased costs per shipment, the total increase over the extension period is $7.437M.

25.     Alternatively, if the mandatory minimum of 5,120,000 were divided by shipments of 70,000 MT, this would result in 73 total shipments with $151,597.34 in increased costs per shipment, or a total increase in costs over the extension period of approximately $11M.

26.     The potential windfall to Ascension makes very clear why Ascension is attempting to ignore its contractual obligations and create loopholes through a creative and improper interpretation of the Agreement.  Knowing that Avanza does not own or operate vessels itself, Ascension argues that the Agreement permits it to charge the new tariff rates to any third-party who is not Avanza, despite the Agreement's express application of agreed rates to vessels hired or employed by Avanza to transport its Product.  The contracting parties clearly intended for the Tariff of February 1, 2021, to apply to Services rendered under the Agreement in support of Avanza's transportation of its Product.

## COUNT I
## DECLARATORY JUDGMENT

27.     The Court is empowered to declare the rights of interested parties under a contract pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Declaratory judgment is also permitted under New York law pursuant to N.Y. Civil Practice Law and Rules (CPLR) § 3001.

28. Ascension and Avanza are parties to the Agreement, which is a written contract with an effective date of November 27, 2023, and a term ending on December 31, 2026, or, at Avanza's option if declared by September 20, 2026, to be extended to December 31, 2029.

29. The Agreement provides for the application of specific rates for Services and Ancillary Services, as defined by the Agreement, concerning the Terminal's provision of services to vessels hired or employed by Avanza for the transportation of Avanza's Product.

30. The Agreement specifically includes the Tariff dated February 1, 2021, and the rates set forth therein.

31. Contrary to the Agreement and the incorporated Tarriff dated February 1, 2021, Ascension wrongly intends to apply new tariff rates to any party that is not Avanza, if that party requests services from the Terminal, despite the fact that those third parties are only requesting the Terminal's services to load, discharge, or stockpile, for Avanza's Product.

32. Section 24(b) of the Agreement provides that the United Sates District Court for the Southern District of New York shall have exclusive jurisdiction over any dispute arising from the Agreement.

33. An actual controversy exists between the parties as to their present and future legal obligations under the Agreement.

34. Avanza requests a declaratory judgment of its rights and the Terminal's obligations under the Agreement.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Avanza Trading, LLC prays that the Court enter an order:

(1) declaring the respective rights and obligations of the parties under the Agreement;

(2) declaring that Ascension is bound by the Agreement, including the application of the Tarriff dated February 1, 2021, throughout the entire contract period, including any extension;

(3) declaring that the rates for the Services and Ancillary Services as described in the Agreement will apply to any Vessel loading, carrying, or discharging Avanza's Product at the Terminal throughout the term or extended term of the Agreement, and not Services and Ancillary Services requested in Avanza's name only, and;

(4) that the Court grant such other and further relief to which Avanza may be entitled.

Dated: January 6, 2026

Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff,
*Avanza Trading, LLC*

/s/ *George K. Kontakis*
George K. Kontakis
J. Tanner Honea
599 Lexington Avenue
New York, New York 10022-6030
Email: george.kontakis@klgates.com
Phone: (212) 536-4021
Fax: (212) 536-3901