# Exhibit B



# IMPALA TERMINALS BURNSIDE LLC
# BURNSIDE TERMINAL
# RULES AND REGULATIONS

# IMPALA TERMINALS BURNSIDE LLC
# 5050 HWY 44 DARROW, LOUISIANA 70725

{N3564250.1}

## SECTION 1.  TERMINAL REGULATIONS

### 1.1.  <u>General</u>

**1.1.1    Use of Terminal.**  Use of the Terminal constitutes evidence of an agreement on the part of the User to accept and be covered and bound by these Rules. Failure to execute or return a Berth Application or a Terminal Access Agreement shall not relieve User of its obligations hereunder.  The issuance by Impala of an Acceptance Notice or the berthing of any Vessel at the Terminal, shall constitute an agreement by and among Impala, the Vessel and any Vessel Party (jointly and severally) to abide by the provisions of, and to be liable for the fees, rates and/or charges of whatsoever kind or nature provided in these Rules.  Notwithstanding anything to the contrary herein, the rights of any User to utilize the Terminal shall be subject to the prior approval of Impala. Impala reserves the right to deny access and/or use of the Terminal and/or to provide any services solely at Impala's discretion, including during changes in the applicable maritime security level, river conditions, or severe weather events.

**1.1.2    Hours of Operation.**  The  Terminal operates 24 hours a day, every day throughout the year, excluding Holidays.

**1.1.3    Terminal Services.**  Services to be provided by Impala, subject to the terms and conditions of these Rules and upon the request of a User, are as set forth on <u>Schedule 1</u> (Terminal Services and Rates) attached hereto.  Acceptance of services constitutes evidence of an agreement on the part of the User to be covered and bound by these Rules and to pay applicable Terminal Services and Rates.

**1.1.4    Safe Berth.**  The Master of an Ocean Vessel and the captain/pilot of any tug attending a Barge shall be solely responsible for determining if the depth of water (at any tide or river stage) at the Berth or Buoys, as applicable, is sufficient for the Vessel to navigate, berth and load at the Terminal under any and all circumstances, with Impala having no responsibility therefor.  Impala shall not be deemed to guarantee or warrant the safety, depth or suitability of any berths, public channels, fairways, approaches thereto, anchorages or other publicly-operated or maintained areas, either inside or outside the area in which the Terminal operates, where the Ocean Vessel may be directed, including but not limited to the port area where any Vessel may operate, nor does Impala warrant or guarantee the absence of underwater hazards and obstructions in these waters. Impala shall not be responsible or liable for any loss, damage, expense, injury or delay to the Ocean Vessel resulting from the use of such public waterways. Furthermore, Impala shall not be deemed to, and does not warrant the safety and security of the Terminal, including the Berth and Buoys.

**1.1.5    Remedies for Enforcement of Terminal Rules.**  Impala shall have all remedies available to it by law, in equity or in admiralty to enforce these Rules, including, but not limited to, suspending Terminal operations and/or the provision of services hereunder.  Impala shall also have all remedies available at law, in equity and/or in admiralty available to it to collect all fees, charges, and/or damages due hereunder, including, but not limited to liens against the Vessel and/or Cargo for such fees, charges, and/or damages.  In the event Impala engages counsel to enforce any provision of these Rules, Impala shall be entitled to recover its expenses incurred in such proceedings, including but not limited to attorneys' fees and all costs.

**1.1.6    Fees and Charges.**  All fees and charges hereunder must be paid in advance to the Terminal based on the estimated fees prior to a Vessel's berthing unless otherwise mutually agreed in writing by Impala and the Vessel Party, and such fees and charges shall be paid as set out in Section 1.4.  All Invoices will be paid via Electronic Transfer unless otherwise arranged in advance.

**1.1.7    Amendments/Interpretation.**  Amendments to these Rules may be issued from  time to time. These Rules are subject to change without notice.  Impala shall be the sole judge as to the interpretation of these Rules.

**1.1.8    Independent Contractor.**  User and/or Vessel Party acknowledges and agrees that Impala is retained by and has contracted with User only for the purposes set forth in these Rules or any Customer Contract, and Impala shall perform all Services hereunder or thereunder as an independent contractor and under no circumstances shall Impala or any of Impala's employees, agents, contractors, or subcontractors be considered an employee, agent, or servant of User.

**1.1.9    Private Terminal.**  Notwithstanding anything to the contrary herein, the facility is a private terminal facility and Impala is not a marine terminal operator as defined by the Shipping Act of 1984, as amended. Common carriers by water (such as liners), as defined by the Shipping Act of 1984, as amended, will not be accepted for loading or unloading at the Terminal.  Only Vessels engaged in private or contract carriage pursuant to private commercial arrangements will be accepted by Impala for berthing at the Terminal.

**1.1.10    Entirety of Agreement.**  The Rules shall control over any written agreement between Impala and User or Impala and any of its customers (each a "Customer Contract"), except that to the extent the Rules conflict with any provision of such Customer Contract, the conflicting provision of the Customer Contract shall control.  In case any provision (or portion thereof) contained in these Rules should be held or determined invalid, illegal, in conflict with a Customer Contract or unenforceable in any respect, the validity, legality and enforceability of the remaining portion of any such provision and the other remaining provisions or underlying rights and obligations referred to herein shall not in any way be affected, modified, or impaired thereby.

## 1.2.    Terminal Safety and Security

**1.2.1    Safety and Security.**  All Vessels are to furnish, at all times while in the Berth or at the Buoys, safe means for persons to board and disembark from the Vessel.  When a Vessel is in the Terminal, the relevant Vessel Party shall  be solely responsible for  the safety of the Vessel and her crew.  Any Vessel in Berth or at the Buoys shall at all times maintain appropriate officers and crew aboard the Vessel in order to maintain an alert watch and respond to emergencies.  The Vessel's officers and crew shall at all times be responsible for monitoring the Vessel moorings and lines, and shall make adjustments to the moorings and lines during loading and unloading operations as necessary, to ensure the Vessel is secure.

**1.2.2    Drug and Alcohol Policy.**  Impala warrants, undertakes and represents that, as of the effective date of these Rules, Impala has an active drug and alcohol abuse prevention policy which complies with all applicable laws and industry trade regulations.  Impala further warrants, undertakes and represents that such policy will remain in effect at all times while these Rules remain in effect and that Impala shall exercise due diligence to ensure compliance with such policy by the personnel provided by Impala in performance of any services hereunder.

## 1.3.    Compliance and Vessel Party Responsibility

**1.3.1    Compliance with Laws and Regulations.**  Prior to coming into the Terminal, all Vessels shall have fully complied with all applicable U.S.  Coast Guard regulations and all applicable local, state and federal laws and regulations in effect while the Vessel is at the Terminal.  In no event shall loading or unloading of an Ocean Vessel, as the case may be, occur until such time as such Ocean Vessel has been cleared by U.S.  Customs. If any Vessel fails to comply with all such laws and regulations, Impala may order the Vessel to vacate the Berth or Buoys (as applicable).  If the Vessel does not vacate the Berth or Buoys (as applicable) when so ordered, the Vessel will be subject to, in addition to the liquidated damages set forth under Section 5.8, all costs and expenses, including, but not limited to, attorneys' fees and costs, in connection with the moving of the Vessel, which costs, expenses and liquidated damages shall be for the account of and the full risk of the Vessel and the Vessel Party.

**1.3.2    User and Vessel Party Liability, Responsibility and Indemnification**

a.     Impala shall not be responsible for any loss or damage to Cargo and/or Vessels calling upon and/or utilizing the Terminal.

b.     **NOTWITHSTANDING ANYTHING TO THE CONTRARY, IN PROVIDING SERVICES UNDER THESE RULES AND SUBJECT TO ANY LIMITATIONS AGREED BY THE PARTIES IN A CUSTOMER CONTRACT, IMPALA SHALL NOT BE RESPONSIBLE FOR ANY DEMURRAGE OR OTHER DAMAGES FOR ANY LOSS OF TIME, DELAY, DEMURRAGE, OR ANY OTHER DAMAGES INCURRED BY ANY USER, VESSEL OR ANY VESSEL PARTY AND/OR THE CARGO, EXCEPT TO THE EXTENT DUE TO (I) IMPALA'S GROSS NEGLIGENCE, (II) IMPALA'S FAILURE TO ACHIEVE THE LOADING RATES IN SECTION 2 WHILE THE APPLICABLE VESSEL IS ON LAYTIME (EXCEPT DURING A FORCE MAJEURE EVENT OR DECLARATION), OR (III) AS SET FORTH IN SECTION 5.7; PROVIDED THAT, IMPALA SHALL NOT BE LIABLE TO USER OR ANY OTHER PARTY FOR ANY CONSEQUENTIAL, SPECIAL OR INDIRECT DAMAGES OR LOST PROFITS.**

c.     The Vessel Party shall have the duty to be fully familiar with the environmental rules, regulations and laws in respect to the type and levels of all discharges allowed in United States rivers, coastal waters and air, and for fully abiding by said rules, regulations and laws.  Impala will report any observed act by a Vessel or Vessel Party suspected to be a violation of any such rule, regulation or law to the appropriate governmental authority.

d.     All Vessel Party's and Users hereby agree to **RELEASE, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS** Impala and all persons, firms or other entities which may manage, own or control the operations of said Terminal, and its and their respective  officers, directors, employees, agents, subcontractors and vessels and the insurers of all (collectively, the "Impala Group") from and against any and all Claims, inclusive of Claims made by third parties, any User, any Visitor, or any agent or contractor thereof, arising from or relating to, (a) the loss of life, bodily injury,  disease, or any other  injury of any type whatsoever,  involving any person, including Visitors, and (b) damage, contamination or loss of property, and including the User's Cargo, incident to or resulting from their use of the Terminal, and **WHETHER OR NOT CAUSED BY THE SOLE AND/OR CONCURRENT FAULT OR NEGLIGENCE OR STRICT LIABILITY OF ANY MEMBER OF THE IMPALA GROUP, OR UNSEAWORTHINESS OF ANY VESSEL, EXCEPT TO THE EXTENT CAUSED BY THE PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF THE IMPALA GROUP.**

e.     Additionally, such obligation of Vessel Party's and Users to **RELEASE, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS** the Impala Group shall include, but not be limited to, loss, penalty, fine, clean-up costs, natural resource damage, remediation costs, removal costs, demurrage, administrative costs and any and all other costs and liabilities that arise directly or indirectly from pollution caused or threatened by (a) a Vessel Party or other master or crew of the Vessel, whether in loading and/or unloading of Cargo, or in the operation or management of the Vessel; or (b) any escape, release, discharge, threat of discharge, or disposal of fuel, pollutants or hazardous materials from any of User's or Agents' vehicles or equipment or otherwise caused by User or Agents while in, on, or adjacent to the Terminal **EVEN IF CAUSED BY THE SOLE AND/OR CONCURRENT FAULT OR NEGLIGENCE OF ANY MEMBER OF THE IMPALA GROUP, STRICT LIABILITY OR UNSEAWORTHINESS OF ANY VESSEL, EXCEPT TO THE EXTENT CAUSED BY THE PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF THE IMPALA GROUP**.  In the event of an actual or threatened pollution event arising directly or indirectly out of services being performed at the Terminal, the Vessel Party shall, and shall cause its representatives and insurers to, immediately:

i.   Notify all local, state and federal authorities having jurisdiction of the pollution event.

ii.  Notify Impala of all details of the pollution event and provide Impala with an MSDS of all hazardous

and/or non-hazardous materials that Terminal employees or third parties may be exposed to.

iii.  Take all steps to eliminate the cause and/or source of the pollution.

iv.  Take steps to clean up the pollution.

v.  Take all steps required by law to restore the environment.

vi.  Take all steps to mitigate damages of the Vessel Party, Impala and third parties.

vii.  Promptly pay all fines and penalties, and damages and losses of third parties, to the extent required by law, and for all costs and expenses of clean up.

viii.  If necessary, advance or pay monies and funds required to be paid to the appropriate regulatory agencies.

ix.  Consult with Impala and keep Impala regularly informed of all steps taken and contemplated to comply with the provisions of this paragraph.

x.  Cooperate with Impala in issuing statements to government authorities and media representatives.

Whether or not the User or the Vessel Party has complied with the provisions of the foregoing, Impala in its sole discretion and without notice to the Vessel Party may, but shall not be required to, take over and manage all emergency response, prevention, clean-up, containment and restoration activities, all without derogation or diminution of the Vessel Party's obligations under these Rules, and with full reservation to Impala of all rights against the User, Vessel, the Vessel Party or its insurers for reimbursement of costs, expenses and attorneys' fees. In such event, the User and/or the Vessel Party shall, and shall cause its insurers and any subcontractors to, make available to Impala all Vessels, personnel and equipment used or planned to be used in such prevention, clean-up and restoration efforts, all at the sole expense of the Vessel Party. Nevertheless, Impala may, but is not required to, utilize its own and contracted personnel, Vessels and equipment in such prevention, clean-up and restoration efforts, and may at its discretion, allocate such resources as it, in its sole discretion, deems appropriate and at the sole expense of the User and/or Vessel Party. In the event Impala takes over and manages such prevention, clean-up and restoration efforts, such action shall not be deemed a waiver, or constitute an estoppel by Impala or an admission of any fault or responsibility on the part of Impala.

### 1.3.3    Insurance

a.  The User shall obtain at its sole cost and expense and shall carry and maintain in full force and effect, and cause any Vessels owned, chartered or operated by the User and used in the transfer, loading, or unloading of the Vessel to obtain and maintain insurance coverages with insurance companies rated not less than A-, IX by A.M. Best or otherwise reasonably satisfactory to Impala of the following types and amounts:

i.  Hull and Machinery Insurance on each Vessel, in an amount not less than the fair market value of the Vessel, with navigation limits adequate for the Vessel's trade.

ii.  Protection and Indemnity ("P&I") Insurance provided through any combination of (i) full entry with a P&I Club (that is a member of the International Group of P&I Clubs); and/or (ii) policy(ies) with a commercial insurance company(ies) or underwriters/syndicate(s) acceptable to Impala with terms no less broad than those customarily carried by similar marine carriers with limits of not less than ten million ($10,000,000) per occurrence. Such P&I insurance shall include coverage for injury to or death of master, mates, and crew; tower's liability for tugs, excess collision liability; cargo legal liability; pollution liability; and contractual liability. In addition, any towboat or tug

utilizing the Terminal shall carry tower's liability insurance.

iii.   Pollution Liability Insurance, either by endorsement to the appropriate insurances named above, or by separate insurance with an insurance company(ies) or underwriters/syndicate(s) rated not less than A-, IX by A.M. Best or otherwise reasonably acceptable to Impala with limits of not less than two hundred million ($200,000,000) per occurrence or the maximum amount required under the Oil Pollution Act of 1990 ("OPA90") and any amendments thereto, whichever is greater, covering any and all environmental risks, penalties, action or otherwise and equivalent to that coverage provided by Lloyd's of London Pollution Policy/Environmental Pollution Group.  COFRs shall also be maintained on all Vessels loading or unloading at the Terminal.

iv.   All risk cargo insurance, in an amount not less than one hundred and ten percent (110%) of the fair market value of the cargo.

v.   Workers' Compensation and Employer's Liability Insurance, with United States Longshore and Harbor Workers Compensation Act endorsement and with the maritime endorsement, with minimum limits as required by federal or state law.

vi.   Commercial General Liability Insurance, including contractual liability cover, with any "watercraft exclusion" being deleted, and in an amount of not less than twenty five million ($25,000,000) per accident or occurrence, which may be structured through excess or umbrella policies.

vii.   Excess Liability or Bumbershoot Liability Insurance with limits of not less than five million dollars ($5,000,000) per occurrence and in the aggregate providing additional limits of insurance of the coverage described above.

viii.   Any additional insurance coverages required by state or federal law.

b.   The User will provide Impala, upon request, with a copy of relevant certificate(s) of insurance evidencing the insurance coverages required hereunder.  Acceptance of any such certificate shall not constitute a waiver, release or modification of any of the required insurance coverages and endorsements if the certificate is inconsistent with those coverages and endorsements.  The insurance coverage required under these Rules shall cover the User's liabilities and obligations as set forth herein and shall be endorsed to (i) contain waivers of subrogation rights against the Impala Group, (ii) name the Impala Group as additional insureds (except the Workers' Compensation Policy); and (iii) provide that such insurance is primary with respect to all insureds and that the Impala Group's insurance shall be noncontributing under any and all circumstances.

c.   The insurance requirements set forth herein shall not in any way limit any User's or Vessel's legal and/or contractual obligations and liabilities under any Customer Contract or in connection with these Rules.  The insurance coverages required hereunder will be maintained by each primary named insured at its sole cost and expense at all times during the term of any Customer Contract including any premiums, deductibles and self-insured retentions.  If liability for loss or damage is denied by the insurer(s) of a Vessel Party and/or the Vessel, in whole or in part, because of the (i) breach of any policy for the insurance coverages required hereunder, (ii) failure to obtain or maintain any of the insurance coverages required hereunder, or (iii) in any other breach of these Rules or the User's and/or Vessel's contract of insurance with its carrier, **USER'S AND/OR VESSEL SHALL RELEASE, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS THE IMPALA GROUP AGAINST ALL CLAIMS.**

## 1.4.   <u>Additional Services and Invoicing</u>

1.4.1   **Invoicing.** Impala shall render invoices according to <u>Schedule 1</u> for services provided hereunder

or under any Customer Contract and the User agrees to pay said invoices upon receipt by User and any agent of User guarantees payment of all fees earned and due hereunder.  The invoice shall also contain reconciliation for any fees or charges which were secured with a pre-paid, estimated amount.  Any invoice that remains unpaid after 10 days from date of invoice shall earn interest, compounded at 1.5% interest per month or portion thereof or the maximum legal interest rate allowed under Louisiana law, whichever is greater.  Any pending or alleged Claims against Impala will not be allowed as an offset against outstanding or accrued charges.

      **1.4.2    Bunkers.**  No bunkers, diesel fuel or oils may be received or taken aboard by Vessels in Berth or at the Buoys unless prior arrangements are made with and agreed to in writing by Terminal.

      **1.4.3    Repairs.  Once the NOR has been tendered, no repairs that would impede the movement of the Vessel or that would interfere with Cargo transfer operations or otherwise affect safety at the Terminal shall be undertaken by the Vessel or a Vessel Party.**

      **1.4.4    Visitors and Delivery of Vessel Provisions.**  In its sole discretion, Impala reserves the right to deny access to any Visitor.  Every person entering the Terminal must sign in with the Terminal office before proceeding to any Vessel, Berth or Buoy and shall furnish Impala with identification acceptable to Impala.  Any person or vehicle that enters the Terminal shall be subject to a search conducted in accordance with Impala's Facilities Security Plan.  Such Visitors, subject to the prior approval of Impala, may arrange for outside transportation for pickup and delivery at the Terminal.  Approved Visitors may gain access to Vessels berthed at the Berth or at the Buoys via Impala's crew boat service.  Such service shall be provided at the sole expense and for the account of the Vessel or the Vessel Party as set forth in <u>Schedule 1</u> under "Access Fee." Such access, however, shall require that the Visitor furnish 24 hours prior written notification to the Terminal office of same.  All Visitors must wear protective equipment, steel-toed boots, hard hats, safety glasses and life jackets.  Delivery of provisions or stores to any Vessels berthed at the Terminal shall require the prior approval of Impala subject to a determination by Impala as to whether such activities will interfere with Cargo operations or Vessel arrivals, departures or shifting.  An agent of the Vessel must be present when provisions are to be brought on to a Vessel.  Any Visitor shall execute such releases and indemnity agreements as required by Impala as a condition to being allowed access to the Terminal, including, but not limited to, a Terminal Access Agreement, a form of which is attached hereto as <u>Schedule 3</u>.

      **1.4.5    Special Contracts and Emergency Rates.**  Charges for services or items not specifically provided for in these Rules shall be assessed pursuant to a separate Customer Contract with Impala.  In the event of an emergency or upon User's request for services or items not specifically provided for in these Rules or in a separate Customer Contract with Impala, any such services or items requested by or provided for the benefit of User shall by assessed as follows:  (a) all services or items directly provided by Impala shall be assessed at Impala's standard and customary rate for such services or items; and (b) all third-party services or items obtained by Impala for the benefit of User shall be assessed at 130% of the rate charged to Impala by the third-party contractor.

      **1.4.6    Liens.**  All charges made by or due to Impala shall constitute a lien in favor of Impala upon the Cargo and against any Vessel for such charges to the fullest extent permitted by law.  Impala shall have the right to retain possession of Cargo and/or relocate a Vessel and its belongings within Terminal property if necessary to preserve and maintain its lien rights for any amounts due hereunder to Impala.  Impala shall have no liability to the Vessel Party by retaining and/or relocating Vessel and its belongings at the Terminal.  To the extent allowed under the General Maritime Law of the United States, User acknowledges and agrees that delivery or transfer of the Cargo by Impala is not a waiver of any lien rights Impala has against the Cargo and that said rights survive transfer and/or delivery of said Cargo and apply to any Cargo of User in possession of Impala.

**1.5.    <u>Access to the Terminal</u>**

      Impala hereby grants User and such of its agents, representatives and invitees (collectively, "<u>Agents</u>") and

each of its and their employees, all as designated in writing to Impala from time to time the right and privilege to access the Terminal. User shall be absolutely responsible and liable for its Agents and their actions, and for their compliance and/or non-compliance with this Agreement. Such access shall be conditioned on the following requirements:

**1.5.1    Compliance with Rules, Laws and Regulations**. User, its Agents and each of its and their respective employees shall access the Terminal in a manner as to cause minimum interference with Impala's operations. User agrees to and to cause its Agents to (i) comply with all rules posted by Impala at the Terminal, (ii) comply with all federal, state and local laws, statutes, ordinances, rules, and regulations that may be applicable to User's and its Agents' activities at the Terminal, and (iii) obtain all permits and licenses required by law.

**1.5.2    Controlled Substance Abuse**. User shall have adopted policies and procedures to ensure a drug and alcohol free work place, and enforce its policy with appropriate drug and alcohol testing programs. All testing programs shall specify substances, testing frequency and threshold levels, which, at a minimum comply with the Department of Transportation drug testing regulations.

**1.5.3    Safety of Vehicles and Equipment**. User agrees that all vehicles and equipment owned, leased or otherwise under the control of User and its Agents will be properly maintained, and in a safe condition. User shall remove any equipment that in Impala's discretion poses a safety hazard at the Terminal. In the event User fails to remove such unsafe equipment, Impala has the right to remove such equipment with User paying or reimbursing Impala for the cost of such removal.

**1.5.4    Incident Reporting.** User must report all incidents (including accidents and near misses) that occur at the Terminal in writing to Impala within 24 hours following such incident. The report should describe the incident and include any investigative materials or documents that User completes, and any related documentation and reports submitted to any entity, including but not limited to, any governmental agency, User's insurer, or others.

**1.5.5    No Agency Relationship**. Neither User nor its Agents act under the direction, control or supervision of Impala and none of the foregoing is an agent of Impala.

## SECTION 2.  TERMINAL SPECIFICATIONS

**2.1.    <u>Terminal Location</u>**

The Terminal is located at Darrow, Louisiana, on the left Descending Bank of the Mississippi River. The Buoys are located at mile marker LMR 169.2. The Berth is located at mile marker LMR 169.5.

**2.2.    <u>Midstream Operations</u>**

<u>Description of Buoys</u>

5 buoys with a capacity of 150 metric tons each
The upstream buoy is located at a distance of approximately 1,235 feet from the downstream buoy.

<u>Limitations</u>

Maximum Length Overall: 230 meters / 755 feet
Maximum Beam: 32.2 meters / 105.6 feet
Maximum Displacement: 85,600 metric tons
Maximum Air draft: 17 meters / 56 feet

Loading Rate

Loading Rate (per Weather Working Day) shall be per the terms of the Customer Contract.

## 2.3.    Terminal Operations

Berth Description

Length of Berth: 335 meters / 1,100 contiguous feet
Length of Dock: 267 meters / 875 feet
Water Depth at Dock: 14 meters / 46 feet low water draft
Spout Reach from face of Dock: 40 meters / 131 feet

Ocean Vessel Limitations

Maximum Length Overall: 270 meters / 886 feet
Maximum Beam: 43 meters / 141 feet
Maximum Displacement: 169,500 metric tons (when fully loaded)
Maximum Air draft: 18.6 meters / 61 feet

Barge Unloading Limitations/Requirements

Maximum Width: 10.7 meters / 35 feet
Maximum Length: 62.5 meters / 205 feet

Loading Rate

Loading Rate (per Weather Working Day) shall be per the terms of the Customer Contract.

## 2.4    Accuracy of Terminal Specifications

All descriptions and dimensions provided within this Section 2 are approximate, and Impala ***makes no warranty or guarantee of the accuracy of this information***; provided, however, Impala guarantees the loading rates in Section 2.2 and Section 2.3 subject to the other terms hereof and any separate agreement between Vessel Party and Impala. The loading-rate guarantees in Section 2.2 and Section 2.3 will be adjusted if the Ocean Vessel has ship gear or other features that impede the normal loading capabilities of Impala. Guaranteed loading rates do not apply on Holidays.

## SECTION 3.  VESSEL NOMINATIONS

## 3.1.    Nominations

**3.1.1    Ocean Vessel Nominations.** Ocean Vessel nominations shall be furnished to Impala by confirmed receipt e-mail to BurnsideShips@ImpalaTerminals.com not earlier than 30 days and not later than 15 days prior to the Ocean Vessel's projected ETA at the Terminal. Such nomination shall include the Ocean Vessel IMO number, tonnage, loading drafts, name of carrier, and type of Cargo carried or to be carried and shall include the additional information below based on type of Vessel. Acceptance by Impala of a nomination of a Vessel or scheduling of Barges shall be evidenced by Impala's confirmation by e-mail transmittal to the relevant Vessel Party, and Impala must respond to such nomination with 24 hours.

**Ocean Vessel (> 60,000 metric tons):**

a.  Vessel Party shall request from Impala, in writing, a 10-day Layday Period at least 30 days prior to the date of the first day of the Layday Period.  Impala shall advise Vessel Party in writing within 24 hours whether or not the proposed Layday Period is acceptable.  If the proposed Layday Period is not acceptable, Impala shall offer Vessel Party an alternative Layday Period for Vessel Party's consideration.

b.  No later than 15 days from the date of the first day of the agreed-upon Layday Period, Vessel Party shall identify in writing to Impala a 5-day Laycan within such original Layday Period.  In each case mentioned above, the written approval of Impala shall be required relative to the 10-day Layday Period and the 5-day Laycan.

**Ocean Vessel (< 60,000 metric tons):**

a.  Vessel Party shall request from Impala, in writing, a 7-day Layday Period at least 30 days prior to the date of the first day of the Layday Period.  Impala shall advise Vessel Party in writing within 24 hours whether or not the proposed Layday Period is acceptable.  If the proposed Layday Period is not acceptable, Impala shall offer Vessel Party an alternative Layday Period for Vessel Party's consideration.

b.  No later than 15 days from the date of the first day of the agreed-upon Layday Period, Vessel Party shall identify in writing to Impala a 4-day Laycan within such original Layday Period.  In each case mentioned above, the written approval of Impala shall be required relative to the 7-day Layday Period and the 4-day Laycan.

3.1.2    **Barge Requirements.**  The Vessel Party shall provide the following information on each Barge not later than 7 days prior to the projected ETA of the Barge at the Terminal:  the individual barge number, tonnage, loading drafts, name of carrier, projected ETA, a designation of whether the Cargo is to be delivered to the storage pad or held for direct transfer to Ocean Vessel, and the type of Cargo carried or to be carried, which report shall be subsequently updated on the Monday of each week until such Barges are received at the relevant fleet.  All Users and their Barges utilizing the facilities and services of Impala shall be subject to and shall abide by the terms and conditions of these Rules.

## 3.2.    <u>Filing</u>

All Ocean Vessels and Vessel Parties which intend to utilize the facilities and services of Impala shall file with Impala by confirmed receipt e-mail to <u>BurnsideShips@ImpalaTerminals.com</u>, a Berth Application stating the projected ETA of the Vessel.  The Berth Application must be received by Impala no later than 15 days prior to the projected ETA of the Ocean Vessel.  An executed original of the Berth Application must be maintained by the Ocean Vessel or Vessel Party.

Acceptance by Impala of a Berth Application shall be evidenced by Impala's issuance to the Vessel Party of a Berth Application acceptant notice ("<u>Acceptance Notice</u>") confirming the projected ETA as the scheduled ETA.  The Vessel shall send to Impala by e-mail updated ETAs as follows: 10 days, 5 days, 48 hours, 24 hours, 12 hours, 6 hours prior to arrival.

## 3.3    <u>Vessel Scheduling</u>

Subject to <u>Section 5.7</u>, Impala will endeavor to berth Ocean Vessels in order of nomination acceptance, subject to (i) timely receipt of ETA updates, (ii) arrival within the agreed-upon Laycan, and (iii) compliance with the other terms hereof; provided, however, that Impala shall have the right to assign Vessels to the Berth or Buoys, in its sole discretion, for whatever reasons, in whatever order it determines, including subject to conditions at the Terminal including Terminal, port, or river closures, Terminal or port restrictions, Terminal or port congestion, or

weather and river conditions and other conditions beyond Impala's reasonable control.

**3.4.    Certification for Filing**

In the case of an Ocean Vessel, the following certificates and documents must be presented to Impala to file for a berth at the Terminal:

    i.   An original Berth Application signed by the authorized Vessel Party.

    ii.   A copy of the NOR executed by the authorized Vessel Party.

    iii.   A customary hold cleanliness certificate.

    iv.   International tonnage certificate.

    v.   A proposed stowage plan which includes Cargo cubic capacity for any Ocean Vessel to be loaded and the loading sequence or the actual plan for Cargo to be unloaded including the unloading sequence.

    vi.   Should it be necessary for Vessel personnel to leave the Vessel or Visitors, including Vessel's agent, to board the Vessel, 24 hours prior written notification to Impala must be provided and include a list of the: (a) name, (b) address, (c) telephone number and (d) reason for visit. Each visitor to the Vessel and Vessel personnel leaving the Vessel must be on the a visitor list ("Visitor List"). Each Visitor must have a form of identification acceptable to Impala. The Visitor List shall be supplemented as needed and furnished in advance of the visit to Impala in writing between 7:30 a.m. and 4:00 p.m. Mondays through Fridays, excluding Holidays. Any Vessel personnel leaving the ship shall be required to furnish Impala with a Crewman's Landing Permit — Form 1-95 issued by the U.S. Immigration & Naturalization Service and a picture identification card.

    vii.   Any special loading or unloading instructions, including instructions regarding the specific location of structural or other protruding objects in the Vessel's cargo hold(s) that could be damaged during loading or unloading.

**3.5.    Notice of Readiness**

Once the Ocean Vessel to be loaded is (a) located at the Berth, the Buoys, or the closest available safe anchorage to Darrow, Louisiana, and (b) ready and suitable in all respects to commence loading, the master of the Ocean Vessel shall tender a NOR whether cleared at customs or not, whether in free pratique or not, whether in port or not, and whether in berth or not. The issuance or acceptance of NOR by any other party under any charter party or contract to which Terminal itself is not a party shall have no effect under these Rules. Impala shall not be required to accept the NOR unless and until the NOR is tendered within the applicable Laycan.

**3.6.    Laytime; Demurrage for Failing to Meet the Guaranteed Loading Rate; Despatch**

Laytime commences upon the earlier to occur of: (a) 12 hours after the Ocean Vessel has properly tendered a NOR, or (b) when a Vessel is secured All Fast and is ready to load in all respects, provided that time consumed for the following shall not count as Laytime (or time on demurrage):

    i.   Time consumed by the Ocean Vessel in moving from port anchorage to the Berth, including waiting for tide, traffic, daylight, congestion, pilot availability or other causes not controlled by the Terminal, or stopping enroute for the purposes of taken on Pilots, supplies or bunkering;

ii.    All time required by the vessel to complete paper work, open hatches, time consumed during draft surveys or mate checks, time waiting for pilots, tugs or linemen, or any other reason the Terminal is unable to load or unload the vessel, as a result of the vessels action or inaction;

iii.    If loading starts before the completion of the 12-hour period after NOR ("turn time"), then only actual time used shall count as Laytime until expiration of such turn time;

iv.    Any delay due to inability of the Ocean Vessel's facilities to safely discharge or receive Cargo for any reason;

v.    Any time consumed in interruption of transportation operations due to the Vessel's failure to comply with terminal regulations (including, but not limited to, these Rules);

vi.    Delay due to prohibition of Cargo transfer at any time by the Vessel, the owner or operator of the Vessel, or by governmental authorities, unless such prohibition is caused by Impala's failure to comply with applicable laws;

vii.    Delays due to awaiting customs and/or immigration clearance and pratique, if applicable;

viii.    Any delay caused by strike, lockout, stoppage or restraint of labor of the Master, officers and crew of the Vessel or pilots or any delay for which a Vessel Party, the Vessel, her Master or crew is responsible; or

ix.    Any delay caused by conditions not reasonably within Impala's control, including but not limited to, lack of required shipping documents, lack of available cargo, lack of available barges, weather, equipment failure, awaiting tide, Force Majeure, blockage of channels caused by spills or accidents, delays in voyages caused by Pilot Association's requirements, etc.

Laytime ends when the Ocean Vessel has completed loading/unloading.

Subject to the foregoing, the amount of Laytime for a given Ocean Vessel equals the actual quantity of Cargo to be loaded onto the Ocean Vessel divided by the pro rata guaranteed load rate as referred to in the Customer contract.

To the extent Impala exceeds the applicable amount of Laytime for an Ocean Vessel and subject to Section 1 herein, and Impala's agreement with the Vessel's Statement of Facts as noted below, Impala will reimburse Vessel Party for actual vessel demurrage incurred, invoiced, and paid in accordance with the demurrage rate as set forth in the charter party provided by Vessel Party to Impala prior to Ocean Vessel's arrival at the Terminal. Upon request from Impala, Vessel Party shall immediately supply Impala with a copy of the charter party. Notwithstanding the foregoing, the demurrage shall be reasonably in line with the daily hire rates for the Ocean Vessel at the time of entering the charter party. Vessel Party shall pay despatch compensation to Impala for time saved by exceeding the applicable guaranteed loading rate at an amount equal to 50% of the demurrage rate in the applicable charter party documents.

Notwithstanding anything to the contrary, Vessel Party waives any demurrage claim to which it may be entitled if Vessel Party does not provide notice to Impala on or before 60 calendar days after the date on which the applicable Ocean Vessel completes loading.

Impala shall have the right to review all Statements of Facts issued on the user's behalf. Impala shall have the right to protest any statement of facts issued by User. Impala shall further have the right to issue its own statement of facts, and to the extent that there is any conflict between User's statement of facts and Impala's statement of facts, Impala's statement of facts shall prevail and control.

**3.7.    Closest Available Anchorage**

Ocean Vessels filing a Berth Application to utilize the Terminal normally will be required to anchor at Burnside Anchorage (mile marker LMR 169.2–169.5), or the closest available anchorage to Darrow, Louisiana.

The Vessel Party acknowledges that any Vessel arriving at the Terminal with Cargo on its deck that may constitute a hazardous and unsafe condition will render any NOR invalid. The Vessel Party agrees that if notified of such condition the Vessel Party shall clean and remove any such Cargo from the deck of the Vessel. Should the Vessel Party fail to promptly clean and remove Cargo from the deck of any such Vessel, Impala shall have the right, but not the obligation, to clean and remove the Cargo from the Vessel's deck, which service will be solely for the account of the Vessel Party. Alternatively, Impala may reject the Vessel and refuse to accept it at the Terminal.

The Vessel Party shall coordinate and be solely responsible for all required inspections for cleanliness and compliance with all applicable laws and regulations relative to the fitness of the Vessel. All run off reporting and other environmental compliance and reporting shall be the Vessel Party's sole responsibility. Any EPA, regulatory, or court imposed fines and penalties levied against Impala as a result of a Vessel Party's non-compliance and/or failure to report shall be for the Vessel Party's account.

Upon assignment to the Berth or Buoys, the Ocean Vessel shall remain prepared and be properly crewed to promptly carry out Cargo transfer operations within or between the Terminal's Berth or Buoys, and undock and vacate the Terminal on order of Impala 24 hours a day, 7 days a week, with any crew of the Ocean Vessel. For purposes of these Rules, "promptly" shall mean within 3 hours of notice being tendered by Impala.

In the event that the Ocean Vessel fails to proceed to the Terminal as required by the preceding paragraph, Impala may, in its sole discretion, and without liability to anyone, bypass the subject Ocean Vessel, and the Ocean Vessel and the Vessel Party shall be responsible for a dead berth charge of 115% of the then-current hourly dockage rate per hour (with partial hours prorated) as liquidated damages until the Ocean Vessel is moored at the Terminal, regardless of intervening circumstances of any nature.

**3.8.    Re-filing**

If any Ocean Vessel that has filed a Berth Application is ordered by Impala to proceed to the Terminal and is unable or refuses to accept such order, due to any reason whatsoever, or otherwise fails to comply with these Rules, Impala may, at its sole discretion, cancel the Ocean Vessel's original filing. If a filing is cancelled, the Ocean Vessel must re-file a Berth Application and will be assigned a rotation in the Terminal berthing queue based upon the new filing time.

**SECTION 4.  CARGO OPERATIONS**

**4.1.    Vessel Loading and Unloading**

Impala requires the full cooperation of the master, crew and agents of all Vessels loading and unloading at the Terminal. This includes, but is not limited to the following:

   i.   The Vessel's master and chief mate are responsible for the proper loading and unloading of their Vessel. Impala shall provide Vessel with information with regard to water depth at the berth and buoys based on latest available soundings. However, Vessel's master, chief mate and crew will be responsible for loading the vessel to a safe draft.

   ii.  Shore scales are NOT accurate and should be used as a guide only. It is the responsibility of the Vessel's officers, and not Terminal personnel, to stop loading and unloading — not only when the desired draft

has been reached but also prior to reaching the maximum quantity of Cargo.

iii. There are approximately 100 metric tons of Cargo on the belt, which must be loaded or unloaded before the belt can stop.  Increments of less than 100 metric tons can only be approximated.

iv. The Vessel Party must provide a loading or unloading plan prior to arrival but not later than boarding by Terminal personnel.  Any change to the loading or unloading plan must be given in writing to Terminal personnel.  Terminal reserves the right to reject berthing in the event that an adequate load or unload plan is not provided.

v. The Vessel Party must provide particulars including LOA, beam, hatch configuration, dimensions, and spacing, cranes, as well as on deck obstructions and any structural or other protruding objects in the Vessel cargo hold (including any that may be covered by Cargo).

vi. Vessel pumping ballast and de-ballast as and when requested by Impala as well as stopping ballast removal at the request of Impala.

vii. Vessel arriving above the air draft specified by Impala.

viii. Vessel maintaining an All Fast condition in the Berth or at the Buoys before, during, and after loading or unloading.

ix. Shifting the Vessel in the Berth or at the Buoys at the direction of Impala 24 hours per day if necessary in Impala's reasonable discretion.

x. During Vessel trimming, Impala shall not be required to load Cargo into more than two hatches after completion of the load plan unless the Vessel pays Impala detention charges based on 15 minute intervals and 115% of the then-current hourly dockage rate.

xi. Relocating or rotating the Vessel's gear to clear the hatches and or loading/unloading system immediately upon request by Impala at any time while the Vessel is at the Berth or Buoys.

xii. Opening or closing hatches as and when requested by Impala, including prior to boarding by the Terminal personnel upon arrival and completion of berthing (i.e., when All Fast in the Berth or at the Buoys).

xiii. Upon request by Impala, a suitable space shall be made available on board a Vessel for the Terminal's load master and/or loading personnel for use during weather delays and while calculating stowage or loading systems.

xiv. In the event of a loading or unloading system breakdown or berth system damage, the Vessel shall provide all necessary assistance to reduce damages and/or to assist Impala in resuming the loading or unloading activity.

xv. The loading or unloading of any Cargo via the Terminal's equipment shall constitute acceptance, in full, of all provisions in these Rules.  Failure of a Vessel Party to sign any forms or the modification of any forms by a Vessel Party shall not relieve such Vessel Party of its obligations under these Rules.

xvi. Impala may at its option, but shall not be required, to load beyond the applicable Mississippi River Pilots Association guidelines/suggestions when weather/tide forecast indicate that loading to a deeper draft may substantially delay Vessel departure.

**4.2.** <u>**Stowage**</u>

The Vessel Party shall be solely responsible for the stowage of the Cargo. Cargo shall be stowed within the Vessel only in areas where grabs and equipment spouts can reach, subject to Vessel design capability. Dozer work shall be provided to the Vessel Party at an additional charge agreed upon by Impala and the Vessel Party prior to the Vessel coming into the Terminal. In any event, the loading sequence plan shall not exceed two pass loadings and two hold trims. Impala will allow each Vessel two draft checks which are not to exceed a period of 60 minutes each, time not counted. Any Vessel exceeding the allotted time for draft checks will also be assessed the detention fee of $1,200 per hour (in whole hours).

Any Vessel which is required to shift/warp within the Terminal will be responsible for any/all expenses pertaining to shifting/warping, including, but not limited to, line handling, pilot, and tug(s), or any other fees, unless ordered by Impala outside the course of normal operations.

**4.3.** <u>**Suitability of Cargo**</u>

User hereby expressly acknowledges that Impala only provides transfer facilities at the Terminal. Impala reserves the right, without any responsibility for any loss, damage, or demurrage that may arise, to refuse any Cargo because in the sole discretion of Impala, such Cargo is unmerchantable or in an unfit condition for loading, unloading, transfer or handling.

**4.4.** <u>**Handling of Cargo**</u>

User hereby expressly acknowledges that varying temperatures, moisture and weight changes and spontaneous combustion constitute inherent problems associated with the handling of Cargo. Prior to loading or unloading, User's surveyor shall determine that the temperature, moisture and condition of the Cargo are satisfactory.

**4.5.** <u>**Weather and River Conditions**</u>

At Impala's sole discretion, if weather and/or river conditions threaten the safety of any moored or fleeted Vessel and/or the structural integrity of the Terminal, Terminal operations and/or services will be suspended and any Vessel moored or fleeted at the Berth or the Buoys shall vacate the Berth or Buoys immediately when requested by Impala to do so and until such time as weather and/or river conditions permit return to the Terminal. If any Vessel does not leave the Berth or Buoys within 3 hours of being ordered to do so, all costs (including but not limited to attorneys' fees) and expenses in connection with the moving of the Vessel and mooring or fleeting of same, as the case may be, shall be for the account of and at the full risk of the Vessel and the Vessel Party. In no event shall Impala have any responsibility for any Vessel, including, but not limited to, the cost of moving a Vessel that is ordered to vacate the Terminal for any reason provided in these Rules, and the Vessel Party shall indemnify and hold Impala harmless from same. Any damage to the Terminal or other equipment shall be the responsibility of the Vessel Party and Vessel, and the Vessel Party and Vessel, jointly and severally, shall indemnify and hold Impala harmless from any such damage. Any Vessel calling at the Terminal shall be subject to the written guidelines and procedures relative to hurricanes adopted by Impala, as such guidelines and procedures may be posted and updated from time to time by the Terminal.

**SECTION 5.  VESSEL OPERATIONS**

**5.1.** <u>**Mooring Practices**</u>

The safe berthing and securing of the Ocean Vessels is the responsibility of the Master of the Ocean Vessel, and the safe berthing and securing of the Barges is the responsibility of User. Impala has no duty to direct, control,

or instruct any Ocean Vessel or Barge in its navigation and mooring, to recommend the number of assist tugs, to supply or advise of the number and/or placement of mooring lines the Vessels should employ, to recommend use of pilots, or to advise of open and obvious conditions. Any repositioning or other securing of the Ocean Vessel needed to meet Impala safety requirements will be a precondition to the Ocean Vessel being ready in all regards to load or unload.

**5.2.     Vessel to Remain All Fast**

It is the Vessel's responsibility to maintain the Vessel All Fast in the Berth or at the Buoys at all times, and to maintain lines taught at all times to prevent Vessel from moving in the Berth or at the Buoys. If the Vessel is not maintained All Fast, Impala reserves the right, in its reasonable discretion, to: (a) suspend loading or unloading; (b) require Vessel to ballast or de-ballast to a safe condition; and/or (c) order the Vessel to leave Berth or Buoy at Vessel's expense. The Vessel will be held responsible for all delay costs resulting from not maintaining the Vessel All Fast in the Berth or at the Buoys, inclusive of all standby time incurred by any Impala crane barge. All such charges will be assessed as set forth in these Rules.

**5.3.     Berthing and Safety Equipment**

Upon berthing, the Ocean Vessel shall immediately and at all times provide adequate lighting, equipment, and appropriate officers and crew aboard to permit loading or unloading, as the case may be, of Cargo at any time of the day or night, including Saturdays, Sundays and Holidays. All Ocean Vessel officers and crews shall wear life jackets, safety glasses, steel-toed boots, and hard hats while at the Terminal.

**5.4.     Line Handling**

The master and crew of every Vessel will provide assistance in handling lines and operating deck machinery. If necessary, the Vessel shall safely shift on its own lines as required by Impala during loading or unloading. An English-speaking deck officer must be available to ensure timely response to directions of any representatives of the Terminal relative to handling of lines. Terminal representatives will position lines in the Berth and at the Buoys. Line handling by Impala for docking and undocking of Ocean Vessels in the Berth and at the Buoys, shall be assessed at the rate provided in Schedule 1.

**5.5.     Use of Tugs**

When an Ocean Vessel is entering or leaving the Terminal, and/or loading or unloading at the Terminal, Impala shall provide a the number tugs required and requested by the Vessel Master and/or the Vessel's agent at the sole expense of and for the account of the Vessel and the Vessel Party at the rates set forth in Schedule 1. If the Master of the Ocean Vessel determines that weather or other conditions warrant the use of additional tugs, such additional tugs will be at the sole expense of and for the account of the Ocean Vessel and the Vessel Party, at the rates set forth in Schedule 1. A one hour waiting period from the call-out time is allowed. Any additional time will be invoiced in accordance with the standby rate set forth in Schedule 1. Charges for tug and towage services will be assessed to the relevant Vessel Party by Impala.

**5.6.     Continuous Readiness**

Assignment of the Berth or Buoys under these Rules is predicated upon Ocean Vessel's continuous readiness 24 hours a day, 7 days a week to receive or unload Cargo at the Terminal's full normal rate, throughout the entire time in Berth or at the Buoys and compliance with the directions of Impala, including shifting within or between anchorage sites, the Berth or the Buoys. Any delay in loading or unloading by the Ocean Vessel or refusal to follow directions of Impala, including an order to vacate the Berth or Buoys, shall subject the Ocean Vessel and the Vessel Party to a charge of 115% of the then-current hourly dockage rate per hour (with partial hours prorated)

which shall be assessed as liquidated damages regardless of any intervening circumstances of any nature.

**5.7.    Vessel Rotation**

Impala may alter the turn of Ocean Vessels for loading or unloading, when, in Impala's sole judgment, it is in the best interest of Terminal operations; provided, however, if Impala chooses to berth an Ocean Vessel in front of another Ocean Vessel that properly tendered NOR first (and such Ocean Vessel that first tendered NOR arrived within its Laycan and otherwise complied with the terms hereof, including, without limitation, Section 3), only in such instance will Impala be liable to such displaced Vessel Party for demurrage in accordance with the charter party disclosed to Impala.

**5.8.    Vacating the Terminal**

If an Ocean Vessel (a) is unable or refuses to load or unload, or shift within or between anchorage sites, at the Berth or the Buoys, (b) refuses or fails to vacate the Terminal when ordered to vacate at any time in Impala's sole discretion, or (c) fails to vacate the Terminal within one hour of completion loading or unloading, Impala shall be entitled to charge and recover from Ocean Vessel and the Vessel Party as liquidated damages 115% of the then-current hourly dockage rate per hour (with partial hours prorated) beginning one hour after delivery of the notice to vacate and continuing as long as the Ocean Vessel remains in the Terminal, regardless of any intervening circumstances of any nature.

**5.10.    Nuisance Created By Vessels**

No Vessel shall permit excessive smoke, steam, noise or cleaning of boiler tubes by blowing or other means while at the Terminal.

**5.11.    Vessel Suitability**

Impala reserves the right to refuse any Vessel considered unseaworthy due to damage, distribution of load, draft or lack of freeboard, lists or such other reason for which Impala deems the Vessel not suitable for calling upon or conducting operations at the Terminal. The Vessel Party, at all times, shall remain responsible for the seaworthy condition of its Vessel. The berthing of any Ocean Vessel or delivery of any Barge to the Terminal shall constitute a warranty by the Vessel Party to Impala that the Vessel is seaworthy and that same is capable of either being loaded with the Cargo to be loaded by Impala or to be unloaded by Impala using the equipment normally employed by Impala. In no event shall Impala be responsible for the seaworthiness, maintenance, repair or service of any Vessels coming into the Terminal or delivered to the Terminal, such responsibility being that of the Vessel Party. Notwithstanding the foregoing, should any Vessel develop any leaks, cracks or other conditions which, in the sole judgment of Impala, may result in damage to the Vessel and/or its Cargo, the Vessel Party agrees to take whatever steps are necessary to protect the Vessel and/or its Cargo.

**SECTION 6.    GOVERNING LAW; FORCE MAJEURE; LIMITATION OF LIABILITY; MISCELLANEOUS**

**6.1.    Governing Law; Jurisdiction and Venue**

This Agreement shall be construed and enforced in accordance with the General Maritime Law of the United States, and to the extent they are not applicable, the laws of the State of Louisiana shall apply without regard to its conflicts of laws provisions. User hereby submits to the exclusive jurisdiction of the United States District Court for the Eastern District of Louisiana (New Orleans Division) in the State of Louisiana, and irrevocably waives any objection which it may now or hereafter have to said venue and/or forum. Should Impala engage counsel to enforce any provision in these Rules, User and/or Vessel Party shall be liable for any and all attorney's fees and

costs incurred by Impala.

**6.2.    Force Majeure**

In the event that Impala or User or any Vessel Party is rendered unable, wholly or in part, by reason of Force Majeure to carry out its obligations under these Rules, it is agreed that the obligations of such party shall be suspended to the extent of and during the continuance of any inability so caused, but for no longer period; and such cause shall, so far as reasonably possible, be remedied with all reasonable dispatch by the party or parties claiming Force Majeure.  If the Force Majeure event renders Impala unable, wholly or in part, to carry out its obligations under the Rules, User may at its discretion make other arrangements for berthing, transfer or stevedoring operations until the Force Majeure event has ended.  The party claiming Force Majeure shall provide written notice to the other party of such Force Majeure, and in such notice, shall give reasonably full particulars concerning the nature and anticipated duration of the Force Majeure and the actions being taken to avoid or minimize its effect, as soon as reasonably possible after the occurrence of the cause relied upon.  Impala shall not be liable for demurrage or any other charges incurred by a Vessel Party or User during a Force Majeure event.

**6.3.    Limitation of Liability**

EXCEPT WITH RESPECT TO A PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER IN NO EVENT SHALL A PARTY BE LIABLE TO ANY OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOST REVENUE, LOST PROFITS OR LOST BUSINESS, OR LOSS OF MARKET VALUE, REGARDLESS OF WHETHER AS A RESULT OF THE NEGLIGENCE, STATUTORY STRICT LIABILITY, OR FAULT OF EITHER PARTY, RELATING TO THESE RULES.

**6.4.    Miscellaneous**

a.    Headings and sub-headings of Sections in these Rules have been included for convenience and are not deemed to be part of this Agreement and shall not be used in the interpretation or construction of these Rules.

b.    The waiver by Impala of any of the terms and conditions contained in the Rules shall be valid only if in writing and to the particular occasion and shall not be deemed to be continuing or a waiver by Impala unless specifically expressed in writing by Impala to be so, and shall not constitute a waiver or relaxation of any of the other conditions contained in these Rules.

c.    If and for so long as any provision of these Rules shall be deemed to be judged invalid for any reason whatsoever, such invalidity shall not affect the validity or operation of any other provision of these Rules except only so far as shall be necessary to give effect to the construction of such invalidity, and any such invalid provision shall be deemed severed from these Rules without affecting the validity of the balance of these Rules.

**SECTION 7.  DEFINITIONS**

"**Acceptance Notice**" has the meaning given that term in Section 3.2.

"**Agents**" has the meaning given that term in Section 1.5.

"**All Fast**" means that such Ocean Vessel is safely secured to the Berth (or the Buoys) and that the gangway is down and secured.

"**Barge**(s)" means conventional open hopper rivers barges provided by User.

"**Berth**" means the Terminal's fixed dock and wharf structure located at mile marker LMR 169.5.

"**Berth Application**" means that certain Impala Terminals Burnside LLC Berth Application, a form of which is attached hereto as Schedule 2, as such application is distributed by Impala, posted on its website and updated from time to time.

"**Buoy**(s)" means Terminal's midstream mooring buoy system located at mile marker LMR 169.2.

"**Cargo**" means coal and other dry bulk cargo as approved by Impala.

"**Claims**" means all claims, suits, causes of action, demands, losses, liabilities, damages, costs, expenses, fees (including, but not limited to, reasonable attorneys' fees), and court costs.

"**Customer Contract**" has the meaning given that term in Section 1.1.10.

"**Day**" means a consecutive 24-hour period or fraction thereof.

"**Deadweight**"  means  the  difference between a Vessel's  loaded and light displacement, consisting of the total weight of cargo, fuel, fresh water, stores, and the crew.

"**Dockage**" means the charge assessed against a Vessel for berthing at the Terminal and as set forth in Schedule 1.

"**Estimated Time of Arrival**" or "**ETA**"  means the Vessel-issued information regarding estimated arrival date and time at the specific location off the Terminal at which Vessel will customarily be required to tender NOR.

"**Force Majeure**" means any act, event, or circumstance at the Terminal or that effects the Impala's ability to provide Services at the Terminal, whether of the kind described herein or otherwise, that is not reasonably within the control, does not result from the negligence of, and would not have been avoided or overcome by any exercise of reasonable diligence by, the party claiming force majeure, and that prevents or delays in whole or in part such party's compliance with, or performance of any one or more of its obligations under these Rules, and may include without limitation the following: acts of God, acts of natural phenomena, landslides, subsidence, severe lightening, earthquakes, volcanic eruptions, fires, tornadoes, hurricanes, storms, floods and high water, washouts, tidal waves or tsunamis; acts of terrorism or war; strikes, lockouts or labor disputes; orders, rules, regulations, restrictions or laws of any governmental authority having or asserting jurisdiction; expropriation, requisition, confiscation, or nationalization of the terminal; epidemics or quarantine; inability to procure material, equipment or necessary labor for the Terminal; inability to obtain, or suspension, termination, adverse modification, interruption or inability to renew any servitude, right of way permit, license, lease, consent, authorization or approval of any governmental body having or asserting jurisdiction; or breakdown or destruction of the Terminal docks, pipelines, machinery, or equipment; electrical failure at the Terminal, closures or restrictions imposed on the port or public channels (including fog restrictions) by the U.S. Coast Guard or other governmental authority having or asserting jurisdiction over the Terminal and/or operations on the LMR.

"**Holidays**" shall consist of the following days and any other days that may be designated as holidays by the United States, the State of Louisiana, Ascension Parish or any other governmental authority having lawful jurisdiction, or in the labor agreements between Impala and its employees: New Year's Day, Martin Luther King Jr.  Day, President's Day, Mardi Gras Day, Good Friday, Easter, Memorial Day, Independence Day, Labor Day, Columbus Day, All Saint's Day, Veteran's Day, Thanksgiving Day, Christmas Eve, Christmas Day and New Year's Eve. Should any of the above holidays mentioned, or not mentioned, fall on Saturday, the preceding Friday shall be observed as a holiday and any holiday that falls on a Sunday shall be observed on the following Monday.  No work days are Labor Day, Christmas Day (6:40 P.M. December 24th through 6:40 A.M. December 26th) and New Year's

Day (6:40 P.M. December 31st through 6:40 A.M. January 2nd).  Abbreviated work hours may be observed on any holiday that Impala shall designate.

"**Impala**" means Impala Terminals Burnside LLC.

"**Impala Group**" has the meaning given that term in Section 1.3.2.

"**Laycan**" means that certain period within the Layday Period and the earliest date at which loading (Laytime) can commence and the latest date upon which the Vessel can arrive at its appointed loading place without being at risk of being canceled.

"**Layday Period**" means the agreed-upon period during which Vessel Party will make the Vessel available for loading.

"**Laytime**" means the period of time during which Impala must load the Vessel at the loading rates set forth herein subject to all other terms herein.

"**Notice of Readiness**" or "**NOR**" means the document to be tendered by the Vessel master or the Vessel agent to the Terminal indicating readiness for proceeding to the Terminal (according to the terms hereof, including, without limitation, Section 3.4) following arrival of such Vessel at the specific location off the Terminal at which Vessel will be customarily required to wait for pilots or prior to proceeding to the Terminal.

"**Ocean Vessel**" means any single-deck, ocean-going Vessel, other than a Barge, that utilizes the services and facilities of the Terminal for the loading, unloading, handling or transfer of Cargo.

"**Rules**" means these Burnside Terminal Rules and Regulations, as amended from time to time.

"**Terminal**" means the bulk loading terminal known as the "Burnside Terminal" located at 4258 Hwy 44, Darrow, Louisiana, 70725 owned by Impala, which includes the Berth and the Buoys with the characteristics listed in Section 2 and is capable of safely accommodating Vessels for loading or unloading.

"**User**(s)" shall include the Vessel Party, any person or entity with whom Impala has a separate contract for use of the Terminal, and all individuals or business entities, including all Ocean Vessels, Barges, trucks, railroad cars or other means of conveyance and/or equipment used by Vessel Party and said individuals or business entities, which utilize the services and/or facilities of the Terminal.

"**Vessel**" includes within its meaning every description of water craft or other artificial contrivance whether self-propelled or non-self-propelled, capable of being loaded or unloaded at the Terminal and used as a means of transportation on water and shall include in its meaning the owner thereof and the agent acting on its behalf.  The term "Vessel" or "Vessels" shall include any Barge, ocean-going barge, or Ocean Vessel.

"**Vessel Party**" means any party or parties owning, operating, nominating or contracting with a Vessel, including, but not limited to, her agent(s), owner(s), operator(s), charterer(s), and any of her or their respective employees and contractors.

"**Visitor List**" has the meaning given that term in Section 3.4.

"**Visitor**(s)" means any individual or entity listed in the Visitor List and any other individual or entity that seeks access to the Terminal or any Vessel berthed there, including, but not limited to, any surveyor.

"**Weather Working Day**" means any period of 24 consecutive hours during which weather permits ship loading

operations, as determined in Impala's sole but reasonable discretion.

## Schedule 1.  TERMINAL SERVICES AND RATES

Current rates are set forth on <u>Appendix I</u> hereto.  Such rates are subject to change at the discretion of Impala.  Lack of notice by Impala or lack of acknowledgment by the Vessel will not relieve the User, Vessel Party and/or Vessel of its obligation to pay the changed fees:

**A.     DOCKAGE** (at the Berth or the Buoys)

Dockage shall be assessed against each Vessel (excluding Barges) per Gross Registered Ton (GRT) per 24 hour period, not prorated.  The dockage day shall commence upon the Vessel's first line at the Berth or the Buoys and shall be considered complete at the time the last line is removed from the Berth or the Buoys.  The GRT shall be based on the Vessel's highest GRT as per Lloyd's Register of Shipping.  The Terminal's fuel surcharge shall not apply towards dockage charges.

**B.     TOWAGE SERVICES**

Towage shall be assessed to each Vessel per tug for Vessels mooring or unmooring at the Berth, per tug for Vessels mooring or unmooring at the Buoys and an additional per-hour charge per tug for Vessels requiring warping assistance alongside the Berth.  Hold in tugs (if required by the Vessel) shall be assessed a per-hour rate per tug, and Impala will assess a per-hour rate per tug for any tug delays or tug standby time which may be incurred.  While these towage service rates do include customary GRT charges, they do not include and are subject to Terminal's fuel surcharge.  Vessel agent shall make arrangements for timely tug assistance directly with a tug service provider.

**C.     LINE HANDLING SERVICES**

Line handling services shall be assessed to each Vessel for Vessels mooring to the Berth and a separate charge for Vessels mooring to the Buoys.  The rate for mooring to the Berth is not subject to a fuel surcharge unless a crew boat is needed to secure the Vessel at the Berth.  The rate for mooring to the Buoys is subject to Terminal's fuel surcharge.  Line handling charges include both mooring and unmooring of each Vessel but do not include any additional line services which may be required by the Vessel, such as line assistance for warping, which can be discussed on a case by case basis.  There shall be a re-tie cost in the Berth or at the Buoys should the Vessel required re-tying.

**D.     LAUNCH SERVICES**

Impala will provide launch access to/from the Vessels in conjunction with the calculation of dockage days.  Terminal's launch service per-day fee is subject to Terminal's fuel surcharge.  Impala reserves the right to refuse service to anyone wishing to utilize Terminal's launch service who in Impala's opinion is a risk to safety or is visiting for a reason other than official ship's business.  Impala will not permit any stores, pallets, cylinders, lubes, etc. to be delivered to any Vessel via its launch service.

**E.     SECURITY FEES**

Impala will assess to, and collect a security fee per day for each Vessel moored at the Berth and to each Vessel moored at the Buoys.  The day shall be determined as per the dockage and launch calculations.  It should be noted that this security fee does not constitute providing security for the Vessel if so ordered by a U.S. government agency.  In such a case, the vessel agent shall arrange security guards on behalf of the Vessel and at the Vessel's expense.  The security fee shall be in addition to all other fees and charges due hereunder.

## F.    ACCESS FEE

Impala will assess a terminal access fee per-person each way for any Visitor who wishes to transit through Terminal's terminal boundaries to or from the Vessel. Impala reserves the right to refuse passage of anyone whom Impala deems is a risk to safety or is visiting for a reason other than official ship's business. Proper credentials must be presented to Terminal's security officer and it is recommended that advance arrangements be made for any such passage in order to avoid unnecessary delays. Vessel agents and marine surveyors who are performing official ship's business for the present voyage shall be exempt from this fee and access through Terminal will only be granted to agents and surveyors who are in possession of a valid Transportation Worker Identification Card (TWIC).

## G.    FUEL SURCHARGE

Impala will assess a fuel surcharge on towage, line handling and launch services. Terminal's fuel surcharge is 1% percent for each 3¢ per gallon above $2.00 at the time of first service provided to the Vessel. Terminal's fuel surcharge will not apply towards dockage charges. The following is an example of the fuel surcharge:

Variable (A) Current Posted Price of ULSD No. 2 Diesel for the Previous Month

Basis (B) of Fuel: $2.00

Fuel Adjustment Factor (C) = (A) – (B)

Surcharge (D): (C) / 3¢

For example, if the current price of ULSD for the previous month is $2.50 per gallon the surcharge calculation is:

$$(2.50-2.00) / .03 = 16.67\%$$

## H.    DOCK DETENTION PENALTY

Impala shall been titled to charge and recover from Ocean Vessel and the Vessel Party as liquidated damages 115% of the then-current hourly dockage rate per hour (with partial hours prorated) beginning one hour after delivery of the notice to vacate and continuing as long as the Ocean Vessel remains in the Terminal, regardless of any intervening circumstances of any nature.

Impala shall not provide any gangways. Impala reserves the right to deny use of Terminal and/or to provide above mentioned services solely at Terminal Operator's discretion, including during changes in MARSEC level, river conditions or severe weather events. All fees must be paid in advance to Terminal based on the estimated fees prior to Vessel's berthing unless otherwise mutually agreed between Impala and the Vessel.

## I.    WHARFAGE RATES

Wharfage will be charged for Vessels loading/unloading/transshipping Cargo directly to or from other Vessels/barges at standard wharfage rates. Wharfage shall be negotiated between Impala and the Vessel prior to any loading/unloading/transshipping taking place. No such loading/unloading/transshipping shall occur without the prior approval of Impala and, if necessary, the U.S. Coast Guard.

## J.    LAYBERTH

A Vessel berthed at Terminal for non-loading purposes (i.e., lay berth) shall be charged at the same rates as those berthed for loading/unloading purposes.

{N3564250.1}

**K.     BARGE COVER HANDLING**

Any Barges requiring assistance by Impala in handling river barge covers shall be charged for the service at a rate of $1,250 per Barge.

*Impala Terminals Burnside Rules and Regulations*
*Effective: February 1, 2021*

Appendix I: Rate Schedule

| Service | Fee Description | Berth | Buoy |
|---|---|---|---|
| Dockage | | 0.60 Per GRT Per 24 Hour Period subject to minimum charge of $7,500 per day | 0.60 Per GRT Per 24 Hour Period subject to minimum charge of $7,500 per day |
| | Vacate Berth or Detention | 115% of then-current hourly dockage | 115% of then-current hourly dockage |
| Towage | Docking/Undocking | $3500.00 Per Tug | $3950.00 Per Tug |
| | Reporting Fee | $2,000.00 Per Tug | $2250.00 Per Tug |
| | Warping Assistance | $975.00 Per Hour | $975.00 Per Hour |
| | Hold In Tugs | $975.00 Per Hour | $975.00 Per Hour |
| | Tug Delays / Standby | $975.00 Per Hour | $975.00 Per Hour |
| | Tractor Tugs | 1.5 Times the applicable rate above | 1.5 times the applicable rate above |
| Line Handling | Docking/Undocking | $3500.00 Includes In And Out | $4000.00 Includes In And Out (double during high water) |
| | Delays after one hour/Stand by fee | $225.00 per hour | $500 per hour |
| | Re-Tie Cost/Reporting fee | $1750.00 | $2250.00 |
| Launch Service | | $1200.00 Per Day | $1200.00 Per Day |
| Security Fees | | $1250.00 Per Day | $950.00 Per Day |
| | Fuel Surcharge | One (1%) Percent For Each 3¢ Per Gal. | One (1%) Percent For Each 3¢ Per Gal. |
| | Fuel Base Cost | $2.00 Per Gal. | $2.00 Per Gal. |
| | Bunkers | Permitted with prior notice or arrangement | Permitted with prior notice/arrangement |
| Barges | Cover Handling | $1,250 per occurrence not including shifting fees | N/A |
| | Barge Pumping | $750 per occurrence | N/A |
| Mid Stream Crane | Stand by (Delay) | $1,200 per hour | N/A |

Schedule 2.  BERTH APPLICATION FORM

## IMPALA TERMINALS BURNSIDE LLC
## BERTH APPLICATION AND ACCEPTANCE OF FINANCIAL RESPONSIBILITY

**Email:** BurnsideShips@ImpalaTerminals.com
**FAX:** (225) 289-5225
**TERMINAL OFFICE PHONE:** (225) 289 - 5211

THIS APPLICATION MUST BE SUBMITTED AS FAR IN ADVANCE OF THE DATE OF BERTHING AS POSSIBLE. AGENT WILL PROMPTLY NOTIFY THE APPROPRIATE VESSEL SCHEDULING OFFICE OF ANY CHANGES IN THE INFORMATION SUPPLIED BELOW.  AGENTS ARE ADVISED THAT BLANK ENTRIES ON THIS FORM MAY RESULT IN REJECTION OF THIS BERTH APPLICATION BY IMPALA.  IMPALA WILL NOTIFY AGENT OF UNACCEPTABLE APPLICATIONS.

| VESSEL PARTICULARS | | | | | |
|---|---|---|---|---|---|
| VESSEL NAME / VOYAGE NUMBER | FLAG | G.R.T | L.O.A | BEAM | MAX     DRAFT (FT/IN) |
| | | | | | |
| VESSEL OWNER/OPERATOR/CHARTERER/LINE | P & I CLUB / LOCAL CONTACT | | | | LLOYDS NO. |
| | | | | | |
| EST.  BOARDING DATE/TIME | EST.  DEPARTURE DATE/TIME | BERTH REQUESTED/SHIFTS | | | |
| | | | | | |
| INBOUND   CARGO   AND   ESTIMATED METRIC | | | | | |
| OUTBOUND   CARGO   AND   ESTIMATED METRIC TONS | | | | | |
| APPOINTED STEVEDORE | | LAYBERTH     LIGHTER     FRESH WATER | | | |
| NOTE: Agents are advised that safety guidelines are set by the local pilots associations in regard to vessel length, draft, beam air draft, and other factors that may affect the transit of the vessel into the Terminal.  Please consult with the local pilot associations to determine if any restrictions apply. | | | | | |

Any ballast removed from the vessel after loading commences must be coordinated with the management at the Burnside Terminal. It is understood and agreed that ship officials will acknowledge cargo receipt at the Burnside Terminal by signing and releasing a clean Mates' Receipt immediately upon completion of loading.

THE UNDERSIGNED COMPANY, AGENTS FOR THE ABOVE-NAMED VESSEL, IN CONSIDERATION FOR APPROVAL OF THE BERTH APPLICATION, AGREES TO BE BOUND BY ALL RULES, REGULATIONS, TERMS, CONDITIONS AND CHARGES AS PUBLISHED BY IMPALA, INCLUDING ACCEPTANCE OF FINANCIAL RESPONSIBILITY THEREFOR.

| DATE OF APPLICATION | APPLICANT COMPANY NAME AND BILLING ADDRESS | | PRINT NAME AND JOB TITLE | |
|---|---|---|---|---|
| | | | Name | |
| | | | Title | |
| | | | Signature | |
| IMPALA USE ONLY | APPROVED Subject to Availability | | CREDIT OK | JOB NUMBER  ASSIGNED |