# Exhibit I

# K&L GATES

November 24, 2025

L. Etienne Balart
Jones Walker
201 St. Charles Avenue
New Orleans, LA 70170
*Via Email*: ebalart@joneswalker.com

George K. Kontakis
Partner
george.kontakis@klgates.com

T +1 212 536 4021
F +1 212 536 3901

Re:   TERMINALING AND THROUGHPUT AGREEMENT, effective as of the 27th of November 2023, between Avanza Trading LLC ("Avanza"), and Impala Terminals Burnside LLC (as amended, the "Agreement")

Dear Mr. Balart,

This firm is litigation counsel to Avanza. I write in response to your November 10, 2025, Memorandum (the "Memo"), forwarded to Avanza by your client ("Host"), which purports to justify your client's future breach of the Agreement. Your analysis is flawed and misconstrues key provisions in the Agreement. As acknowledged in your Memo, the fundamental purpose of the Agreement was to "lock in" certain rates for Services and Ancillary Services, yet your analysis ignores this admitted understanding and wrongly concludes that your client may ignore its contractual obligations and charge amounts that are inconsistent with the agreed rates.

As successor-in-interest to Impala Terminals Burnside LLC ("Impala"), Host is obligated to honor the commitments set forth in the Agreement for so long as the Agreement stays in force. Thus, Host must provide Services[1] and Ancillary Services during the term of the Agreement at the prices set forth in the Agreement. Agreement, § 1. This includes Host's obligation to provide the Services and the Ancillary Services with respect to the Product delivered to the fleeting services area across the river from the Terminal. Agreement, § 4(a). The Services are identified in Exhibit A to the Agreement and include services such as stockpiling, storage, unloading, loading, and commingling Product. In addition to Exhibit A, the rates for Services are further addressed in Exhibit C of the Agreement, which incorporates the Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021 (the "Tariff"). The Agreement specifically provides that this version of the Tariff "shall remain valid and in force throughout the term of the Agreement." Agreement, § 2.

---

[1] Capitalized terms not defined herein shall have the meaning given them in the Agreement.

Your advice that Host may breach its contractual obligations by applying new Tariff rates if the Product is delivered to or handled at the Terminal by Avanza's designees finds no support in either the text of the Agreement or New York law. Specifically, you conclude that the "Rates for Services are only applicable as between terminal owner and Avanza and for those services provided directly to Avanza." You base this conclusion on Section 11(a), which provides that the "Product Owner" (i.e. Avanza) shall pay the terminal owner for the Services at the rates set forth at Exhibit A, and you therefore conclude that any party who is not Avanza can be charged a rate inconsistent with the Agreement.

This conclusion is incorrect because your analysis ignores the full description of services in Exhibit A. These services expressly include the Terminal's loading and discharging of cargo from vessels that are present at the Terminal on Avanza's behalf. For example, Exhibit A provides, among other things, that Services shall include "Loading | From a river-barge Vessel or the stockpile to an ocean-going Vessel" and "Unloading | From a river-barge Vessel to the stockpile." Further, "Vessel" is defined as follows:

> "Vessel" means, as applicable, any river barge suitable for unloading Product at the Terminal or any ocean-going vessel suitable for loading Product at the Terminal, each of which <u>is in the employ of or hired by</u> Product Owner and capable of unloading and loading Product as required by the Tariff.
>
> Agreement, § 2 (underline emphasis added).

Accordingly, the Terminal agreed that its rates for loading and unloading Product from barges at its facility would apply to any vessel "which is in the employ of or hired by" Avanza. When Services from Exhibit A and the definition of Vessel are inserted into Section 11(a), it reads as follows:

> Subject to the terms and conditions of this Agreement, Product Owner shall pay Impala for the [loading or unloading of river barges or ocean-going vessels employed or hired by Avanza] at the rates set forth at Exhibit A, Fees, and the Burnside Tariff, as applicable.

The plain language of these terms makes clear that the agreed rates apply to any Services provided to barges and ocean-going vessels handling Product on behalf of Avanza. This is entirely consistent with the parties' intent in forming the Agreement, which was, as you say, to "lock in" Rates for Services. Avanza is not in the business of owning vessels and instead hires them through third parties, thus an interpretation of the Agreement that would permit the Terminal to charge higher than agreed amounts to vessels not directly owned by Avanza would render the entire agreement meaningless as these amounts would simply be charged back to Avanza by the subject vessels. This would be contrary to cardinal rules of contractual interpretation and contrary to the parties' clear intent.

Indeed, your interpretation implies that Avanza and your client's predecessor-in-interest negotiated the Agreement (including its amendments) knowing full well that the negotiated prices would not

apply to the Product. This is absurd. Section 4 of the Agreement makes clear that the prices for the Services and Ancillary Services were to apply when the Product was delivered as set forth in the Agreement and that the Tariff rates from 2021 would remain in force during the full term of the Agreement. Your interpretation is not only inconsistent with the express language of the Agreement, but also contrary to Avanza's past dealings and course of conduct with Impala.

As Section 11(a) provides, the agreed Rates include "all stevedoring charges, wharfage, dockage, equipment use or rental fees, tolls, taxes, tariffs, and any other fees or costs levied against Impala in the performance of Services." To the extent any of these costs are incurred in the rendering of Services to vessels hired or employed by Avanza, these costs are already included within the agreed Rate. Any attempt by Host to assess charges for these categories of expenses in excess of the agreed Rates against either Avanza or vessels acting on Avanza's behalf would be a breach of the Agreement and entitle Avanza to damages. For the avoidance of doubt, we disagree entirely with your analysis of the Agreement.

Coupled with your Memo, Host's presentation to Avanza of new tariff rates for 2026 indicates that Host intends to breach its Agreement by improperly applying new rates for Services. Please confirm by Friday, December 5, 2025, that Host will continue to honor the prices set forth in the Agreement for the Product through the end of the term of the Agreement.

Product Owner reserves all of its rights under the Agreement, applicable law, and at equity. This notice is sent without prejudice to Product Owner's right to hold Host liable for additional breaches of the Agreement not set forth herein.

Sincerely yours,

*[signature]*

George K. Kontakis