# Exhibit J



L. Etienne Balart
D:  504.582.8584
F:  504.589.8584
ebalart@joneswalker.com

Sara B. Kuebel

D:  504.582.8483
F:  504.589.8483
skuebel@joneswalker.com

December 1, 2025

**Via E-mail (George.kontakis@klgates.com)**

George K. Kontakis
K&L Gates LLP
599 Lexington Ave
New York, NY 10022-6030

Re:   TERMINAL AND THROUGHPUT AGREEMENT, effective as of the 27th of November 2023, between Avanza Trading LLC ("Avanza"), and Impala Terminals Burnside LLC (as amended, the "Agreement")
**Our File No.:** 29040600

Dear Mr. Kontakis:

This is to acknowledge receipt of the November 24, 2025 correspondence sent on behalf of Avanza (the "Letter") and concerning the Agreement.  We disagree wholeheartedly with your assertion that our client, Ascencion Bulk Terminal, LLC, intends on breaching the Agreement.  Notably, while the Letter goes to great lengths to interpret the Agreement's plain terms, the fact of the matter is that if the two parties had wished to make *all* charges for *all* services relating to *all* Product subject to the Agreement, they very easily could have so specified in the Agreement.  The fact that they definitively did not say that speaks volumes as to the intentions of the parties, and the after the fact interpretation in the Letter.

As an initial matter, acknowledging the fundamental purpose of the Agreement to lock in *certain* rates does not then lead to the conclusion that all rates for all services are so agreed.  To the contrary, the Agreement contains both Services and Rates that are *identified and agreed to* as between the parties for the provisions of such Services as are contemplated by the Agreement.  Notably absent from the Letter is citation to any language in the Agreement where Impala Terminals Burnside, LLC agreed that the rates charged to third-parties were to be governed by the Agreement, nor, equally, any language indicating Avanza's expectation of such.

Equally telling is the failure of the Letter to address specific language in the Agreement that can only be understood to *exclude* third-parties to the Rates set forth in the Agreement.  Namely, the Letter fails to address this sentence in Section 11:  "**All other fees and costs**, including but not limited to, shifting and fleeting fees, wharfage and dockage fees, mooring fees, port charges, tolls, harbor fees, taxes, tariffs, survey fees, security fees, and any other fees or costs levied against the Ocean Vessel, River Barges or the Cargo, *shall be for account of Product Owner, the Ocean Vessel, charterers or agents* **as customary**."  If, as the Letter suggests, the parties agreed that all services provided at any time to

the Product were to be subject to the Agreement, then the preceding sentence would not have been included.

Moreover, a construction of the Agreement that the Rates in the Agreement are to cover all services for the Product, including those such as dockage and fleeting, is both absurd and simply not supported by the Agreement's terms. Your interpretation of the Services provided in Exhibit A seems to suggest that all collateral services are thus necessarily included and governed by the Rates, even if typically provided and or handled by a third-party. By this argument, one would have to assume that the $3.50 per MT rate in current Exhibit A includes all charges associated with the terminal owner ever handling the Product for Avanza, a concept that not even Avanza could assert with a straight face. And, this is certainly not how the parties have previously handled this issue. Put simply, if Avanza's interpretation is correct, no party should have ever been charged dockage, fleeting or other charges because the "all in" rate in Exhibit A covers all collateral services.

The handling rate for Vessels involved in loading or unloading "in the employ of or hired by" Avanza covers simply that – the service of loading and unloading. It does not, and has never been construed by either party, to apply to all services rendered to the Product. My client categorically rejects this novel interpretation of the Agreement.

Equally true is the fact that fleeting charges have never been considered part of the rates set forth for the Services, and no amount of tortured interpretation can alter the terms of the Agreement. The Letter simply ignores that (i) Exhibit C contains no rates covering fleeting related services, or other customary charges at fleeting; (ii) Section 6(a) of the Agreement deals with "Vessel Unloading and Loading," and makes no incorporation of agreed rates; (iii) in Section 6(a), the parties agree that fees for fleeting and shifting are subject to separate agreement; and (iv) such charges have always been provided by a separate entity from terminal owner that is not subject to the Agreement. These rates and charges are, quite plainly, not included in the Services and therefore are not covered as an "all in" rate nor prohibited from being assessed to others, as applicable, given the language in Section 11.

The Services subject to the Rates are as set forth in Exhibit A, Fees and the Burnside Tariff *as applicable*. The ordinarily understood meaning of this express language is, to the extent Impala is provided a Service, it is subject to the Fees and Burnside Tariff. It does not follow, from any reasonable construction, that services provided to entities other than Avanza are included in the Agreement or that rates for services charged to others are limited by the Agreement. The Letter mentions that "Avanza's past dealings and course of conduct with Impala" would suggest that the agreed rates in Exhibit A apply to all Services including dockage and fleeting. While such evidence would remain extrinsic to an interpretation of the plain language used by the parties, please provide that information to us for review.

We can confirm that my client intends to honor the terms of the Agreement as it was written and agreed to between the parties, and this letter is issued on a without prejudice basis with all rights reserved. Should you have any questions concerning the above, please do not hesitate to contact the undersigned, and we look forward to receipt of the requested information.

Very truly yours,

*[signature]*

L. Etienne Balart

LEB/ kgc

cc:
Mr. Matthew Mancheski (Matthew.Mancheski@tparkerhost.com)