**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AVANZA TRADING, LLC,

                        Plaintiff,

     v.

ASCENSION BULK TERMINAL, LLC,

                       Defendant.

Case No.: 1:26-cv-64 (LGS)

Rule 9(h)

**ASCENSION'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AND ASCENSION'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Ascension Bulk Terminal, LLC ("Ascension"), pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York and Rule 56(c) of the Federal Rules of Civil Procedure hereby submits this response to the Statement of Material Facts[1] submitted by Plaintiff Avanza Trading, LLC ("Avanza") and Statement of Undisputed Material Facts in support of Ascension's cross-motion for summary judgment.

**ASCENSION'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

**"Nature of the Action"**

1.     Avanza seeks a declaratory judgment that the Agreement, and all incorporated tariffs and pricing, applies to services provided by Defendant to any barge or ocean-going vessel that is discharging, transporting, or loading Avanza's coal (the "Product") through the term, and any extended term, of the Agreement.[2]

---

[1] Avanza's footnotes are included although their numbering has changed with the addition of Ascension's footnotes.
[2] *See* Complaint (Dkt. No. 1).

1

#111836512v4

**Response to Statement No. 1:**

**This statement is not a material fact.  Ascension denies this statement to the extent that Avanza's action actually seeks to apply the Agreement's terms and obligations to services provided to parties not included within the terms of the Agreement, and for whom Ascension did not agree to provide Services under the plain and unambiguous written terms.  The Agreement only obligates Ascension to provide certain "Services," as defined in the Agreement,[3] to Avanza and to charge Avanza the agreed rates for those Services.  Avanza's declaratory judgment action seeks to impermissibly expand the terms of the written contract.**

2.      The dispute bears directly on Avanza's cost of performing under the Agreement and on Avanza's ability to decide whether to exercise the Agreement's extension option by the September 20, 2026, deadline.[4]

**Response to Statement No. 2:**

**This statement is not a material fact and Avanza should not genuinely believe that it is undisputed; accordingly, it does not comply with Section III.C.6 of the Court's Individual Rules.  Ascension denies this statement as this dispute, as framed by Avanza, does not involve the defined "Services" agreed to be provided to Avanza.  Avanza does not receive various vessel-related services (including, without limitation, shifting and fleeting, line handling, and security) under the Agreement's terms, nor does Ascension provide these vessel-related services to Avanza.  By the plain and ordinary terms of the Agreement, these services (as opposed to Services as defined in the Agreement[5]) are provided by Ascension to vessel owners and other Users of the Terminal and requested and paid by such entities "as customary."[6]**

---

[3] Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).
[4] *Id.* [referencing Avanza's footnote for Statement No. 1]
[5] Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).
[6] Kontakis Decl. Exhibit 3, Agreement at 11(a) (AVANZA 14288).

#111836512v4

**"The Agreement and First Amendment"**

3.      Avanza trades coal by purchasing it from U.S. suppliers and selling it to international customers or buyers.[7]

**Response to Statement No. 3:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  However, the testimony of Andrew Smolenack of Avanza appears to contradict this statement, as he stated that "trading inside U.S. borders is done via Avanza Trading, LLC" while "[a]nything that is offshore … is contracted via Avanza Trading LTD," and indicated that, to the extent that Avanza Trading Ltd is always the seller under sales contracts for offshore or international sales, title to product destined for a location outside the United States would transfer from Avanza Trading, LLC to Avanza Trading Ltd at the ship's rail when loaded on a vessel at the terminal.[8]**

4.      Avanza organizes and bears the cost of moving and storing the coal from the suppliers until it reaches the buyers.[9]

**Response to Statement No. 4:**

**This statement is not a material fact and Ascension denies it.  As established in the testimony of Andrew Smolenack of Avanza, the costs of all vessel-related services are borne by the purchasers of Avanza coal at the Terminal.[10]  Furthermore, as testified by Mr. Smolenack, the majority of Avanza's sales contracts are "FOB Burnside" meaning that**

---

[7] Kontakis Decl. at Ex. 1, p. 112, l. 13 – p. 113, l. 12; Kontakis Decl. at Ex. 2, p. 19, l. 10 – 13.
[8] Balart Decl. Exhibit A, Excerpts of Transcript of Deposition of Andrew Smolenack 15:3 – 17:6.
[9] Kontakis Decl. at Ex. 1, p. 114, l. 4 – p. 116, l. 12; Kontakis Decl. at Ex. 2, p. 19, l. 6 – 21.
[10] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:2 – 20:9 and 24:6-24; Balart Decl. Exhibit B, Smolenack Dep. Tr. 71:9 – 72:5, 74:4 – 75:16, 83:20 – 85:22, and 87:22 – 88:2.

#111836512v4

**Avanza's obligation to deliver the coal cargo ceases at the ocean-going vessel's rail, i.e. before the cargo enters the vessel at the Terminal.[11]**

5.      Avanza does not own coal mines, terminals, barges, trucks, trains, or ocean-going vessels.[12]

**Response to Statement No. 5:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  Moreover, the cited testimony supports only the first six words of this statement, and accordingly Avanza has failed to comply with Local Civil Rule 56.1(d) with respect to the balance of the statement. The testimony of Allen Walker cited by Plaintiff merely states that he assumed that Avanza had contracts with barge companies, after testifying in response to the previous question that he did not know if Avanza owned or operated any barges itself.[13]  Further, Mr. Walker testified that he did not know whether Avanza owned or operated any ocean-going vessels.[14] The testimony of Mr. Smolenack cited by Avanza merely states that he does not have a mine. Accordingly, Avanza has failed to cite testimony or other evidence in admissible form to support the statement that Avanza does not own "terminals, barges, trucks, trains, or ocean-going vessels."**

6.      Avanza turns a profit by predicting the coal market and contracting for the supply, transportation, and storage of coal at rates that collectively beat the market price.[15]

---

[11] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:2 – 20:9; and Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02473) and 2 (Balart Decl. Exhibit D at AVANZA 02497), under heading "Loading," stating "All port dues levied on the vessel at the port of loading shall be for Buyer's account."

[12] Kontakis Decl. at Ex. 2, p. 20 l. 14 – 19; Kontakis Decl. at Ex. 1, p. 112, l. 13 – p. 113, l. 12.

[13] Kontakis Decl. Exhibit 2, excerpts of Transcript of Deposition of Allen Walker at 20:11-13.

[14] Kontakis Decl. Exhibit 2, Walker Dep. Tr. 22:9-11.

[15] Kontakis Decl. at Ex. 1, p. 114, l. 4 – p. 116, l. 12; Kontakis Decl. at Ex. 2, p. 19, l. 6 – 21.

**Response to Statement No. 6:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  Moreover, how Avanza turns a profit does not bear on the interpretation of a written agreement that is unambiguous according to the testimony of Andrew Smolenack, one of Plaintiff's owners.[16]  It is noted that the cited testimony of Mr. Walker indicates that he does not have personal knowledge that the handling and storage of coal is part of its cost, as his answer to the question was that he would "assume."[17]**

7.    Avanza sources coal from U.S. mines or other suppliers, which coal is then loaded onto barges.[18]

**Response to Statement No. 7:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  Moreover, how Avanza acquires its coal does not bear on the interpretation of a written agreement that is unambiguous according to the testimony of Mr. Smolenack, one of Plaintiff's owners.[19] However, Ascension has no basis to dispute the statement, while noting that Mr. Smolenack's testimony seems to indicate that Avanza may not use barges to transport coal that is not headed to the subject Terminal.[20]**

8.    The barges then move the coal to the Ascension Terminal on the Mississippi River where it is either loaded directly from the barge into ocean-going vessels, or more frequently,

---

[16] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[17] Kontakis Decl. Exhibit 2, Walker Dep. Tr. 19:14-16.
[18] Kontakis Decl. at Ex. 1, p. 114, l. 4 – 20.
[19] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[20] Kontakis Decl. Exhibit 1, Smolenack Dep. Tr. 114:6-20 ("For the sake of Burnside, it is barge served.").

#111836512v4

offloaded and stored at the Terminal for later shipment via ocean-going vessels that call at the Terminal, with the coal destined for Avanza's customers.[21]

**Response to Statement No. 8:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  This statement about facts not set forth in the Agreement does not bear on the interpretation of a written agreement that is unambiguous according to the testimony of Mr. Smolenack, one of Plaintiff's owners.[22]  Further, the testimony cited by Avanza does not fully support the statement, including without limitation the assertion that the coal is destined for customers of Avanza Trading, LLC (Mr. Smolenack testified that Avanza Trading Ltd. is always the seller under sales contracts for offshore or international sales[23]); accordingly, the statement does not comply with Local Civil Rule 56.1(d).**

9.    Avanza began doing business with the Impala Burnside Terminal in 2022 with spot shipments.[24]

**Response to Statement No. 9:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute.  Moreover, when Avanza began spot shipments does not bear on the interpretation of a written agreement that is unambiguous according to the testimony of Mr. Smolenack, one of Plaintiff's owners.[25]**

---

[21] *Id.* [referencing Avanza's footnote for Statement No. 7]

[22] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).

[23] Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 17:6.

[24] Kontakis Decl. at Ex. 1, p. 137, l. 13 – 19.

[25] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).

#111836512v4

10.     Shortly thereafter, Impala and Avanza entered the 2022 Terminaling and Throughput Agreement ("2022 Agreement"), the predecessor to the Agreement that is the subject of this litigation.[26]

**Response to Statement No. 10:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute. Moreover, even if it were material to the interpretation of an unambiguous subsequent written agreement, Avanza has failed to properly support this statement by failing to provide a copy of the referenced document.**

11.     Under the 2022 Agreement, Avanza committed to ship a minimum of 540,000 metric tons of coal through the Terminal in exchange for certain rates for Terminal services.[27]

**Response to Statement No. 11:**

**This statement is not a material fact and such evidence is extrinsic to the written terms of the Agreement, the scope of which is the only matter in dispute. Moreover, even if it were material to the interpretation of an unambiguous subsequent written agreement, Avanza has failed to properly support this statement by failing to provide a copy of the referenced document, which is the best evidence of its terms and conditions, and to the extent material, Ascension objects as Avanza did not produce the document.**

12.     Like the 2022 Agreement, the Agreement that is the subject of this litigation was negotiated in 2023 between Andrew "Andy" Smolenack for Avanza and with Amber Palmer and Allen Walker for Impala.[28]

---

[26] *Id.* [referencing Avanza's footnote for Statement No. 9]; *Id.,* at p. 58, l. 12 – 20; Kontakis Decl. at Ex. 5, AVANZA 04240 – 41 (Palmer mentions adjusting terms from the "current agreement," referring to the 2022 Agreement).

[27] Kontakis Decl. at Ex. 5, AVANZA 04240 – 41; (*see* Palmer's reference to adjusting "commercial terms").

[28] Kontakis Decl. at Ex. 1, p. 58, l. 21 – p. 59, l. 24; Kontakis Decl. at Ex. 2, p. 41, l. 15 – 20.

7

**Response to Statement No. 12:**

**This statement is denied and Avanza should not genuinely believe that it is undisputed; accordingly, it does not comply with Section III.C.6 of the Court's Individual Rules.  Mr. Walker testified clearly and unequivocally that he did not negotiate the Agreement, had no authority to negotiate the Agreement and that Ms. Palmer had no authority to negotiate the terms of the Agreement.[29]**

13.    Palmer initially amended the pricing and volume commitments from the 2022 Agreement with redlines and emailed that offer to Smolenack as the initial draft of the 2023 Agreement.[30]

**Response to Statement No. 13:**

**This statement is denied and Avanza should not genuinely believe that it is undisputed; accordingly, it does not comply with Section III.C.6 of the Court's Individual Rules.  Mr. Walker testified clearly and unequivocally that neither he nor Ms. Palmer had authority to negotiate the terms of the Agreement and were only acting as intermediaries.[31] The statement is further objectionable as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[32] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[33]**

14.    Smolenack then sent a draft back with Avanza's edits and counter, revising the Agreement's definition of "Tariff" in redline to expressly mean the Burnside Terminal Rules and Regulations effective February 1, 2021 (the "Tariff") as follows:[34]

---

[29] Balart Decl. Exhibit F, Walker Dep. Tr. 14:22 – 15:3; 34:4-6; 38:23 – 39:4; 48:22 – 50:18.
[30] Kontakis Decl. at Ex. 5, AVANZA 04240 – 41.
[31] Balart Decl. Exhibit F, Walker Dep. Tr. 14:22 – 15:3; 34:4-6; 38:23 – 39:4; 48:22 – 50:18.
[32] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[33] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[34] *See Id.* [referencing Avanza's footnote for Statement No. 13], AVANZA 04245.

Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its website with the address XXXXXXX (NEEDS UPDATING). The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C.http://www.impalaterminals.com/network-of-terminals/impala-terminals-north-america/impala-terminal-burnside/(or any replacement address provided by Impala), as any of the foregoing may be amended and supplemented from time to time in Impala's sole discretion and without the need for notice of any such amendment to Product Owner or any other party.

**Response to Statement No. 14:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[35] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[36]**

15.    Smolenack struck prior language that allowed Impala to update the Tariff from "time to time in Impala's sole discretion," and added language that the specific Tariff effective in 2021 would remain in force throughout the term of the Agreement, including any extension period.[37]

**Response to Statement No. 15:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[38] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[39] Furthermore, Smolenack did not strike through or otherwise alter Section 12(c) of the**

---

[35] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[36] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[37]  *Id.* [referencing Avanza's footnote for Statement No. 14]
[38] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[39] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).

#111836512v4

**Agreement, which provides:  "This Agreement shall be subject to and governed by the Tariff as in effect on the date the Services are provided."[40]**

16.      Impala responded to this proposal by inserting the updated reference to a website address and removing the extraneous language indicating the website address required updating (i.e. "XXXXXXX (NEEDS UPDATING)"):[41]

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its website with the address ~~XXXXXXX (NEEDS UPDATING).~~ The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached                                        Exhibit                                        C. https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf ~~http://www.impalaterminals.com/network-of-terminals/impala-terminals-north-america/impala-terminal-burnside/(or any replacement address provided by Impala), as any of the foregoing may be amended and supplemented from time to time in Impala's sole discretion and without the need for notice of any such amendment to Product Owner or any other party.~~

**Response to Statement No. 16:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[42] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[43]**

17.      Impala agreed to Avanza's changes, and the final, signed version of the Agreement provided as follows:[44]

---

[40] Kontakis Decl. Exhibit 3, Agreement at Section 12(c) (AVANZA 14290).
[41] Kontakis Decl. at Ex. 6, AVANZA 14250.
[42] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[43] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[44] Kontakis Decl. at Ex. 3, AVANZA 14281, 14297.

10

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its website with the address The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C. https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf

**Response to Statement No. 17:**

**This statement is not a material fact, but the quoted text is contained in the Agreement.**

18.     In addition to changing the definition of "Tariff," Avanza asked to attach the Tariff's Rate Schedule as Exhibit C of the Agreement ("Schedule C" of the Tariff), which was, in fact, added as "Exhibit C" to the final, signed version of the Agreement.[45]

**Response to Statement No. 18:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[46] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[47]    The Agreement's written terms are the best evidence of intent of the parties.    Further, no attachment to the final, signed version of the Agreement is labeled "Exhibit C."**

19.     Exhibit C to the Agreement described charges for dockage, towage, line handling, launch services, security, barge handling costs, and use of a mid-stream crane.[48]

---

[45] Kontakis Decl. at Ex. 5, AVANZA 04240.
[46] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[47] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[48] Kontakis Decl. at Ex. 3, AVANZA 14306.

11

**Response to Statement No. 19:**

**This statement is not a material fact.  Further, no attachment to the final, signed version of the Agreement is labeled "Exhibit C."**

20.    Avanza entered into the Agreement in order to "lock in" rates that would be charged by the Terminal.[49]

**Response to Statement No. 20:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[50] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[51]  Moreover, the Agreement defines the "Rates" that govern the provision of "Services," defined in the Agreement,[52] by Ascension to Avanza, and those are the only rates that the parties "locked in."[53]**

21.    Under the Agreement, Avanza guaranteed a throughput minimum of 1.2 million tons of coal over three years.[54]

**Response to Statement No. 21:**

**This statement is not a material fact, but the Agreement contains this provision.**

22.    Using barges and ocean-going vessels was the only way to move Avanza's Product in or out of the Terminal, and Impala provided all the requisite services necessary for barges and vessels to call at the Terminal.[55]

---

[49] Kontakis Decl. at Ex. 2, p. 40, l. 16 – p. 41, l. 24; Kontakis Decl. at Ex. 1, p. 117, l. 3 – 7.
[50] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[51] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[52] Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).
[53] Kontakis Decl. Exhibit 3, Agreement at ¶ 11(a) (AVANZA 14288) and Exhibit A (AVANZA 14298-300).
[54] Kontakis Decl. at Ex. 3, AVANZA 14281, AVANZA 14288, AVANZA 14298 – 14300, 14306.
[55] Kontakis Decl. at Ex. 2, p. 22, l. 4 – 23; Kontakis Decl. at Ex. 1, p. 118, l. 5 – p. 119, l. 24.

#111836512v4

**Response to Statement No. 22:**

**This statement is not a material fact as it seeks to introduce parol evidence in contravention of the Agreement's merger and integration clause,[56] despite the testimony of Mr. Smolenack, one of Plaintiff's owners, that the Agreement is unambiguous.[57]  Further, the statement is misleading to the extent it suggests that Impala provided services to barges as part of the Rate and/or within the scope of the defined "Services," which would be a false statement.**

23.    On October 30, 2024, Avanza and Impala entered "The First Amendment to the Terminaling and Throughput Agreement" (the "Amendment"), which increased Avanza's minimum shipping commitment through the Terminal to 2 million tons over the Agreement's original three-year term.[58]

**Response to Statement No. 23:**

**This statement is not a material fact, but the Agreement was amended and contains this provision.**

24.    The Amendment also provided that Avanza had the option to extend the Agreement through December 31, 2029, by notifying Impala of Avanza's intention to extend no later than September 20, 2026.[59]

**Response to Statement No. 24:**

**This statement is not a material fact, but the Agreement contains this provision.**

---

[56] Kontakis Decl. Exhibit 3, Agreement at Section 24(a) (AVANZA 14294).
[57] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).
[58] Kontakis Decl. at Ex. 7,  AVANZA 0029.
[59] *Id.* at AVANZA 0032.

25.     In exchange for the extension, Avanza's minimum shipping commitment could increase to 5.12 million tons.[60]

**Response to Statement No. 25:**

**This statement is not a material fact, but the Agreement contains this provision.**

### "Disputed Application of New Rates"

26.     On October 8, 2025, Host Terminals ("Host") emailed Avanza stating that Host had very recently acquired the Terminal and renamed it from "Impala Burnside Terminal" to "Ascension Bulk Terminal."[61]

**Response to Statement No. 26:**

**This statement is not a material fact, but in connection with its acquisition of this asset, the notice marked as Exhibit 8 to the Kontakis Declaration was provided.  The e-mail does not use the word "very."**

27.     Defendant Ascension is bound by the terms of the Agreement and Amendment as the counterparty to Avanza, and Ascension is bound to perform all obligations that Impala was required to perform under the Agreement and Amendment.[62]

**Response to Statement No. 27:**

**This statement is not a material fact and is instead a legal conclusion, but is admitted, and Ascension has never contended otherwise.**

28.     In its email of October 8, 2025, Host expressed its intention to implement new rates effective on January 1, 2026, under a new tariff called the "Ascension Bulk Terminal Rules and Regulations" (the "2026 Tariff").[63]

---

[60] Id.
[61] Kontakis Decl. at Ex. 8, AVANZA 12791.
[62] Kontakis Decl. at Ex. 12, Request No. 2.
[63] Kontakis Decl. at Ex. 8, AVANZA 12791.

#111836512v4

**Response to Statement No. 28:**

This statement is not a material fact, but admitted only in that as part of its review of operations, Ascension issued notice of a new tariff in whole to all Users of the Ascension Terminal, which included new rates applicable to all Users as well as updated rules and regulations. However, Ascension continues to charge Avanza the Rates as set forth in the Agreement for the "Services," as defined in the Agreement.[64] Additionally, the correct name of the 2026 tariff is the HOST Ascension Bulk Terminal "Terminal Rules and Regulations."[65]

29.    The 2026 Tariff increased rates and charges for vessel docking and wharfage, including a new surcharge for coal barges that was not present in the Tariff or Tariff Rate Schedule incorporated into the Agreement.[66]

**Response to Statement No. 29:**

This statement is not a material fact, but admitted only in that as part of its review of operations, Ascension issued notice of a new tariff in whole to all Users of the Ascension Terminal, which included new rates applicable to all Users as well as updated rules and regulations. However, this statement is denied as material to Avanza as these charges are not charges for services provided to Avanza. Ascension continues to charge Avanza the Rates as set forth in the Agreement for the Services as defined in the Agreement.[67] Ascension denies that the 2021 tariff and/or its rate schedule determine the 2026 rates and charges for vessel docking and wharfage provided to third parties.

---

[64] Declaration of Matthew Mancheski ¶ 20; Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).

[65] *See* Kontakis Decl. Exhibit 9, cover page (AVANZA 0064).

[66] *Id.* [referencing Avanza's footnote for Statement No. 28]; Kontakis Decl. at Ex. 9, AVANZA 0081.

[67] Mancheski Decl. ¶ 20; Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).

#111836512v4

30.     In November of 2025, Host forwarded a letter to Avanza from Host/Ascension's counsel claiming that Clause 11(a) of the Agreement only fixed rates for Terminal Services charged directly to Avanza, and the Terminal was free to charge different rates to vessels carrying Avanza's Product if the vessels (as opposed to Avanza) were invoiced for the services.[68]

**Response to Statement No. 30:**

**This statement is not a material fact, but admitted only in that Ascension advised Avanza that the Agreement did not obligate it to provide services to third-party users of the Terminal under the Agreement.  Avanza mischaracterizes the contents of the memorandum (not a letter) and fails to comprehend that the Agreement obligates Ascension to provide defined "Services" at agreed Rates, and Ascension's position is not simply based upon who is invoiced for services outside the scope of the defined "Services."  Specifically, the memorandum explains that under Section 11 of the Agreement, "[a]ll other fees and costs" are chargeable against a third party or Avanza "as customary,"[69] and discovery has confirmed that these vessel-related services have always customarily been requested on behalf of, provided to, received by, and paid for by the vessel owner or its agents.[70]**

31.     On November 24, 2025, the undersigned counsel for Avanza replied to Ascension's counsel explaining that under the plain language of the Agreement, the agreed prices must apply to any vessel or barge moving Avanza's Product.[71]

**Response to Statement No. 31:**

**This statement is not a material fact and is too vague and overly broad to admit so the statement is denied.  However, in the letter, Avanza's counsel asserted that Ascension is**

---

[68] Kontakis Decl. at Ex. 10, AVANZA 00083 – 85.
[69] Kontakis Decl. Exhibit 10 at AVANZA 0084-85.
[70] *See* Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2; *see also* Mancheski Decl. ¶ 16.
[71] Kontakis Decl. at Ex. 10, AVANZA 00086 – 88.

16

obligated to provide "Services," as defined in the Agreement,[72] to Vessels, and cited the definition of "Vessels" in the Agreement which is vessels "in the employ of or hired by Product Owner."[73]  None of the ocean-going vessels calling at the Terminal to load Avanza cargo are in the employ of or hired by Plaintiff, Avanza Trading, LLC.[74]  To the contrary, generally they are hired by and in the employ of the buyer of Avanza's product from non-party Avanza Trading Ltd.[75]  Moreover, Avanza's counsel's letter stated that "the agreed rates apply to any Services provided to barges and ocean-going vessels handling Product on behalf of Avanza,"[76] where capitalized "Services" is a term defined in the Agreement, as acknowledged in the letter and noted above in this response, and those defined "Services" are not the vessel-related services customarily assessed to and paid for by the third-party vessel owner or agent[77] that Avanza has put at issue in this litigation.

32.    Host's counsel responded on December 1, 2025, by reiterating the position in its original letter, and claiming that unless Avanza was paying the invoice, the Terminal was free to charge vessels transporting Avanza's Product new and increased rates under the new 2026 Tariff.[78]

**Response to Statement No. 32:**

This statement is not a material fact, but is admitted only in that Ascension advised Avanza that the Agreement did not obligate it to provide services to third-party users of the

---

[72] Kontakis Decl. Exhibit 10 at AVANZA 0086, 87; Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281) and Exhibit A (AVANZA 14298).

[73] Kontakis Decl. Exhibit 10 at AVANZA 0087; Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281).

[74] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 21:24 – 22:16, 44:20 – 45:11.  Further, Balart Decl. ¶¶ 12-13 explain that in response to a request for production of all charter agreements for Avanza cargo loading at the Terminal, Avanza produced no charter agreements for ocean-going vessels identifying Avanza Trading, LLC as the chartering, or hiring, party.

[75] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 44:20 – 45:11.  *See* further details and supporting evidence in Statement nos. 36-39 of Ascension's Statement of Undisputed Material Facts below.

[76] Kontakis Decl. Exhibit 10 at AVANZA 0087.

[77] Mancheski Decl. ¶ 16; *see* Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.

[78] Kontakis Decl. at Ex. 10, AVANZA 00089 – 91.

Terminal under the Agreement.  This statement misrepresents the  letter dated December 1, 2025, which does not even include the word "invoice" let alone state "unless Avanza was paying the invoice."   Based upon the statement, Avanza fails to comprehend that the Agreement obligates Ascension to provide defined "Services" at agreed Rates, and Ascension's position is not simply based upon who is invoiced for services outside the scope of the defined "Services."[79]

33.      In March 2026, M/V SHANDONG XIN TAI (the "Vessel") called at the Terminal to load Avanza's Product that was stockpiled at the Terminal.[80]

**Response to Statement No. 33:**

This statement is not a material fact but is admitted except to advise the Court that this vessel apparently was neither in the employ of nor hired by Avanza (Product Owner) and Avanza has provided no evidence in admissible form that the vessel "was in the employ of or hired by" Avanza,[81] which is part of the definition of "Vessel" set forth in the Agreement.[82]   Moreover, Avanza has not provided this Court with the applicable sales contract which would likely establish: (i) that the selling party was <u>not</u> Avanza Trading, LLC (the party to the Agreement) but rather Avanza Trading Ltd. (not a party to the Agreement); and (ii) that the Product is delivered by Avanza Trading, LLC at the ship's rail and that all port charges are the responsibility of the Buyer, not Avanza.[83]

---

[79] *See* Ascension's response to Statement No. 30 above and Kontakis Decl. Exhibit 10 at AVANZA 0089-90 in the paragraph discussing "[a]ll other fees and costs."

[80] Kontakis Decl. at Ex. 11.

[81] Balart Decl. ¶¶ 12-13 explain that in response to a request for production of all charter agreements for Avanza cargo loading at the Terminal, Avanza produced no charter agreements for ocean-going vessels identifying Avanza Trading, LLC as the chartering, or hiring, party.[82] Kontakis Decl. Exhibit 3 at 2(a) (AVANZA 14281).

[82] Kontakis Decl. Exhibit 3 at 2(a) (AVANZA 14281).

[83] *See* Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 16:21, 18:2 – 20:9; and Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 2470, 2471, 2473) and 2 (Balart Decl. Exhibit D at AVANZA 02494, 2495, 2497) which are Avanza Trading Ltd contracts for sales, FOB Terminal, which stated, under the "Loading" heading, that "[a]ll port

18

Ascension further notes that it issued discovery requests seeking all sales contracts involving Avanza Product at the Terminal.  Although unclear as to whether it involved this particular vessel, a February 2026 sales contract for Avanza Product loading at the Burnside Terminal, near in time, was produced.[84]  The terms of that Sales Contract show that the selling party is Avanza Trading Ltd. (a non-party to the Agreement and this case) and that the Buyer is responsible for all terminal fees:  "All port dues levied on the vessel at the port of loading shall be for Buyer's account."[85]  The Sales Contract further provides that the "Vessel Shall [*sic*] comply with terminal rules and regulations in effect *at the time of delivery, as applicable*."[86]

34.    At Avanza's direction, the Vessel's agent informed Ascension that all invoices for services provided to the Vessel should be directed to Avanza for payment.[87]

**Response to Statement No. 34:**

This statement is not a material fact and is denied except to admit that on March 19, 2026, the Vessel's agent advised Ascension that the operator of this vessel and Avanza (as shipper) had reached a new agreement concerning Avanza's responsibility for all terminal charges.  However, Ascension denies that the "shipper" was Avanza Trading, LLC, plaintiff herein, because the shipper of the product under the sales contracts produced by Plaintiff is Avanza Trading Ltd., not Plaintiff.[88]  Thus, any "direction" was made by Avanza Trading Ltd. and not Avanza Trading, LLC.

---

dues levied on the vessel at the port of loading shall be for Buyer's account.").  *See also* further details and supporting evidence in Statement nos. 36-39 of Ascension's Statement of Undisputed Material Facts below.

[84] Balart Decl. Exhibit G, AVANZA 02770-2782.

[85] *Id.* at 02770, 2773.

[86] *Id.* at 02771 (emphasis added).

[87] *Id.* [referencing Avanza's footnote for Statement No. 33]

[88] *See* details and supporting evidence in Statement nos. 36-39 of Ascension's Statement of Undisputed Material Facts below.

#111836512v4

**Additionally, the statement is denied as no such agreement (which would vary the standard terms of Avanza Trading Ltd. sales contracts) was ever provided. The alleged "agreement" between Avanza and Riverside referenced in the preceding paragraph was described as a "verbal agreement" that Avanza would take on the entire Disbursement Account for the vessel, but Avanza did not, in fact, do so.[89] Avanza has provided no evidence in admissible form that the vessel was in the employ of or hired by Avanza,[90] which is part of the definition of "Vessel" set forth in the Agreement.[91] Ascension billed this ocean-going vessel for services provided to it pursuant to the then existing tariff (the 2026 Tariff) and the vessel owner remitted payment directly to Ascension through the vessel's agent.[92] Additionally, this direction by Avanza Trading Ltd. would have been contrary to the terms of the Sales Contract referenced above,[93] assuming that Sales Contract involved this shipment.**

35.    Ascension refused to invoice Avanza and instead insisted that it only invoice the vessel through the vessel's agent.[94]

**Response to Statement No. 35:**

**This statement is not a material fact and is denied except to admit that on March 19, 2026, the Vessel's agent advised Ascension that the operator of this vessel and "Avanza" (as shipper) had reached a new agreement concerning Avanza's responsibility for all terminal charges. No such agreement was ever provided by Avanza to Ascension or this Court.**

---

[89] Balart Decl. Exhibit B, Smolenack Dep. Tr. 83:20 – 85:22.

[90] Balart Decl. ¶¶ 12-13 explain that in response to a request for production of all charter agreements for Avanza cargo loading at the Terminal, Avanza produced no charter agreements for ocean-going vessels identifying Avanza Trading, LLC as the chartering, or hiring, party.

[91] Kontakis Decl. Exhibit 3 at 2(a) (AVANZA 14281).

[92] Mancheski Decl. ¶ 19.

[93] *See* response to Statement no. 33; Balart Decl. Exhibit G, AVANZA 02770-2782.

[94] *Id.* [referencing Avanza's footnote for Statement No. 34]

**Further, Avanza has provided no evidence in admissible form that the vessel was in the employ of or hired by Avanza,[95] which is part of the definition of "Vessel" set forth in the Agreement.[96] Ascension billed this vessel for services provided by Avanza to the ocean-going vessel pursuant to the then existing tariff (the 2026 Tariff) and the vessel owner remitted payment directly to Ascension through its agent.[97] Accordingly, because the invoice was for services rendered to the ocean-going vessel and not subject to the Agreement, Ascension invoiced the party to whom the service was provided "as customary."[98]**

36.    Ascension's invoice to the Vessel, via the vessel agent, applied rates for services under the 2026 Tariff.[99]

**Response to Statement No. 36:**

**This statement is admitted as Ascension invoices any other user of the Terminal for services provided to that User, and currently applies the 2026 Tariff.[100] Further, as noted in Avanza Trading Ltd.'s form sales contracts, these "port dues" would be the responsibility of Buyer, not Avanza Trading Ltd.[101]**

<u>**"Procedural History and Discovery"**</u>

37.    Avanza filed its Complaint in this action on January 6, 2026, seeking declaratory relief regarding the parties' rights under the Agreement.[102]

---

[95] Balart Decl. ¶¶ 12-13 explain that in response to a request for production of all charter agreements for Avanza cargo loading at the Terminal, Avanza produced no charter agreements for ocean-going vessels identifying Avanza Trading, LLC as the chartering, or hiring, party.

[96] Kontakis Decl. Exhibit 3 at 2(a) (AVANZA 14281).

[97] Mancheski Decl. ¶ 19.

[98] Mancheski Decl. ¶¶ 9, 16, 19; Kontakis Decl. Exhibit 3, Agreement at 11(a) (AVANZA 14288).

[99] *Id.* [referencing Avanza's footnote for Statement No. 35]

[100] *See* Mancheski Declaration ¶¶ 9, 19.

[101] Smolenack Dep. Tr. 18:2 – 20:9 (Balart Decl. Exhibit A), 75:6-16, and 85:15-22 (Balart Decl. Exhibit B); Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at 02473) and 2 (Balart Decl. Exhibit D at AVANZA 02497), under heading "Loading," stating "All port dues levied on the vessel at the port of loading shall be for Buyer's account."

[102] Complaint (Dkt. No. 1).

#111836512v4

**Response to Statement No. 37:**

**This statement is not a material fact, but otherwise admitted.**

38.     Ascension filed its Answer on March 12, 2026.[103]

**Response to Statement No. 38:**

**This statement is not a material fact, but otherwise admitted.**

39.     The parties exchanged written discovery in this action, including Avanza's production of more than 14,000 pages of documents in discovery on April 9, 2026.[104]

**Response to Statement No. 39:**

**This statement is not a material fact, but otherwise admitted.**

40.     Ascension initially produced 311 pages of documents on April 13, 2026, and supplemented that production with an additional 791 pages on April 17, 2026.[105]

**Response to Statement No. 40:**

**This statement is not a material fact, but otherwise admitted.**

41.     Andrew Smolenack was deposed on April 21, 2026, and Allen Walker was deposed on May 12, 2026.[106]

**Response to Statement No. 41:**

**This statement is not a material fact, but otherwise admitted.**

42.     Ascension issued a subpoena to Riverside Shipping, LLC, ("Riverside") who were vessel agents often coordinating services for vessels at the Terminal, and Riverside produced 584 pages of responsive invoices and emails on May 8, 2026.[107]

---

[103] Answer (Dkt. No. 31).
[104] Kontakis Decl. at ¶15.
[105] Kontakis Decl. at ¶16.
[106] Kontakis Decl. at ¶17.
[107] Kontakis Decl. at ¶18.

#111836512v4

**Response to Statement No. 42:**

**This statement is not a material fact, but otherwise admitted.**

43.     The discovery record includes, among other documents, the Agreement, the First Amendment, the 2021 Tariff, contract negotiation documents, correspondence concerning Ascension's proposed 2026 Tariff, terminal invoices, and deposition testimony concerning the formation, purpose, and operation of the Agreement.[108]

**Response to Statement No. 43:**

**This statement is not a material fact, but otherwise admitted except that the 2026 Tariff was not "proposed."**

### ASCENSION'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

1.     The Impala Burnside Terminal is a marine terminal located on the Mississippi River which services marine customers.[109]

2.     Host Davant, LLC, acquired Impala Terminals Burnside LLC, and in connection with that acquisition reviewed all contracts and agreements in connection with business at the Impala Burnside Terminal.[110]

3.     The name of Impala Terminals Burnside LLC was changed to Ascension Bulk Terminal, LLC ("Ascension") in September 2025.[111]

4.     Among the agreements reviewed was the Terminaling and Throughput Agreement ("Agreement") by and between Avanza Trading LLC and Impala Terminals Burnside LLC. I personally reviewed the written terms of the Agreement.[112]

---

[108] Kontakis Decl. at ¶19.
[109] Mancheski Decl. ¶ 2.
[110] Mancheski Decl. ¶ 1.
[111] Mancheski Decl. ¶ 3.
[112] Mancheski Decl. ¶ 4.

#111836512v4

5.      As part of the review of operations at the Burnside Terminal, which was renamed Ascension Bulk Terminal ("Terminal"), the Terminal issued a new tariff that was to become applicable on January 1, 2026. The updating and review of a tariff, which governs how users of a marine terminal conduct business at the terminal and accept liability for operations at the terminal, is a routine and ordinary process in the marine terminal business.[113]

6.      The tariff is the mechanism by which the Terminal imposes rules and liability upon users of the Terminal and generates revenue for services provided to these users.[114]

7.      A tariff is the only manner in which a marine terminal can have an established set of rules, regulations, and rates for the various ocean-going vessels that call on the Terminal, and the Terminal provides a variety of services to these ocean-going vessels, including dockage, wharfage, security, line handling, fuel, and other services while such vessels visit the Terminal to either load or discharge cargo.[115]

8.      In its email of October 8, 2025, Host expressed its intention to its network of potential users of the terminal to implement a new tariff on January 1, 2026, under a new tariff called the HOST Ascension Bulk Terminal "Terminal Rules and Regulations" (the "2026 Tariff").[116]

9.      As is typical, the 2026 Tariff set forth amended rules and regulations and increased rates and charges for services provided to Users of the Terminal, including vessel owners and agents.[117]

---

[113] Mancheski Decl. ¶ 5.
[114] Mancheski Decl. ¶ 6.
[115] Mancheski Decl. ¶ 7.
[116] Mancheski Decl. ¶ 8.
[117] Mancheski Decl. ¶ 9.

24

10.     Conversely, from time to time, Ascension enters into storage and services agreements with entities that require services such as storage, loading and discharge at the Terminal.  An example of one such arrangement is the Agreement.[118]

11.     Unlike the general tariff, the Agreement contains an agreed Rate for a defined set of Services which are to be provided by Ascension to Avanza, but do not include the provision of services by the Terminal to other Users of the Terminal, including ocean-going vessels and river barges for wharfage, dockage, line handling, security, fleeting and various other services provided to such vessels.[119]

12.     Section 11(a) of the Agreement provides that Avanza is entitled to receive Services, as defined in the Agreement, at the agreed Rates, also set forth in the Agreement, and further provides that all other fees and costs for services (*i.e.*, not within the scope of the "Services") to ocean vessels or river barges are levied against the vessel and are for the account of the vessel owner or its agent "as customary."[120]

13.     Ascension has never provided vessel-related services such as wharfage, dockage, line handling, security and the like at the request of Avanza; to the contrary, these services have always been requested by and provided to a vessel and invoiced directly to the vessel, its charterer, and/or its agent.[121]

14.     Moreover, in all instances, the invoices for the vessel-related services listed above have always been issued to and paid for by the vessel owner, charterer or its agent.[122]

---

[118] Mancheski Decl. ¶ 10.
[119] Mancheski Decl. ¶ 11.
[120] Mancheski Decl. ¶ 12; *see also* Kontakis Decl. Exhibit 3 at AVANZA 14288.
[121] Mancheski Decl. ¶ 13.
[122] Mancheski Decl. ¶ 14.

#111836512v4

15.     After the Complaint was filed by Avanza, Avanza attempted to change what had been the customary dealings between Ascension, Avanza and ocean vessels.[123]

16.     On March 19, 2026, Ascension was advised by Riverside Shipping that "shippers" and vessel operators had reached an agreement that "shippers" would now be responsible for all terminal charges, as described above, for a vessel calling on the Ascension terminal and loading Avanza Product. Although "shippers" were not specifically identified, the communication copied personnel with an "avanzatrading.com" domain, including Andrew Smolenack. This "agreement" was a change from how all prior engagements involving Avanza Product had been handled, as the vessel owner or its agent had customarily requested and paid for these services.[124]

17.     The alleged "agreement" between Avanza and Riverside referenced in the preceding paragraph was described as a "verbal agreement" that Avanza would take on the entire Disbursement Account for the vessel, but Avanza did not, in fact, do so.[125]

18.     Instead, as was customary in prior shipments, the buyer accepted and paid for all of the port dues, including without limitation dockage, line handling, and security fees.[126]

19.     The M/V SHANDONG XIN TAI is a User of the Terminal subject to the Terminal's tariff.[127]

20.     The M/V SHANDONG XIN TAI called on the Terminal at the time of the email from Riverside mentioned above, and loaded Avanza Product at the Terminal.[128]

---

[123] Mancheski Decl. ¶ 15.
[124] Mancheski Decl. ¶ 16; *see* Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.
[125] Balart Decl. Exhibit B, Smolenack Dep. Tr. 83:20 – 85:22.
[126] Mancheski Decl. ¶ 19; Balart Decl. Exhibit B, Smolenack Dep. Tr. 85:15-22, 92:11-18; *see also* Balart Decl. Exhibit G, Sales Contract at AVANZA 02770.
[127] Mancheski Decl. ¶ 17.
[128] Mancheski Decl. ¶ 18.

#111836512v4

21.     Ascension, as had always been customary, invoiced the M/V SHANDONG XIN TAI, through its agent Riverside Shipping, for all terminal service charges pursuant to the 2026 Tariff and this invoice was paid by the vessel owners/charterers through its agent.[129]

22.     Avanza provided no evidence to Ascension that the M/V SHANDONG XIN TAI was in the employ of or hired by Avanza.[130]

23.     Ascension continues to charge Avanza the Rates in the Agreement for Services covered by the Agreement.[131]

24.     The M/V ERACLE was not in the employ of or hired by Avanza Trading, LLC; rather, the M/V ERACLE was owned by Weco Bulk A/S and chartered by Harp Trading Limited, both non-parties to the Agreement.[132]

25.     The M/V SUNRISE TRADER was not in the employ of or hired by Avanza Trading, LLC; rather, the M/V SUNRISE TRADER was owned by Louis Dreyfus Company Freight Asia Pte Ltd. and chartered by Vitol (a buyer of coal), both non-parties to the Agreement.[133]

26.     Allen Walker has never read the entire Agreement.[134]

27.     Allen Walker has never read the entire Amendment to the Agreement.[135]

28.     Allen Walker has never discussed the meaning of the Agreement or the Amendment with any director of Trafigura who negotiated them.[136]

---

[129] Mancheski Decl. ¶ 19; *see also* Balart Decl. Exhibit B, Smolenack Dep. Tr. 83:20 – 85:22 and 92:11-18.

[130] Balart Decl. ¶¶ 12-13 explain that in response to a request for production of all charter agreements for Avanza cargo loading at the Terminal, Avanza produced no charter agreements for ocean-going vessels identifying Avanza Trading, LLC as the chartering, or hiring, party.

[131] Mancheski Decl. ¶ 20.

[132] Balart Decl. Exhibit E, Smolenack Dep. Exhibit 9 stating, "Paying Party: Weco Bulk A/S"( (AVANZA 00261); Balart Decl. Exhibit B, Smolenack Dep. Tr. 93:23 – 96:19 ("Q:  But the final disbursement account was paid for by the vessel owner? A:  By our affiliate, yes, our negotiated party for the transaction, yes.  Q:  By Weco, the vessel owner? A:  I'm assuming."); *see also* Balart Decl. Exhibit B, Smolenack Dep. Tr. 71:9 – 74:17.

[133] Balart Decl. Exhibit E, Smolenack Exhibit 9 stating, "Paying Party: Louis Dreyfus Company Freight Asia Pte. Ltd" (AVANZA 00288); Balart Decl. Exhibit B, Smolenack Dep. Tr. 97:7-25; *see also id.* 71:9 – 72:5.

[134] Balart Decl. Exhibit F, Walker Deposition at 48:22 – 49:2.

[135] Balart Decl. Exhibit F, Walker Deposition at 49:3-5.

[136] Balart Decl. Exhibit F, Walker Deposition at 53:9-12.

27

29.     With respect to operations at the Terminal, the terminal provides services such as dockage, line handling, security and other vessel-related services to the vessel owner.[137]

30.     The vessel owner or its agent customarily pays the terminal for services such as dockage, line handling, security and other vessel-related services.[138]

31.     Avanza has never made any payments to the Terminal for dockage services.[139]

32.     Andrew Smolenack is an owner of Avanza Trading, LLC, through his co-ownership of Krabby Apple Trading, LLC, which is one of the owners of Avanza Trading Ltd, which wholly owns Avanza Trading, LLC.[140]

33.     Mr. Smolenack, who negotiated the Agreement and Amendment, testified that he was not aware of any ambiguity in the written words.[141]

34.     In the Agreement, Avanza Trading, LLC could have been expressly defined to include its parent company, affiliates, and contractors[142]. However, it was not.[143]

35.     Avanza Trading Ltd. is not a party to the Agreement and is not identified as a parent, subsidiary or affiliate entitled to the benefits of the Agreement.[144]

36.     The sale of Avanza Product at the Terminal is typically between a buyer and Avanza Trading **Ltd.** as seller, not Avanza Trading, LLC, plaintiff herein.[145]

---

[137] Balart Decl. Exhibit F, Walker Deposition at 55:2-17.
[138] *Id*.; Mancheski Decl. ¶ 19.
[139] Balart Decl. Exhibit B, Smolenack Dep. Tr. 108:23 – 110:18.
[140] Balart Decl. Exhibit A, Smolenack Dep. Tr. 7:4 – 10:1.
[141] Kontakis Decl. Exhibit 1, Smolenack Dep.Tr. 111:8-17; *see also* Balart Decl. Exhibit A, Smolenack Dep. Tr. 30:4-8, 46:20-23, 55:15-17.
[142] Balart Decl. Exhibit A, Smolenack Dep. Tr. 33:16 – 34:12.
[143] Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:20 – 75:4.
[144] Kontakis Decl. Exhibit 3, Agreement; Balart Decl. Exhibit B, Smolenack Dep.Tr. 74:18 – 75:5.
[145] Balart Decl. Exhibit A, Smolenack Dep. Tr. 12:21 – 16:6; *see also* Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02470) and 2 (Balart Decl. Exhibit D at AVANZA 02494) where selling party is Avanza Trading Ltd., not Plaintiff, and Plaintiff is not identified anywhere in the sales contracts.

28

37.     The Avanza Product is transferred to Avanza Trading Ltd. *prior to being loaded upon an ocean-going vessel.*[146]

38.     Under the Avanza Trading Ltd. sales contracts, the Buyer is responsible for all "port dues" at the terminal, which are the fees assessed to the vessel during its visit to the Terminal including for, without limitation, dockage, line handling, and security fees.[147]

39.     Avanza Trading, LLC, plaintiff herein, neither employs nor hires any of the vessels calling at the Terminal to load Avanza Product.[148]

40.     Section 11(a) of the Agreement clarifies that the rates to be paid to Ascension by Avanza for Services do not include other fees and costs levied against third parties.  Section 11(a) provides that:

> 11.     **RATES AND PAYMENTS**
>
> (a)     Rates.  **Subject to the terms and conditions of this Agreement, Product Owner shall pay Impala for the Services at the rates set forth at Exhibit A, Fees, and the Burnside Tariff, as applicable**.  The Parties hereby agree that the rates to be paid to Impala by Product Owner shall be inclusive of all stevedoring charges, wharfage, dockage, equipment use or rental fees, tolls, taxes, tariffs, and any other fees or costs levied against Impala in the performance of Services hereunder.  **All other fees and costs**, including but not limited to, shifting and fleeting fees, wharfage and dockage fees, mooring fees, port charges, tolls, harbor fees, taxes, tariffs, survey fees, security fees, and any other fees or costs levied against the Ocean Vessel, River Barges or the Cargo, **shall be for account of Product Owner, the Ocean Vessel, charterers or agents as customary**.  Any extra services required by Product Owner that are not considered to be a normal and regular function of a standard stevedoring transfer service **or are outside the scope of the Services to be performed under this Agreement shall be priced by Impala on a case-by-case basis**.[149]

---

[146] Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 17:6; *see also* Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02470) and 2 (Balart Decl. Exhibit D at AVANZA 02494) where selling party is Avanza Trading Ltd., not Plaintiff, and Plaintiff is not identified anywhere in the sales contracts.

[147] Smolenack Dep. Tr. 18:2 – 20:9 (Balart Decl. Exhibit A), 75:6-16, and 85:15-22 (Balart Decl. Exhibit B); Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at 02473) and 2 (Balart Decl. Exhibit D at AVANZA 02497), under heading "Loading," stating "All port dues levied on the vessel at the port of loading shall be for Buyer's account."

[148] Smolenack Dep. Tr. 44:10 – 45:11 (Balart Decl. Exhibit A), 94:17-25 (Balart Decl. Exhibit B), and 110:19 – 111:2 (Kontakis Decl. Exhibit 1).

[149] Kontakis Decl. Exhibit 3 at AVANZA 14288 (emphasis added).

29

41.     The 2026 Tariff does not include any rates or fees for the following Service: stockpiling of Avanza Product.[150]

42.     The 2026 Tariff does not include any rates or fees for the following Service: storage of Avanza Product.[151]

43.     The 2026 Tariff does not include any rates or fees for the following Service: unloading of Avanza Product from a river barge to the stockpile.[152]

44.     The 2026 Tariff does not include any rates or fees for the following Service: loading of Avanza Product from a river barge or the stockpile to an ocean-going vessel.[153]

45.     The 2026 Tariff does not include any rates or fees for the following Service: commingling of Avanza Product.[154]

46.     The definition of Tariff in the Agreement as proposed and ultimately agreed to states as follows:[155]

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its web site with the address The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C. https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf

47.     According to Mr. Smolenack, he intended a period between "address" and "The" on the fourth line,[156] such that the definition of Tariff should read:

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations,

---

[150] Balart Decl. Exhibit H, Avanza Responses to Requests for Admission at Response 2.  The Requests for Admissions defined "Tariff" as the 2026 Tariff.
[151] *Id.* at Response 3.
[152] *Id.* at Response 4.
[153] *Id.* at Response 5.
[154] *Id.* at Response 6.
[155] Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281).
[156] Balart Decl. Exhibit A, Smolenack Dep. Tr. 38:22 – 39:25.

#111836512v4

and documents governing the operation of the Terminal that are posted on its web site with the address https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf. The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C.

48.     Ascension issued a Request for Production to Avanza seeking copies of all charter agreements for Avanza cargo loading at the Terminal.[157]

49.     No charter agreements for ocean-going vessels were produced identifying Avanza Trading, LLC as the chartering (or hiring) party.[158]

50.     None of the ocean-going vessels that have called upon the Terminal for Avanza Product are "in the employ of or hired by" Avanza.

---

[157] Balart Decl. Exhibit I, Avanza Trading, LLC's Responses to Ascension Bulk Terminal, LLC's Requests for Production of Documents at Request/Response No. 5.
[158] *Id.*; Balart Decl. ¶ 13.

#111836512v4

Dated: New York, New York
     June 19, 2026

Respectfully submitted,

JONES WALKER LLP
*Counsel for Ascension Bulk Terminal, LLC*

*S/ L. Etienne Balart*
L. Etienne Balart, *pro hac vice*
Alison M. Odermann, *pro hac vice*
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8584
Facsimile: (504) 589-8584
E-Mail: ebalart@joneswalker.com
        aodermann@joneswalker.com

and

Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 2110
New York, New York 10006-3776
Tel: (212) 669-0617
Email: beisenhower@hillrivkins.com
*Co-Counsel for Ascension Bulk Terminal, LLC*

#111836512v4

33

## CERTIFICATE OF COMPLIANCE

Ascension's Statement of Undisputed Material Facts in Support of Cross-Motion for

Summary Judgment contains a total of 2,575 words as measured by Microsoft Word, excluding

the caption, signature blocks, and certificates, in accordance with Section III.C.6 of the Court's

Individual Rules and Procedures for Civil Cases.

*S/ L. Etienne Balart*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2026, the foregoing was electronically filed

via the Court's CM/ECF system which sends a "Notice of Electronic Filing" to all attorneys of

record.

*S/ L. Etienne Balart*

#111836512v4