**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AVANZA TRADING, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ASCENSION BULK TERMINAL, LLC,<br><br>　　　　　　　Defendant. | Case No.: 1:26-cv-64 (LGS)<br><br>Rule 9(h) |

**ASCENSION BULK TERMINAL, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN**
**OPPOSITION TO AVANZA'S MOTION FOR SUMMARY JUDGMENT**

L. Etienne Balart, *pro hac vice*
Alison M. Odermann, *pro hac vice*
JONES WALKER LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8584
Facsimile: (504) 589-8584
E-Mail: ebalart@joneswalker.com
　　　aodermann@joneswalker.com

Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 2110
New York, New York 10006-3776
Telephone: (212) 669-0617
E-mail: beisenhower@hillrivkins.com

*Counsel for Ascension Bulk Terminal, LLC*

TABLE OF AUTHORITIES ............................................................................................ ii

BRIEF SUMMARY OF ARGUMENT...................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 3

LAW AND ARGUMENT ........................................................................................ 10

    I.   Legal Standard ................................................................................... 10

    II.  Enforcement of an Unambiguous Contract under New York Law............................ 11

    III. The Plain Language of the Contract Controls............................................... 15

    IV. Under Any Interpretation, the Contract Does Not Apply to Third Parties ................. 22

    V.  Avanza Fails to Establish That Any Vessels Involved Are Hired or in the Employ of Avanza ......................................................................................................... 25

    VI. Even Under Avanza's Argument, Only Exhibit C Is "Locked In" ............................ 26

CONCLUSION ...................................................................................................... 29

CERTIFICATE OF COMPLIANCE ..................................................................... 30

CERTIFICATE OF SERVICE ............................................................................. 30

i

#111835266v3

## TABLE OF AUTHORITIES

**Cases**

*255 Butler Assoc., LLC v. 255 Butler, LLC*,
  208 A.D.3d 834 (2022) ...............................................................................14

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
  57 F.4th 85 (2d Cir. 2023) ...........................................................................21

*Brad H. v City of New York*,
  17 N.Y.3d 180 (2011) ..................................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .....................................................................................10

*Donohue v. Cuomo*,
  164 N.Y.S.3d 39 (2022) ...............................................................................14

*Frazier v. X Corp.*,
  155 F.4th 87 (2d Cir. 2025) .........................................................................23

*Greenfield v. Philles Records*,
  98 N.Y.2d 562 (2002) .............................................................................11, 12

*Holcomb v. Iona Coll.*,
  521 F.3d 130 (2d Cir. 2008) .........................................................................11

*Holcomb v. TWR Express, Inc.*,
  782 N.Y.S.2d 840 (App. Div. 2d Dept. 2004) ...........................................12

*Jaramillo v. Weyerhaeuser Co.*,
  536 F.3d 140 (2d Cir. 2008) .........................................................................11

*Konikoff v. Prudential Ins. Co. of Am.*,
  234 F.3d 92 (2d Cir. 2000) ...........................................................................10

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d Cir. 2002) .........................................................................11

*Nat'l Indem. Co. v. IRB Brasil Resseguros S.A.*,
  767 F. App'x 154 (2d Cir. 2019) ..................................................................23

*Oppman v. IRMC Holdings, Inc.*,
  14 Misc. 3d 1219(A) (N.Y. Sup. Ct. 2007) ................................................14

*Oxford Commercial Corp. v. Landau*,
  12 N.Y.2d 362 (1963) ...................................................................................12

ii

*R/S Assocs. v New York Job Dev. Auth.*,
  771 N.E.2d 240, *rearg denied* 775 N.E.2d(N.Y. 2002) ..............................................22

*Rodolitz v. Neptune Paper Products, Inc.*,
  22 N.Y.2d 383 (1968) ..............................................................................................14

*Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*,
  767 F. Supp. 2d 392 (E.D.N.Y. 2011) ......................................................................23

*Saint Mary Home, Inc. v. SEIU, Dist. 1199*,
  116 F.3d 41 (2d Cir. 1997) ...........................................................................2, 16, 17

*Sally v. Sally by Magee*,
  225 A.D.2d 816 (App. Div. 3d Dept. 1996) ..............................................................13

*Slamow v DelCol*,
  594 N.E.2d 918 (N.Y. 1992) .....................................................................................22

*South Rd. Assocs., LLC v. IBM*,
  4 N.Y.3d 272 (2005) .................................................................................................13

*U.S. v. 0.35 of Acre of Land*,
  706 F. Supp. 1064 (S.D.N.Y. 1988) ..........................................................................14

*Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  16 N.Y.S.3d 21 (2015) ..............................................................................................13

*W.W.W. Assocs. v. Giancontieri*,
  77 N.Y.2d 157 (1990) ..........................................................................................12, 22

*Wells v. Shearson Lehman/Am. Exp., Inc.*,
  72 N.Y.2d 11 (1988) .................................................................................................13

*Wright v. Goord*,
  554 F.3d 255 (2d Cir. 2009) .....................................................................................11

**Statutes**

28 U.S.C. § 2201 ..........................................................................................................21

**Other**

Fed. R. Civ. P. 56(c) ..............................................................................................10, 11

Fed. R. Civ. P. 56(e) ......................................................................................................11

#111835266v3

Defendant, Ascension Bulk Terminal, LLC ("Ascension"), submits this Memorandum of Law in Support of its Motion for Summary Judgment and in opposition to Avanza Trading, LLC's ("Avanza") Motion for Summary Judgment (Doc. no. 43).

## BRIEF SUMMARY OF ARGUMENT

This case arises from a contract for services by and between Ascension (formerly known as Impala Terminals Burnside LLC ("Impala")) and Avanza, a commodities trader. Avanza seeks to improperly expand Ascension's contractual obligations under the Terminaling and Throughput Agreement ("Agreement") beyond its negotiated terms, to include services provided by Ascension to non-contracting third parties. Avanza's effort to erroneously expand Ascension's contractual obligations, however, does not create a case or controversy ripe for adjudication and cannot extend benefits to non-parties under the contract's clear terms. And, principally, the Complaint fails to state a cause of action because the alleged damages would not be suffered by Avanza. Stated differently, Avanza brought a lawsuit upon a declaration about theoretical alleged damage to non-parties to the contract and amounts that Avanza will never owe to Ascension under the Agreement.[1]

Avanza's motion for summary judgment attempts to renegotiate and redraft a clear written contract through which the parties agreed that a defined set of "Services" would be provided to Avanza for defined Rates, and specifically agreed that **s**ervices[2] to be provided to other users of the Terminal were not included within that Rate. In effect, Avanza seeks to stretch application of

---

[1] Through discovery, it has been established that the two vessels discussed in the Declaration of Andrew Smolenack (Doc. no. 6), filed with and cited in the Complaint, were not in the employ of or hired by Plaintiff, Avanza Trading, LLC. To the contrary, the M/V ERACLE was owned by Weco Bulk A/S (Balart Decl. Exhibit E, Excerpts of Smolenack Dep. Exhibit 9 at AVANZA 00261) and chartered by Harp Trading Limited (Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:6-13, 93:23 – 96:19), and the M/V SUNRISE TRADER was owned by Louis Dreyfus Company Freight Asia Pte Ltd. (Balart Decl. Exhibit E, Smolenack Dep. Exhibit 9 at AVANZA 00288) and chartered by the buyer of certain coal (Balart Decl. Exhibit B, Smolenack Dep. Tr. 97:7-19). Further, the costs for all port dues (i.e. terminal charges including without limitation dockage, line handling, and security fees) were the responsibility of the Buyer, not any Avanza entity, and the buyer paid the port dues for these respective vessels. (Balart Decl. Exhibit B, Smolenack Dep. Tr. 85:15-22, 92:11-18.)

[2] The distinction between **S**ervices and **s**ervices is apparent, and the agreed rates are strictly and intentionally limited in the Agreement to the Services.

#111835266v3

its agreement with Ascension to non-parties to the Agreement and can point to no language in the Agreement whereby it requested, or Ascension agreed to provide, Services to these third parties at these Rates. Nor is Ascension obligated by the clear and unmistakable terms of the Agreement to provide any services or Services to non-party Avanza Trading Ltd. The Agreement does not extend to any entity other than Avanza Trading, LLC.

Avanza's argument proceeds from the fundamentally incorrect proposition that Ascension's legal position and interpretation of the Agreement is based solely on which party is invoiced for a vessel-related service. This argument misses the fundamental and basic principle of a contract where two parties have agreed to a defined set of Services to be provided by one party *to the other party* at a defined Rate. If Avanza wished for the Rates in its Agreement to apply to third parties it could have clearly said that in the contract.[3] However, it did not.[4] *See Saint Mary Home, Inc. v. SEIU, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997) (noting that parties could have added a provision in their agreement, and stating that, "[i]t is not for us to second-guess that choice or to judicially rewrite the agreement because one party now wishes it were different"). So, instead of relying on the plain language of the Agreement, Avanza seeks to introduce *parol* evidence to interpret a contract that its own witness, who is an owner of the company, considers unambiguous.[5]

Moreover, through discovery, Ascension has established that the cargo for which Avanza seeks to obtain benefits for a third party is actually sold to these third parties by Avanza Trading Ltd. – a non-party to the Agreement – and in that sales contract the Buyer is responsible for all "port dues," which are the very charges at issue here. The uncontested facts establish that the

---

[3] Mr. Smolenack admitted that the Agreement could have defined Avanza Trading, LLC to include its parent company, affiliates, contractors, etc. or extend the scope of the Agreement to buyers of Avanza's Product. (Balart Decl. Exhibit A, Smolenack Dep. Tr. 29:22 – 31:4; 33:16 – 34:12.) In his testimony, Mr. Smolenack uses the word "implied" describing *services* "to be provided to whoever Avanza is selling to." *Id.* at 30:22 – 31:4.

[4] Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:20 – 75:4.

[5] Smolenack Dep. Tr. 7:4-23 (Balart Decl. Exhibit A), 111:8-17 (Kontakis Decl. Exhibit 1); *see also* 30:4-8, 46:20-23, 55:15-17 (Balart Decl. Exhibit A).

plaintiff herein – Avanza Trading, LLC – transfers coal to parent Avanza Trading Ltd., which in turn enters into sales contracts and satisfies its delivery obligations to buyers by delivering the cargo at the ship's rail, *i.e.,* before it passes into the ocean vessel.  Plaintiff does not bear any of the costs of the ocean-going vessel and the entire basis of its original Complaint is false.  Costs for vessel-related services at the Terminal are the responsibility of the Buyer, not Plaintiff.

Finally, to the extent that Avanza argues that Ascension is obligated to provide services to vessels "in the employ of or hired by" Avanza at the rates identified in the Agreement, Ascension is entitled to summary judgment in its favor because the indisputable facts establish that none of the ocean-going vessels that call on the Terminal to load Avanza's product are in the employ of Plaintiff.  Such vessels are in the employ of third parties, namely the buyers of coal.

## BRIEF FACTUAL AND PROCEUDRAL BACKGROUND

On or about November 27, 2023, Avanza entered into the Agreement with Impala, the then-name of the owner of a bulk terminal facility located on the Mississippi River ("Terminal").[6]  The Agreement contemplated that Avanza would pay set rates for services rendered by Impala to Avanza throughout the duration of the contract.[7]  The Agreement set forth with specificity the nature, extent, and scope of Services to be performed by Impala for Avanza as "Product Owner." These "Services" are defined in the Agreement as "the services identified as 'Services' on **Exhibit A – Services and Fees**."[8]  Exhibit A to the Agreement, as amended in October 2024,[9] identifies the following Services:

---

[6] Declaration of Matthew Mancheski ¶¶ 2-3.

[7] The original Agreement provided that it would remain in effect from January 1, 2024, through December 31, 2026. (Kontakis Decl. Exhibit 3, Agreement Exhibit A (AVANZA 14298)). In October 2024, however, Avanza and Impala amended the Agreement to give Avanza the option to extend the contract term through December 31, 2029. (Kontakis Decl. Exhibit 7 at AVANZA 0032.)

[8] Kontakis Decl. Exhibit 3, Agreement at § 2(a) (AVANZA 14281, emphasis original) and Exhibit A (AVANZA 14298).

[9] Kontakis Decl. Exhibit 7, First Amendment at Exhibit A (AVANZA 0031) (highlighting original).

3

**Exhibit A**

**Services and Fees**

| Services | |
|---|---|
| The following items shall compromise the Services: | |
| **List of Items included in Services** | **Notes** |
| 1.  Stockpiling | Segregated stockpiling and normal, routine maintenance thereof |
| 2.  Storage | Storage of the Product. |
| 3.  Unloading | From a river-barge Vessel to the stockpile |
| 4.  Loading | From a river-barge Vessel or the stockpile to an ocean-going Vessel |
| 5.  Commingling | Per Product Owner's reasonable written instructions. |
| 6.  Product | Coal or Petcoke |

Article 1, Scope, states that Impala is to provide the defined Services "for Product Owner … for which Product Owner agrees to pay Impala." Clearly, this scope contemplates that for the Agreement to apply, the Service must be one provided *by* Impala *to* Avanza. The Scope of the Agreement does not extend to third parties, and the definition of "Product Owner" is only as set forth in the preamble, *i.e.*, Avanza Trading, LLC and no other party.[10]

For these Services, the Agreement contains corresponding rates (hereinafter "Rate" or "Rates"). Avanza does not allege that Ascension (formerly known as Impala) has attempted to charge *Avanza* any Rates in excess of the Agreement. Nor does Avanza allege that Ascension is providing a defined Service for a rate inconsistent with the Agreement. For example, Unloading and Loading are two Services with an applicable Rate. That Rate is identified in the "Fees" portion of Exhibit A, as amended,[11] and that is the rate Avanza pays to Ascension for that Service, both before and after the filing of the Complaint. These Rates have not changed.[12]

The Agreement further states, in Section 11(a), that Avanza "shall pay Impala *for the*

---

[10] Kontakis Decl. Exhibit 3, Agreement at Preamble and § 2(a) at "Product Owner."
[11] Kontakis Decl. Exhibit 7, Amendment at AVANZA 0032.
[12] Mancheski Decl. ¶ 20.

4

Services at the rates set forth in Exhibit A, Fees and the Burnside Tariff, *as applicable*."[13]  What is or is not included is further clarified later in Section 11(a) with the statement that "[a]ll other fees and costs" – including without limitation fleeting fees, dockage fees, port charges, tariffs, survey fees, and security fees – "and any other fees or costs levied against the Ocean Vessel, River Barges or the Cargo, shall be for account of Product Owner, the Ocean Vessel, charterers or agents *as customary*."[14]  Thus, if the fees for vessel-related services listed in the preceding sentence are not "for account of Product Owner" (meaning Avanza) – which they are not – then they are not subject to the Agreement.  The only binding Rates between Ascension and Avanza are those that are included within the defined "Services," and the services set out in the 2026 Tariff Avanza now complains of are not part of those Services.  Avanza has admitted that the 2026 Tariff does not include any rates or fees for the Services defined in Exhibit A, *i.e.*, stockpiling of Avanza Product storage of Avanza Product, unloading of Avanza Product from a river barge to the stockpile, loading of Avanza Product from a river barge or the stockpile to an ocean-going vessel, or commingling of Avanza Product.[15]

Avanza and Impala executed the First Amendment to the Agreement ("Amendment") effective October 30, 2024.[16]  The Amendment provides Avanza with an option to renew for a three-year term ending in December of 2029.[17]  In September 2025, Host Davant, LLC purchased Impala and shortly thereafter changed its registered name to Ascension Bulk Terminal, LLC.[18]  Accordingly, Ascension is the current name of the owner and operator of the Terminal, and in connection with that acquisition reviewed the existing contracts affecting the Terminal.[19]

---

[13] Kontakis Decl. Exhibit 3, Agreement at AVANZA 14288 (emphasis added).
[14] *Id.* (emphasis added).
[15] Balart Decl. Exhibit H, Avanza Responses to Requests for Admission at Responses 2 through 6.
[16] Kontakis Decl. Exhibit 7 at AVANZA 0029.
[17] *Id.* at AVANZA 0032.
[18] Mancheski Decl. ¶¶ 1, 3.
[19] *Id.*

5

On October 8, 2025, Ascension expressed to its network of potential users of the Terminal, its intention to implement new tariff rules and rates that would take effect on January 1, 2026.[20] Avanza does not allege anywhere in its Complaint that Avanza has been charged any amount under Ascension's 2026 Tariff. This is an important distinction because the Agreement, by its clear terms, does not apply to services Ascension provides to other Users of the Terminal, which both before and after the filing of the Complaint have always been between Impala/Ascension on the one hand and the vessel owner or its agents on the other.[21]

Avanza's Complaint cites a memorandum concerning the rights and obligations between Avanza and Ascension. Avanza alleges that on November 13, 2025, Ascension corresponded with Avanza and enclosed a legal analysis of the Agreement. That memorandum explains that Avanza's Rates for Services are locked in over the contractual period but further explained that the Agreement did not restrict Ascension from assessing to non-parties rates for services not covered by the Agreement's terms nor part of the defined Services to be provided under the Agreement, as the Agreement only pertains to services provided to and paid for by Avanza. In other words, Ascension merely articulated its understanding of the Agreement's obligations, namely, that nothing in the contract obligates Ascension to provide Services to non-parties or restricts Ascension's ability to set or modify charges to entities other than Avanza for items that are not included as a defined Service. The Agreement states, in Section 24(g), "No Third Party Beneficiaries. It is **_expressly understood_** that the provisions of this Agreement do not impart enforceable rights in anyone who is not a Party or successor or permitted assignee of a Party."[22] It is clear, then, under the Agreement's plain wording, that the Rates apply only to the Services.

---

[20] Mancheski Decl. ¶ 8; Kontakis Decl. Exhibit 8.
[21] Mancheski Decl. ¶¶ 9, 16, 19; _see_ Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.
[22] Kontakis Decl. Exhibit 3 at AVANZA 14295 (emphasis added).

#111835266v3

In its summary judgment motion, Avanza attempts to recast this argument as focused strictly on which party gets invoiced.  This is a gross mis-statement of Ascension's contractual position.  As is clear from the words used by the parties, the Agreement obligates Ascension to provide defined Services to Avanza, and no other party, and specifically excludes third-party beneficiaries.  For those Services, Ascension has agreed to perform the Services at agreed Rates. Any other service provided to Avanza or to a non-party is outside of the Agreement.[23]

Avanza's counsel responded, rejecting that interpretation and, on November 24, 2025, put forward a novel theory that the Agreement required Ascension (f/k/a Impala) to apply the old tariff rates to third parties, including any vessel ***hired or employed*** by Avanza even when Ascension provided services and invoiced charges exclusively and directly to the vessel owner or operator, not Avanza.[24]  In other words, Avanza's ***sole basis*** in the Agreement for its argument that the Agreement unilaterally extended to *all other services provided by Ascension to others who may be involved in dealing with Avanza Product* is found in the definition of "Vessels" in the Agreement.[25] Notably, nowhere in the Scope or in any section of the Agreement does it state that the Rates in the Agreement are to be applied to the Vessels, or to these third parties.  Essentially, Avanza attempts to improperly stretch the Agreement beyond its scope by arguing that Ascension should supply services to third parties who were, and are, not privy to the Agreement, thereby seeking to interfere with Ascension's ability to set, negotiate, and apply its own tariff rates in its dealings with non-parties.  And, as discovery has shown, none of the vessels that call on the Terminal to

---

[23] Interestingly, the terms used by Avanza concede that the Agreement does not apply to third parties.  In Paragraph 26 of the Complaint, Avanza alleges that Ascension is creating a "loophole."  By this statement, Avanza concedes that the Agreement makes no express reference to third parties and that services provided to such non-parties are not included in the scope of the Agreement.  *See* Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:18 – 75:4 (admitting that Avanza Trading Ltd. is not a party to the Agreement).
[24] Kontakis Decl. Exhibit 10 at AVANZA 0087.
[25] Kontakis Decl. Exhibit 3, Agreement at Section 2(a) at "Vessel" (AVANZA 14281).

7

load or discharge Avanza Product are in the employ of or hired by Avanza.[26]   Rather, these vessels are in the employ of third parties, not Plaintiff.[27]

Ascension responded on December 1, 2025, disagreeing that anything Ascension stated was an intent to breach the Agreement and simply reiterating that the Agreement governs the Rates applicable as between Ascension and Avanza for the defined "Services."[28]   By its terms, the Agreement does not restrict Ascension from establishing rates applicable to non-parties.[29]  Despite this clarification, Avanza then filed its Complaint on January 6, 2026, seeking immediate declaratory judgment rejecting Ascension's interpretation and citing as purported damages hypothetical scenarios referencing two past shipments involving the M/V ERACLE and the M/V SUNRISE TRADER. While Avanza vaguely refers to *future economic harm*, Avanza did not identify any actual damage in the form of fees contrary to the Agreement.

Avanza did, in paragraphs 20-21 of its Complaint, attempt to showcase "*projected*" future costs to Avanza by positing two hypothetical scenarios, but neither concerned the application of rates for Services that would be "paid to [Ascension] by [Avanza] pursuant to th[e] Agreement." Avanza cited the Declaration of Andrew Smolenack as alleged support for *future* cost increases to third parties and provided no explanation for how Avanza would suffer these losses or why they are within the scope of a Service as defined in the Agreement.  And, as discovery has established, Avanza was never responsible for these costs and the declaration was solely positing hypothetical future costs to a vessel owner (not Avanza) by comparing the new and old tariff rates.[30]

---

[26] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 21:24 – 22:16, 44:20 – 45:11.
[27] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 44:20 – 45:11.
[28] Kontakis Decl. Exhibit 10 at AVANZA 0089-91.
[29] Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14295.
[30] These were merely hypotheticals prepared by the agent for the vessel owner.  Balart Decl. Exhibit B, Smolenack Dep. Tr. 93:14-22.  Moreover, as discovery has established, the Declaration is false in that it posits, or at a minimum implies, that this Plaintiff – Avanza Trading LLC – is responsible for these costs through the sale of the Avanza Product, when in fact the seller is Avanza Trading Ltd., a non-party to the Agreement.

#111835266v3

In the sale of Avanza Product to buyers, Avanza Trading, LLC transfers the Avanza Product to a non-party, Avanza Trading Ltd, prior to being loaded upon an ocean-going vessel.[31] Avanza Trading **Ltd.** then sells the Avanza Product at the ship's rail to buyers who agree, in the form sales contract, to be responsible for all "port dues" or costs imposed on the ocean vessel by the Terminal.[32] Avanza Trading Ltd. is not a party to the Agreement, and not identified as a parent, subsidiary or affiliate entitled to the benefits of the Agreement.[33]

The Smolenack Declaration and Avanza's Memorandum seeking summary judgment are entirely deficient in explaining how Avanza is responsible for any port charges at the Terminal, and the reason is simple:  **Avanza is neither the recipient of these services, the requestor or beneficiary of such services, nor the entity paying Ascension for such services.**

With respect to the foundation of Avanza's Complaint, the M/V ERACLE was neither in the employ of nor hired by Avanza Trading, LLC; rather, the M/V ERACLE was owned by Weco Bulk A/S and chartered by Harp Trading Limited, both non-parties to the Agreement.[34]  The M/V SUNRISE TRADER was not in the employ of or hired by Avanza Trading, LLC; rather, the M/V SUNRISE TRADER was owned by Louis Dreyfus Company Freight Asia Pte Ltd. and chartered by Vitol (a buyer of coal), both non-parties to the Agreement.[35]  And, with respect to operations at the Terminal, the Terminal provides services such as dockage, line handling, security and other

---

[31] Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 17:6; *see also* Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02470) and 2 (Balart Decl. Exhibit D at AVANZA 02494) where selling party is Avanza Trading Ltd., not Plaintiff, and Plaintiff is not identified anywhere in the sales contracts.

[32] Smolenack Dep. Tr. 12:21 – 16:6, 18:2 – 20:9 (Balart Decl. Exhibit A), 75:6-16, and 85:15-22 (Balart Decl. Exhibit B); Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at 02473) and 2 (Balart Decl. Exhibit D at AVANZA 02497), under heading "Loading," stating "All port dues levied on the vessel at the port of loading shall be for Buyer's account."

[33] Kontakis Decl. Exhibit 3, Agreement; Balart Decl. Exhibit B, Smolenack Dep.Tr. 74:18 – 75:5.

[34] Balart Decl. Exhibit E, Smolenack Dep. Exhibit 9 stating, "Paying Party: Weco Bulk A/S"( (AVANZA 00261); Smolenack Dep. Tr. 93:23 – 96:19 ("Q:  But the final disbursement account was paid for by the vessel owner?  A:  By our affiliate, yes, our negotiated party for the transaction, yes.  Q:  By Weco, the vessel owner?  A:  I'm assuming."); *see also* Balart Decl. Exhibit B, Smolenack Dep. Tr. 71:9 – 74:17.

[35] Balart Decl. Exhibit E, Smolenack Exhibit 9 stating, "Paying Party: Louis Dreyfus Company Freight Asia Pte. Ltd" (AVANZA 00288); Balart Decl. Exhibit B, Smolenack Dep. Tr. 97:7-25; *see also id.* 71:9 – 72:5.

9

vessel-related services to the vessel owner. The vessel owner or its agent customarily pays the terminal for services like dockage, line handling, security and other vessel-related services.[36] Avanza, plaintiff herein, neither employs nor hires any of the vessels calling at the Terminal to load Avanza Product.[37]

The declaration alleges that under the "new" tariff rates, the vessel's loading activity would result in "increased costs" for hypothetical examples, but fails, essentially, to allege that these are types of costs that (1) are within the agreed Services and (2) would be or had ever been incurred by Avanza. Instead, the Smolenack Declaration states that these are "costs that the vessel incur[s]," and discovery has confirmed that such fees are delegated to the Buyer of Avanza Product. Accordingly, Avanza's only allegation of future damages under the Agreement consists of hypothetical calculations of an increase in rates that are not paid to Ascension by Avanza, for services that are not provided to Avanza and for activities that are not included in the agreed "Services." Under the circumstances, Avanza lacks any standing to pursue this case, and is certainly not entitled to summary judgment extending the Agreement's obligations to non-parties.

## LAW AND ARGUMENT

### I.    Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234

---

[36] Mancheski Decl. ¶ 16; Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.
[37] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 21:24 – 22:16, 44:20 – 45:11.

#111835266v3

F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## II.    Enforcement of an Unambiguous Contract under New York Law

Matters arising from or relating to the Agreement are governed by and construed in accordance with New York law, without giving effect to its conflict of laws principles.[38]  Under New York law, written agreements are construed to effectuate the parties' intent, and the ***best evidence*** of that intent is the language the parties chose to include in the contract itself. As the Court of Appeals has explained, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."[39]  And "[t]he best evidence of

---

[38] Kontakis Decl. Exhibit 3, Agreement § 24(b) (AVANZA 14294-95).
[39] *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002).

what parties to a written agreement intend *is what they say in their writing*."[40]  A party who executes a contract is presumed to know its contents and assent to them.[41]  New York state courts have long taken a consistent, rigid and strict approach to parol evidence.  The New York Court of Appeals has stated:

> A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.  That rule imparts stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses . . . infirmity of memory . . .  [and] the fear that the jury will improperly evaluate the extrinsic evidence.[42]

In applying that rule, courts must read the contract as a whole to determine the contract's purpose and intent.[43]  But once the court determines that the agreement is complete and unambiguous, the analysis remains confined to the text itself.

New York courts likewise recognize that, where a written agreement is not ambiguous, the parties—and their privies—*are entitled to rely on the words of the contract*. As the Court of Appeals stated in *Oxford Commercial Corp. v. Landau*,[44] "[i]t is too well settled for citation that, if a written agreement contains no obvious or latent ambiguities, neither the parties nor their privies may testify to what the parties meant but failed to state." Thus, once the court concludes that the agreement is unambiguous, the court's task is not to reconstruct some unexpressed intention, but to enforce the bargain the parties reduced to writing.  As a general rule, "extrinsic and *parol* evidence is *not* admissible to create an ambiguity in a written agreement which is complete and

---

[40] *Id.* (quoting *Slamow v DelCol*, 79 N.Y.2d 1016, 1018 (1992)) (emphasis added).
[41] *Holcomb v. TWR Express, Inc.*, 782 N.Y.S.2d 840, 841 (App. Div. 2d Dept. 2004).
[42] *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (citations and quotations omitted).
[43] *See id.*
[44] 12 N.Y.2d 362, 365 (1963).

12

clear and unambiguous upon its face."[45]  In other words, extrinsic evidence may be considered only if the contract itself is ambiguous.[46]  A disagreement between parties about the meaning of a particular provision does not, by itself, create ambiguity.[47]

New York courts have repeatedly stated that courts may not consider a party's uncommunicated, subjective intent concerning the meaning of contractual language.[48] "Uncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none."[49]  New York courts therefore generally apply the "plain meaning" approach to the determination of ambiguity.  As the Court of Appeals explained in *Brad H. v. City of New York*, "[a]mbiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning different than that expressed in the agreement and, therefore, extrinsic evidence 'may be considered only if the agreement is ambiguous.'"[50]  At the same time, the court must examine the agreement as a whole rather than isolate a single phrase out of context.[51]  If, when read as a whole, the agreement is susceptible to only one reasonable interpretation, it is unambiguous and must be enforced according to the plain meaning of the language chosen by the parties.[52]

In the absence of ambiguity, evidence as to the subjective intent of the parties may not be substituted for the plain meaning that would otherwise be ascribed to the language of a written agreement by a reasonably intelligent person having knowledge of the surrounding

---

[45] *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 278 (2005) (citing *W.W.W. Assoc.*, 77 N.Y.2d at 163) (emphasis added).
[46] *Id*.
[47] *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 16 N.Y.S.3d 21, 23 (2015) ("However, parties cannot create ambiguity from whole cloth where none exists, because provisions 'are not ambiguous merely because the parties interpret them differently.'") (internal citations omitted).
[48] *Wells v. Shearson Lehman/Am. Exp., Inc.*, 72 N.Y.2d 11, 24 (1988); *Sally v. Sally by Magee*, 225 A.D.2d 816, 818 (App. Div. 3d Dept. 1996).
[49] *Wells*, 72 N.Y.2d at 24.
[50] *Brad H. v City of New York*, 17 N.Y.3d 180, 186 (2011).
[51] *Id*. at 185.
[52] *See id*.

13

circumstances.[53]   "An objective standard is essential to maintain confidence in the written integrated agreement as the medium of conducting commercial relations."[54]  The Court of Appeals has made clear that:

> [T]he rule is well settled that a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract.[55]

A court may consider the parties' intent only to the extent that such intent is evidenced by the terms of the contract itself.[56]

Courts are especially reluctant to interpret agreements as including terms not explicitly stated, especially when the contracts are clear, complete, and unambiguous, and were negotiated at arm's length between sophisticated business people.[57] For example, in *Oppman v. IRMC Holdings, Inc.*, the court emphasized that sophisticated parties negotiating at arm's length are bound by the terms of their written agreements, particularly when those agreements contain a merger clause.[58]  The court dismissed claims of promissory estoppel and barred the introduction of parol evidence to contradict the written contract, emphasizing the enforceability of integrated agreements.[59]  Similarly, the court in *255 Butler Assoc., LLC v. 255 Butler, LLC* reiterated that contracts negotiated by sophisticated parties at arm's length should not be interpreted to include terms not explicitly stated.[60]  The court emphasized that the intent of the parties must be found within the four corners of the contract, giving effect to its plain language.[61]  The court should

---

[53] *U.S. v. 0.35 of Acre of Land*, 706 F. Supp. 1064, 1070 (S.D.N.Y. 1988).
[54] *Id.*
[55] *Rodolitz v. Neptune Paper Products, Inc.*, 22 N.Y.2d 383, 386 (1968) (citations omitted).
[56] *Id*. at 387.
[57] *Donohue v. Cuomo*, 164 N.Y.S.3d 39, 45 (2022).
[58] 14 Misc. 3d 1219(A) (N.Y. Sup. Ct. 2007) (citing *Benjamin Goldstein Prods. v. Fish*, 603 N.Y.S.2d 849, 850 (App. Div. 1st Dept. 1993)).
[59] *Oppman*, 14 Misc. 3d at 1219(A).
[60] *255 Butler Assoc., LLC v. 255 Butler, LLC*, 208 A.D.3d 834, 836-37 (2022).
[61] *Id*. at 837.

14

enforce the agreement the parties actually made, rather than create a new contract under the guise of interpretation.

### III.    The Plain Language of the Contract Controls

Fundamentally, Avanza's entire argument is premised on *parol* evidence that cannot be considered here under New York law.  Rather than analyze the written terms of the Agreement, Avanza presents extrinsic evidence in the form of negotiations prior to execution of the Agreement and contends, from that evidence, that its interpretation of the Agreement is correct.  Notably lacking in this argument or analysis is any explanation of exactly what Services were agreed to be provided and to whom.  Instead, Avanza tries to distort the Agreement with negotiations that were superseded by a written contract.  Indeed, the entirety of Avanza's Statement of Material Facts is based upon the introduction of inadmissible parol evidence and the only discussion of the actual contract terms is found in Statement of Material Facts nos. 21, 24 and 25.  Thus, of the 43 purported Statements of Material Fact made by Avanza, only three discuss the actual terms of the Agreement.

Avanza's citation to negotiations prior to the execution of the Agreement cannot alter the terms of the Agreement.  The Agreement contains a merger and integration clause that provides:

> This Agreement, together with all Exhibits, the Tariff, and any applicable confidentiality agreement, represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior writings, communications, discussions, representations or understandings, whether written or oral. This Agreement may only be altered, amended or modified by a written instrument duly executed by both Parties.[62]

Thus, the written terms of the Agreement must apply without regard to any pre-execution negotiations.  Additionally, on this point, Avanza misrepresents the roles of Allen Walker and Amber Palmer, neither of whom had authority to negotiate the terms of the Agreement or the

---

[62] Kontakis Decl. Exhibit 3, Agreement § 24(a) (AVANZA 14294).

Amendment and have no knowledge as to intent as expressed in the Agreement.[63]

A basic and straightforward analysis of the Agreement establishes that it does not bind Ascension to third parties, does not inure to the benefit of non-parties,[64] and does not apply to services provided by Ascension to users of the Terminal other than Avanza.[65]  The Agreement's scope is defined in Section 1:  "Impala shall provide Services and, if agreed upon, the Ancillary Services … for Product Owner for which Product Owner agrees to pay Impala (as defined herein) and, if applicable, any Ancillary Service Fees (as defined herein), all on the terms and subject to the conditions set forth in this Agreement."[66]  "'Product Owner' has the meaning set forth in the Preamble,"[67] which is simply Avanza Trading, LLC.  The parties could have elected to define Product Owner more broadly to include the parent or other affiliates, but they did not.[68]

In Section 4, the Agreement provides:  "(a) Scope of Services. Impala shall provide the Services and, if directed by Product Owner or as otherwise provided herein, the Ancillary Services *to* Product Owner with respect to Product properly delivered to the fleeting services area across the Mississippi River from the Terminal as designated by Impala."[69]  Again, clearly obligating and defining the relationship as services from Impala to Avanza.  The parties could have required these Services to be provided to Avanza or its parent, but did not.[70]  The parties could have stated that Impala was obligated to provide the Services to Avanza and vessels employed by Avanza or to

---

[63] Balart Decl. Exhibit F, Walker Dep. Tr. 14:22 – 15:3; 34:4-6; 38:23 – 39:4; 48:22 – 50:18.

[64] Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14295.

[65] This conclusion can be reached separately, and without further parsing of the Agreement, based on the parties express agreement "that the provisions of this Agreement do not impart enforceable rights in anyone who is not a Party or successor or permitted assignee of a Party."

[66] *Id.* at AVANZA 14279.

[67] *Id.*, Agreement § 2(a) at AVANZA 14281.

[68] Balart Decl. Exhibit A, Smolenack Dep. Tr. 33:16 – 34:12; Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:20 – 75:4; *see Saint Mary Home, Inc. v. SEIU, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997) (where parties could have added a certain provision but did not, the court would not "second-guess that choice or judicially rewrite the agreement because one party now wishes it were different").

[69] Kontakis Decl. Exhibit 3 at AVANZA 14283.

[70] Balart Decl. Exhibit A, Smolenack Dep. Tr. 33:16 – 34:12; Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:20 – 75:4.

16

third parties used by Avanza, but they did not.[71]  Or, the parties could have clearly set forth that the Services were to be provided to Avanza and anyone using the terminal to discharge or load Avanza Product, but they did not.[72]  These omissions are instructive.[73]

Much of Avanza's initial argument about why the Agreement applies to third parties is the definition of the "Tariff," and Avanza devotes much of its Statement of Material Facts to the inadmissible parol evidence around that definition.  But what Avanza never does is explain to this Court why that definition extends to non-parties.  Indeed, notably missing from Avanza's argument in its summary judgment papers is an explanation of where in the Agreement it is stated that the defined "Tariff" applies to third parties or non-parties.  Avanza, a sophisticated party, could have easily proposed language stating that the defined "Tariff" or the rates set forth in the schedule are "locked in" as respects any Vessel at the Terminal to load or discharge Avanza Product.  Avanza did not.  Instead, the best that Avanza's own witness can offer is that it is *implied* that such rates apply to third parties where "Avanza" is "using the services as a trader."[74]

In Section 6(a), Impala/Ascension specifically reserves its right to require "barge carriers to use its or its contractor's fleet and harbor towboat services in order to ensure an orderly and safe operation of the Terminal."[75]  This clause is clear intent that this relationship – i.e. the relationship between barge barriers bringing Avanza Product into the fleet and the Terminal – is separate and distinct.  Notably, nowhere in the Agreement does it state that this relationship or any services provided by Impala to the barge carriers must be at the Rate in the Agreement.

---

[71] *Id.*
[72] *Id.*
[73] *See Saint Mary Home*, 116 F.3d at 45 (2d Cir. 1997).
[74] Balart Decl. Exhibit A, Smolenack Dep. Tr. 30:18 – 31:4.  And, even under this argument that it is *implied*, summary judgment in Ascension's favor is still warranted because discovery has established that this plaintiff is **not** the trader for sales of Avanza Product.
[75] Kontakis Decl. Exhibit 3 at AVANZA 14285.

Finally, with respect to Rates and Payments, Section 11(a) requires Avanza to pay Ascension for the "Services at the rates set forth at Exhibit A, Fees and the Burnside Tariff, as applicable."[76]  There is no mention of an Exhibit C.  Critically, the parties then clearly express the intent that any services customarily for the account of the "Ocean Vessel, charterers or agents" are not within the definition of Rates.  The third sentence of Section 11(a) provides:  "**All other fees and costs**, including but not limited to, shifting and fleeting fees, wharfage and dockage fees, mooring fees, port charges, tolls, harbor fees, taxes, tariffs, survey fees, security fees, and any other fees or costs **levied against the Ocean Vessel, River Barges or the Cargo, shall be for account of Product Owner, the Ocean Vessel, charterers or agents *as customary***" (emphasis added). Thus, all fees and costs – including shifting and fleeting fees, wharfage and dockage fees, mooring fees, port charges, tolls, harbor fees, taxes, tariffs, survey fees, security fees – levied against the Ocean Vessel are for the account of the Ocean Vessel or charterers *as customary*.  This is a clear expression of the intent to exclude fees and costs for services provided by the Terminal to ocean vessels as customary.  And, the undisputed evidence establishes that the Terminal has always customarily levied such charges against the ocean vessel *for the account of the vessel owner or its agents.*[77]

The Agreement unambiguously establishes a fixed rate structure for the defined Services performed by Ascension to handle Avanza's cargo *for storage at the Terminal* and paid for by Avanza to Ascension, and by narrow definitions clearly excludes services to third parties from that structure.  Rates paid by third parties were never intended to be fixed or constrained by the Agreement's Rates, and, tellingly, Avanza cannot point to any portion of the Agreement that sets

---

[76] Kontakis Decl. Exhibit 3, Agreement at AVANZA 14288.
[77] Mancheski Decl. ¶¶ 9, 16, 19; *see* Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.

#111835266v3

rates for these unspecified services and then binds Ascension to provide such services at those rates to third parties.

Avanza's actions after the filing of the Complaint further evidence this intent, and Avanza's recognition that the Agreement does not bind Ascension to third parties. Avanza attempted to change what had been the customary dealings between Ascension, Avanza and ocean vessels.[78] On March 19, 2026, Ascension was advised by Riverside Shipping, as agents for the vessel owners, that "shippers" and vessel operators had reached an agreement that "shippers" would now be responsible for all terminal charges, as described above, for a vessel calling on the Ascension terminal and loading Avanza Product. Although "shippers" were not specifically identified, the communication copied personnel with an "avanzatrading.com" domain, including Andrew Smolenack. This was a change from how all prior engagements had been handled, as the vessel owner or its agent had customarily requested and paid for these services.[79] The alleged "agreement" was described as a "verbal agreement" that Avanza would take on the entire Disbursement Account for the vessel, *i.e.*, charges at the Terminal, but Avanza did not, in fact, do so.[80]

Instead, the M/V SHANDONG XIN TAI called on the Terminal after the email from Riverside mentioned above, and loaded Avanza Product at the Terminal.[81] The M/V SHANDONG XIN TAI is a User of the Terminal subject to the Terminal's tariff.[82] Ascension, as had always been customary, invoiced the M/V SHANDONG XIN TAI, through its agent Riverside Shipping, for all terminal service charges pursuant to the 2026 Tariff and this invoice was paid by the vessel

---

[78] Mancheski Decl. ¶ 15.
[79] Mancheski Decl. ¶ 16; *see* Balart Decl. Exhibit B, Smolenack Dep. Tr. 87:22 – 88:2.
[80] Balart Decl. Exhibit B, Smolenack Dep. Tr. 83:20 – 85:22.
[81] Mancheski Decl. ¶ 18.
[82] Mancheski Decl. ¶ 17.

owners/charterers through its agent.[83]  Avanza did not pay these costs, and these services were not provided to Avanza.

Finally, the evidence is not in dispute that port charges have always customarily been for the account of the Ocean Vessel and not a cost borne by Avanza.[84]  The sale of Avanza Product at the Terminal is typically between a buyer and Avanza Trading **Ltd.** as seller, not Avanza Trading, LLC, plaintiff herein.[85]  The Avanza Product is transferred to Avanza Trading Ltd. *prior to being loaded upon an ocean-going vessel*.[86]  Under the Avanza Trading Ltd. sales contracts, the Buyer is responsible for all "port dues" at the terminal, which are the fees assessed to the vessel during its visit to the Terminal including for, without limitation, dockage, line handling, and security fees.[87]

Avanza has no contractual right to interfere with Ascension's ability to set rates or contract freely with third party vessel owners or operators as Users of the Terminal.  Avanza's motion does not even begin to set out any contract language obligating Ascension to supply these services to these third parties on behalf of Avanza or to do so at the Rates in the Agreement.  Again, such language could have been incorporated into the Agreement,[88] if that were the mutual intent of the parties.  It was not,[89] and, in fact, there are specific references as cited above indicating that the

---

[83] Mancheski Decl. ¶ 19; *see* Balart Decl. Exhibit B, Smolenack Dep. Tr. 83:20 – 85:22 and 92:11-18.

[84] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:2 – 20:9 and 24:6-24; Balart Decl. Exhibit B, Smolenack Dep. Tr. 71:9 – 72:5, 74:4 – 75:16, 83:20 – 85:22, and 87:22 – 88:2.

[85] Balart Decl. Exhibit A, Smolenack Dep. Tr. 12:21 – 16:6; *see also* Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02470) and 2 (Balart Decl. Exhibit D at AVANZA 02494) where selling party is Avanza Trading Ltd., not Plaintiff, and Plaintiff is not identified anywhere in the sales contracts.

[86] Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 17:6; *see also* Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 02470) and 2 (Balart Decl. Exhibit D at AVANZA 02494) where selling party is Avanza Trading Ltd., not Plaintiff, and Plaintiff is not identified anywhere in the sales contracts.

[87] Smolenack Dep. Tr. 18:2 – 20:9 (Balart Decl. Exhibit A), 75:6-16, and 85:15-22 (Balart Decl. Exhibit B); Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at 02473) and 2 (Balart Decl. Exhibit D at AVANZA 02497), under heading "Loading," stating "All port dues levied on the vessel at the port of loading shall be for Buyer's account."

[88] Balart Decl. Exhibit A, Smolenack Dep. Tr. 33:16 – 34:12.

[89] Balart Decl. Exhibit B, Smolenack Dep. Tr. 74:20 – 75:4.

services and rates for those services as between Ascension and third parties would remain *outside of the Agreement*.[90]

Ascension's decisions regarding rates charged to non-parties are outside the scope of the Agreement and beyond Avanza's contractual rights. The Agreement imposes no obligation on Ascension to insulate Avanza from any indirect or tangential effects that third-party pricing decisions might have. Indeed, the Complaint's entire theory of hypothetical damages based upon services that Avanza does not request and does not pay Ascension for underscores the absence of any actual controversy. Instead, these charges are requested by, provided to and assessed against third parties "as customary" and are billed to, and payable solely by, those third parties. Further, Avanza has admitted that the 2026 Tariff does not include rates or fees for the Services included in Exhibit A of the Agreement, *i.e.*, the Services specifically agreed to as between the parties and the only Services for which rates are locked in under its terms.[91] This serves to underscore the absence of any cognizable injury to Avanza or any right to declaratory or summary judgment enforcing the Agreement beyond its four corners.

The Declaratory Judgment Act's threshold requirement is that the dispute present an "actual controversy." *See* 28 U.S.C. § 2201; *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023). The Second Circuit has made clear that an "actual controversy" requires a concrete dispute capable of resolution by specific relief through a conclusive decree, and does not encompass requests for advisory opinions based "upon a hypothetical state of facts." *Admiral Ins.*, 57 F.4th at 91-92. For the reasons set forth above, Ascension is entitled to summary judgment dismissing Avanza's Complaint as pleaded.

---

[90] *See, e.g.*, Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14295.
[91] Balart Decl. Exhibit H, Avanza Responses to Requests for Admission at Responses 2-6.

## IV.        Under Any Interpretation, the Contract Does Not Apply to Third Parties

Summary judgment in Ascension's favor is further warranted on two additional grounds not addressed by Avanza.  First, it is undisputed that the Avanza Product is not sold by this Plaintiff.  Avanza has failed to (and cannot) produce any evidence that Avanza Trading, LLC sells Product to the buyers who hire vessels to load it at the Terminal.  To the contrary, the Avanza Product is transferred, legally, to Avanza Trading Ltd., a separate legal entity, prior to being loaded from the Terminal.[92]  Avanza Trading Ltd. then enters into the form sales contract with buyers which, as noted above, allocates all expenses at the terminal to the Buyer.[93]

Avanza Trading Ltd. is not a party to the Agreement and has no rights under the Agreement. The Agreement does not state that Avanza Trading Ltd. is a party.[94]  The definition of "Product Owner" does not include any legal entity other than Avanza Trading, LLC, and makes no reference to parents or affiliates.[95]  Nor does the Agreement contain any clause conferring the benefits of the Agreement upon a third party such as Avanza Trading Ltd; instead, the Agreement expressly excludes third-party beneficiaries.[96]

Under New York law, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing," and where an agreement is complete, clear, and unambiguous on its face, it must be enforced according to the plain meaning of its terms.  *Slamow v DelCol*, 594 N.E.2d 918, 919 (N.Y. 1992); *see, e.g. R/S Assocs. v New York Job Dev. Auth.*, 771 N.E.2d 240, *rearg denied* 775 N.E.2d 1291 (N.Y. 2002); *W.W.W. Assocs. v Giancontieri*, 566 N.E.2d 639 (N.Y.

---

[92] Balart Decl. Exhibit A, Excerpts of Transcript of Deposition of Andrew Smolenack 15:3 – 17:6.

[93] *See* Balart Decl. Exhibit A, Smolenack Dep. Tr. 15:3 – 16:21, 18:2 – 20:9; and Smolenack Dep. Exhibits 1 (Balart Decl. Exhibit C at AVANZA 2470, 2471, 2473) and 2 (Balart Decl. Exhibit D at AVANZA 02494, 2495, 2497) which are Avanza Trading Ltd contracts for sales, FOB Terminal, which stated, under the "Loading" heading, that "[a]ll port dues levied on the vessel at the port of loading shall be for Buyer's account.").

[94] Kontakis Decl. Exhibit 3, Agreement; Balart Decl. Exhibit B, Smolenack Dep.Tr. 74:18 – 75:5.

[95] Kontakis Decl. Exhibit 3, Agreement at Preamble and § 2(a) at "Product Owner."

[96] Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14295.

22

1990).  It is well established and "goes without saying that a contract cannot bind a nonparty" unless there is *clear* intent to do so.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Frazier v. X Corp.*, 155 F.4th 87, 101 (2d Cir. 2025); *Nat'l Indem. Co. v. IRB Brasil Resseguros S.A.*, 767 F. App'x 154, 156 (2d Cir. 2019).  Most notably, courts must enforce contracts according to their plain meaning and may not rewrite agreements to impose obligations the parties did not expressly assume.  *Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 767 F. Supp. 2d 392, 407 (E.D.N.Y. 2011) ("[T]his Court is not authorized to read a restriction into an integrated, unambiguous contact that is not evident from the four corners of the document. . . . It is not this Court's role to rewrite the contract").  As such, Ascension cannot be declared to owe any obligations to Avanza Trading Ltd. as there is no clear intent to confer the benefits of the Agreement upon a non-party; instead, the Agreement expressly excludes third-party beneficiaries.[97]  Avanza's motion offers no explanation as to why the parties agreed to this provision or why it should not be enforced according to its clear terms.

Relatedly, Avanza can point to no language in the Agreement obligating Ascension to provide services to third parties using the Terminal.  As summarized above, the Agreement provides:  "Impala shall provide Services and, if agreed upon, the Ancillary Services (as defined below) for Product Owner for which Product Owner agrees to pay Impala…"[98]  Had the Parties intended to have this scope apply to all parties involved in the handling of Avanza product at any time, they very clearly could have stated so by including the underlined text:  Impala shall provide Services and, if agreed upon, the Ancillary Services (as defined below) for Product Owner and for third parties loading or discharging Avanza Product for which Product Owner agrees to pay Impala.

---

[97] Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14295.
[98] Kontakis Decl. Exhibit 3, Agreement § 24(g) at AVANZA 14279.

23

Similarly, in Section 4, the Agreement clearly limits the scope to those Services agreed to be provided by Ascension to Avanza: "Impala shall provide the Services and, if directed by Product Owner or as otherwise provided herein, the Ancillary Services to Product Owner with respect to Product properly delivered to the fleeting services area across the Mississippi River from the Terminal as designated by Impala."[99]  Had this obligation been intended to extend to third parties, the underlined text could have been added:  Impala shall provide the Services and, if directed by Product Owner or as otherwise provided herein, the Ancillary Services to Product Owner <u>and other parties</u> with respect to Product properly delivered to the fleeting services area across the Mississippi River from the Terminal as designated by Impala.  This language was not used.

And finally, the exclusion of services as between barge carriers and Ascension in Section 6, discussed *supra*, and the exclusion of all costs and fees levied against the ocean vessel "as customary" only serves to further establish that third parties were not intended to receive the Services and that Ascension was not obligated to provide any of the defined Services to these parties.  Thus, the rates set forth in the Agreement, or any limit as agreed between Avanza and Ascension, cannot be extended to third parties under a plain reading of the Agreement.

As explained *supra*, Avanza's entire argument about the definition of the Tariff fails to explain why Schedule C extends to third-party users.  That is because the parties did not expressly state that the Rates or the Tariff apply to non-parties, and there is no support for such a conclusion in the written words of the Agreement.  To the contrary, in the definition of the Scope, in Section 11(a)'s specific exclusion, and in the express understanding that the Agreement does not impart rights to anyone not a Party, it is clear that the parties intended otherwise.

---

[99] Kontakis Decl. Exhibit 3 at AVANZA 14283.

#111835266v3

Ascension is thus entitled to summary judgment declaring that (i) it has no obligations to Avanza Trading Ltd., a non-party to the Agreement; and (ii) the Agreement contains no express language obligating Ascension to provide services to parties other than Avanza Trading, LLC at any particular rates.

**V.      Avanza Fails to Establish That Any Vessels Involved Are Hired or in the Employ of Avanza**

As evidenced by the response sent by Avanza's counsel on November 24, 2025, Avanza's entire argument in favor of the Agreement applying to third parties is based upon the definition of "Vessel" in the Agreement.[100]  In its November correspondence, Avanza argued that Ascension's definition of the Services it was obligated to supply to Avanza was incorrect because it ignored that the services in Exhibit A involved vessels.  Avanza then directed Ascension that the definition of Vessel included any vessel "in the employ or hired by" Avanza, and asserted that Ascension was thus obligated to provide the Services to such Vessels.

However, discovery has established that none of the vessels calling on the Terminal to either discharge or load Avanza Product are in the employ of Avanza Trading, LLC, and at a minimum Avanza's Statement of Material Facts is deficient in this regard.  With respect to the two exemplar vessels – the ERACLE and SUNRISE TRADER – used as the basis for the Complaint, neither of those vessels was in the employ of or hired by Avanza, as detailed in footnote 1 above. Mr. Smolenack confirmed in his deposition that these two vessels were not in the employ of nor hired by Avanza.[101]

Additionally, for purposes of its motion for summary judgment, Avanza would bear the burden of establishing, as an uncontested fact, that it employs or hires the ocean vessels to obtain

---

[100] Kontakis Decl. Exhibit 10 at AVANZA 087.
[101] Kontakis Decl. Exhibit 1, Smolenack Dep. Tr. 110:19 – 111:2.

the benefit of this argument.  Avanza has not and cannot meet this burden because that is not, in fact, how its business operates.  The Avanza Product is delivered at the Terminal and the buyer of the Avanza Product is responsible for port dues, as noted above.  For almost all sales of Avanza Product by the non-party Avanza Trading Ltd., the vessels that load that cargo are in the employ and hired by the buyer.[102]  Mr. Smolenack testified that there is nothing ambiguous about the definition of "Vessel" in the Agreement and that he read and understood the definition.[103]

Furthermore, through discovery, Ascension issued a Request for Production seeking copies of all charter agreements for Avanza cargo.[104]  No charter agreements for ocean vessels were produced identifying Avanza Trading, LLC as the chartering (or hiring) party.[105]  Thus, on this discovery record, there is no issue of material fact that none of the ocean vessels that have called upon the Terminal for Avanza Product are "in the employ of or hired by" Plaintiff.

## VI.    Even Under Avanza's Argument, Only Exhibit C Is "Locked In"

Finally, even if one were to accept Avanza's erroneous argument that an unambiguous contract can be modified by prior negotiations despite a merger and integration clause, Avanza's argument concerning application of a rate schedule (called Exhibit C but no attachment is so labeled) could only apply to the one page titled Schedule C, and not to anything else.  The definition of Tariff in the Agreement as proposed and ultimately agreed to states as follows:[106]

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its web site with the address The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C.

---

[102] Balart Decl. Exhibit A, Smolenack Dep. Tr. 18:16 – 19:13, 21:24 – 22:16, 44:20 – 45:11.
[103] Balart Decl. Exhibit A, Smolenack Dep. Tr. 45:24 – 46:3.
[104] Balart Decl. ¶ 13 and Exhibit I at request no. 5.
[105] Balart Decl. ¶ 14.
[106] Kontakis Decl. Exhibit 3, Agreement at 2(a) (AVANZA 14281).

https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf

According to Mr. Smolenack, he intended a period between "address" and "The" on the fourth line,[107] such that the definition would read:

> Tariff means, collectively, the "Burnside Terminal Rules and Regulations" and any other published tariff of Impala, including all other requirements, rules, regulations, and documents governing the operation of the Terminal that are posted on its web site with the address https://www.impalaterminals.com/media/vrihbaii/2021_impala_burnside_terminal_rules.pdf. The current Impala Terminals Burnside Rules and Regulations Rate Schedule, dated and effective February 1, 2021, shall remain valid and in force throughout the term of the Agreement, attached Exhibit C.[108]

Schedule C is a one-page document containing certain services and rates but not all services and not all rates. The Agreement also contains the following provision in Section 12, which the parties left unchanged:[109]

> (c)    Tariff Review. Product Owner represents that it has reviewed and understands the Tariff, and covenants that Product Owner will review the Tariff periodically for changes and updates. This Agreement shall be subject to and governed by the Tariff as in effect on the date the Services are provided. Product Owner shall, and shall cause its Carriers to, comply with all applicable provisions of the Tariff. If there is a conflict between this Agreement and the Tariff, the terms of this Agreement shall control.

Thus, the parties very clearly agreed that the Agreement was "***subject to and governed by the Tariff as in effect on the date the Services are provided***." This is in direct conflict with the argument presented by Avanza that all rates for all services are "locked in" by Exhibit C. This provision clearly provides otherwise.

And while Avanza may attempt to rely upon the last sentence of Section 12(c) to argue that Exhibit C prevails, that is not accurate nor based on the language in 12(c). The incorporation of the tariff in existence at the time the Services are provided is contained in the Agreement itself,

---

[107] Balart Decl. Exhibit A, Smolenack Dep. Tr. 38:22 – 39:25.
[108] Balart Decl. Exhibit A, Smolenack Dep. Tr. 38:22 – 39:25.
[109] Kontakis Decl. Exhibit 3, Agreement at Section 12(c) (AVANZA 14290).

#111835266v3

not the Tariff.  In essence, there are inherently conflicting provisions (assuming Avanza's argument that all rates in the 2021 tariff apply through the Agreement) because this portion of the Agreement clearly states that the "Agreement shall be subject to and governed by the Tariff *as in effect on the date the Services are provided*" and further that "Product Owner shall, and shall cause its Carriers to, comply with all applicable provisions of the Tariff."

At best for Avanza, any argument about which provision should control would be limited to only that which is contained in Schedule C and not to other rates or other rules and regulations that Ascension may wish to impose on *any party* at the Terminal.  Stated differently, and based upon Mr. Smolenack's arguments and the words used in the definition of Tariff, only the one-page Schedule C could apply throughout the term of the Agreement.  Ascension is therefore at liberty to issue other rules, regulations and rates affecting the Terminal outside of Schedule C because there is nothing in the plain language of the Agreement that so limits Ascension from operating the Terminal in the manner it chooses, including vis-à-vis Avanza unless otherwise provided in the Agreement.

That is clearly not what the parties agreed to – the specific Services and Rates, by the explicit definitions in the Agreement, are applicable as between Avanza and Ascension only.  The defined "Services" and the corresponding Rates for those Services clearly were the purpose of the Agreement, and it would in no way be rendered meaningless if the Court declines to improperly expand Ascension's obligations beyond the written terms.  The Agreement's rate provisions therefore apply only to Services rendered by Ascension to Avanza Trading, LLC and not to services rendered to others who are not parties to the Agreement, which expressly excludes third-party beneficiaries as detailed above.

28

**CONCLUSION**

For the foregoing reasons, Ascension Bulk Terminal, LLC respectfully requests that the Court dismiss all claims filed by Plaintiff, Avanza Trading, LLC, against Ascension Bulk Terminals, LLC with prejudice by the granting of summary judgment in favor of Ascension as to the application of the Agreement to parties other than Avanza Trading, LLC. Alternatively, Ascension submits that Avanza has not met its burden of proof of showing that there are no disputed issues of fact that would prevent granting summary judgment in its favor, and Avanza's motion should be denied for, among other reasons, disputed issues of fact concerning Avanza's obligation to deliver Avanza Product, whether Avanza Trading, LLC is ever responsible for transportation costs for the Avanza Product, and whether and to what extent any vessel calling on the Terminal is in the employ of or hired by Avanza.

Dated:   New York, New York
         June 19, 2026

Respectfully submitted,

JONES WALKER LLP
*Counsel for Ascension Bulk Terminal, LLC*

*S/ L. Etienne Balart*
L. Etienne Balart, *pro hac vice*
Alison M. Odermann, *pro hac vice*
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8584
Facsimile: (504) 589-8584
E-Mail: ebalart@joneswalker.com
        aodermann@joneswalker.com

and

Brian P. R. Eisenhower
HILL RIVKINS LLP
45 Broadway, Suite 2110
New York, New York 10006-3776
Tel: (212) 669-0617

29

#111835266v3

Email: beisenhower@hillrivkins.com
*Co-Counsel for Ascension Bulk Terminal, LLC*

30

#111835266v3

**CERTIFICATE OF COMPLIANCE**

This document is within the page limitation set forth by the Court in its Order regarding the filing of this Motion.

*S/ L. Etienne Balart*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2026, the foregoing was electronically filed via the Court's CM/ECF system which sends a "Notice of Electronic Filing" to all attorneys of record.

*S/ L. Etienne Balart*

31

#111835266v3